UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| SUSAN TINCHER, JOHN BIESTMAN, JANET LEE, LUCIA WEBB, ABDIKADIR NOOR, and ALAN CRENSHW, *on behalf of themselves and Other similarly situated individuals,*<br><br>  Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS); TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement (ICE); MARCOS CHARLES, Acting Executive Associate Director, Enforcement and Removal Operations (ERO), ICE; DAVID EASTERWOOD, Acting Field Office Director, ERO, ICE Saint Paul Field Office; JOHN A. CONDON, Acting Executive Associate Director, Homeland Security Investigations (HSI); The Department of Homeland Security; Unidentified Federal Agencies; and Unidentified Federal Agents; *in their official capacities,*<br><br>  Defendants. | Case No. 25-cv-04669<br><br><br><br><br><br><br><br>**SUPPLEMENTAL RESPONSE TO ECF NOS. 33-37** |

_____

For similar reasons detailed in Defendants' Opposition (ECF No. 46), the Court should not give any weight to declarations of non-parties regarding incidents involving non-parties because they do not shed light on whether *Plaintiffs* have standing or are likely to succeed on the merits of their claims. With one exception, each of the declarations submitted on December 31, 2025, relate only to discrete incidents wholly unrelated to Plaintiffs' claims. Even if these declarations showed that some non-parties had standing (and they do not, as discussed below), that would be irrelevant to whether *Plaintiffs* have standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) ("[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured."). Moreover, two of the declarations concern events that happened after the Complaint was filed and, as a result, cannot be considered for standing purposes at all. *See Park v. Forest Serv. Of the United States*, 205 F.3d 1034, 1037 (8th Cir. 2000); Declaration of Carla Hennes (Hennes Decl.) ¶ 2, ECF No. 33; Declaration of Gabrielle Holboy (Holboy Decl.) ¶¶ 7, 10, ECF No. 35. The declarations are therefore irrelevant to whether Plaintiffs are likely to succeed on the merits or establish irreparable injury. *See Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish . . . that *he* is likely to suffer irreparable harm[.]" (emphasis added)); *Am. Dairy Queen Corp. v. Brown-Port Co.,* 621 F.2d 255, 259 n.4 (7th Cir. 1980) (holding that the "'no adequate remedy at law/irreparable injury' prerequisite is not satisfied by the harm that may befall a nonparty").

Further, to the extent Plaintiffs submit these declarations to justify a broad injunction applicable to non-parties, this would contradict the reasoning of the recent stays granted in *Los Angeles Press Club* and *Chicago Headline Club*. *See Los Angeles Press*

1

*Club v. Noem*, No. 25-5975, Dkt. No. 66.1 (9th Cir. Dec. 18, 2025) (staying provisions of the preliminary injunction "that by their terms apply to protestors who are not parties to this litigation."); *see also Chicago Headline Club v. Noem*, No. 25-3023, Dkt. No. 28 (7th Cir. Nov. 19, 2025) (staying injunction applying throughout the Northern District of Illinois based on "substantial overbreadth" and expressing reservations about Article III standing).

In short, nothing in these non-party declarations moves the needle to establish either that the *Plaintiffs* have standing or that *Plaintiffs* are likely to succeed on the merits. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Spokeo*, 578 U.S. at 338 n.6. In any event, as described below, these declarations also do not show that the non-party declarants experienced any constitutional violations.

   1. *More individuals following ICE vehicles in their cars (Holboy and Mielke)*

Plaintiffs submitted two additional alleging describing scenes in which non-parties followed ICE vehicles in their cars, and ICE eventually approached them in their vehicles and admonished them without arrest. Sharing the same broad outlines described in Defendants' Opposition, the drivers here engaged in behavior that showed some indicia of aggression and harassment or that they were attempting to impede, rather than merely observe, ICE operations. This includes lying in wait and following a convoy on their "circuitous path" for a long distance on various streets and highways through St. Paul and multiple Twin Cities suburbs. Declaration of Luke Mielke (Mielke Decl.) ¶¶ 4-6, ECF No. 36. Similarly, this includes following ICE vehicles around a parking lot "like ring around the rosy" and following ICE vehicles for an extended period of time resulting in multiple ICE vehicles taking action to maneuver away. *See* Holboy Decl. ¶¶ 7, 10. In each incident,

2

ICE officers warned Mielke and Holboy that they were impeding or interfering with federal investigations, without using any physical force or displaying their weapons. Mielke Decl. ¶ 10; Holboy Decl. ¶ 13. In both of these instances (similar to comparable incidents discussed in Defendants' Opposition (ECF No. 46)), after a short time, the ICE vehicle left the scene or allowed the drivers to leave the scene without arresting anyone in the car. Mielke Decl. ¶ 10; Holboy Decl. 14.

As explained in Defendants' Opposition, the Eighth Circuit has read Supreme Court precedent to show that "individuals '[have] no constitutional right to observe the issuance of a traffic ticket or to engage the issuing officer in conversation,'" which "suggests that observing police conduct is not expressive." *Molina v. City of St. Louis*, 59 F.4th 334, 339 (8th Cir. 2023) (quoting *Colten v. Kentucky*, 407 U.S. 104, 109 (1972)). Plaintiffs cannot show that Mielke and Holboy were engaged in First Amendment speech, or that ICE officers' conduct was motivated by retaliatory animus to protected First Amendment activity, rather than to address conduct the officers believed to be dangerous or disruptive to law enforcement operations. *Aldridge v . City of St. Louis*, 75 F.4th 895 (8th Cir. 2023). Relatedly, as explained in Defendants' Opposition, Plaintiffs cannot show that ICE officer violated the Fourth Amendment by briefly detaining Mielke and Holboy because the officer has reasonable suspicion that they could be violating 18 U.S.C. § 111 or traffic laws and, at the very least, ICE officers were reasonably mistaken in believing that they were violating such laws. *See Heien v. North Carolina*, 574 U.S. 54, 57 (2014).

### 2. Additional Incidents Involving Non-Parties

The additional non-party incidents do nothing to advance Plaintiffs' standing or to shed light on whether *Plaintiffs* are likely to succeed on the merits of their claims. *See Spokeo*, 578 U.S. at 338 n.6. First, Mary Hackman, detailing the same event as Plaintiff Crenshaw, only reinforces the chaotic scene from the Cedar-Riverside incident, describing a significant traffic jam in which ICE vehicles were intermixed with civilian vehicles and surrounded by protestors impeding their ability to leave the scene and necessitating the use of crowd control devices. *See* Declaration of Mary Hackman ¶¶ 3-4, ECF No. 37. Similar to the argument expressed in Defendants' Opposition, the "obvious alternative explanation" is that the officers "utilize[ed] the pepper spray as a crowd control mechanism rather than retaliating against a particular protestor." *Aldridge*, 75 F.4th at 899-00. And, as explained in Defendants' Opposition, dispersal of an uncompliant crowd by pepper spray does not violate the Fourth Amendment because it is neither a seizure nor unreasonable given the obstructive and violent behavior of the crowd. *See Puente v. City of Phoenix*, 123 F.4th 1035, 1052 (9th Cir. 2024).

Similarly, Claire Smith describes a scene that involved people forming a crowd around ICE officers that made it difficult for officers to move throughout and vehicles to leave the scene – including standing in the street between cars. *See* Declaration of Claire Smith ¶¶ 10-11, 13-14, ECF No. 34. Smith's declaration only supports the inference that some reasonable force was used to disperse an obstructive and violent crowd, not to retaliate against protected speech. *See* Defs' Opp. at 28-32.

Finally, Carla Hennes describes seeking out officers actively engaged in an

4

immigration enforcement operation in a multipurpose county building. Carla Hennes ¶¶ 2-9. By Hennes' own description of "chaos," she was not merely observing but closely following and harassing officers in and around staircases as well as inserting herself in pathways of the exterior of the building during an ongoing operation to arrest two men. *Id.* ¶¶ 9-12, 16. Hennes was even reprimanded by a local security guard in the building for causing a disturbance by blowing a loud whistle outside of a library. *Id.* ¶¶ 10-12. Although she observed officers actively arresting someone, she followed the officers, harassing them for law enforcement sensitive information and admonishing them despite not even knowing why they were there or making the arrest. *Id.* 16. Put simply, actively pursuing officers while they are placing someone under arrest is not observation or any type of protected speech. *See Molina*, 59 F.4th 334, 399 n.1 (distinguishing "protected expression, such as words or conduct that annoy or offend, from unprotected activities like standing near a police officer and persistently attempting to engage the officer in conversation while the office is directing traffic at a busy intersection." (cleaned up) (internal quotations and citations omitted)) In fact, by Hennes' own declaration, combined with the two admonishments she received from the local authorities during her time in the building, it is reasonable to conclude that she was persistently attempting to interfere and engage the officers while they were actively engaged in an immigration enforcement operation and any alleged force used was reasonable and to disperse an obstructive individual impeding federal operations, not to retaliate against protected speech. *See Id.*; *see also* Defs' Opp. ECF No. 46 at 28-32.

Dated: January 7, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Director
Federal Programs Branch

*/s/ Kathleen C. Jacobs*
JEREMY S.B. NEWMAN
KATHLEEN C. JACOBS
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 674-9761
Fax: (202) 616-8470
kathleen.c.jacobs@usdoj.gov

*Counsel for Defendants*