UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------

Susan Tincher, John Biestman,    )    File No. 25-cv-4669
Janet Lee, Lucia Webb,           )              (KMM/DTS)
Abdikadir Noor, and Alan         )
Crenshaw, on behalf of           )
themselves and other similarly   )    Minneapolis, Minnesota
situated individuals,            )    December 19, 2025
                                 )    2:02 p.m.
            Plaintiffs,          )
                                 )
vs.                              )    BY ZOOM
                                 )    VIDEOCONFERENCE
Kristi Noem, Secretary, U.S.     )
Department of Homeland           )
Security (DHS); Todd Lyons,      )
Acting Director, U.S.            )
Immigration and Customs          )
Enforcement (ICE); Marcos        )
Charles, Acting Executive        )
Associate Director,              )
Enforcement and Removal          )
Operations (ERO), ICE; David     )
Easterwood, Acting Field         )
Office Director, ERO, ICE        )
Saint Paul Field Office; John    )
A. Condon, Acting Executive      )
Associate Director, Homeland     )
Security Investigations (HSI);   )
The Department of Homeland       )
Security; Unidentified Federal   )
Agencies; and Unidentified       )
Federal Agents; in their         )
official capacities,             )
                                 )
            Defendants.          )
------------------------------------------------------------


BEFORE THE HONORABLE KATHERINE M. MENENDEZ
UNITED STATES DISTRICT COURT JUDGE
**(STATUS CONFERENCE)**


Proceedings reported by certified stenographer;
transcript produced with computer.


PAULA K. RICHTER, RMR-CRR-CRC
(612) 664-5162

**APPEARANCES** (Via Zoom Videoconference):

For the Plaintiffs:       Ciresi Conlin LLP
                          KYLE W. WISLOCKY, ESQ.
                          225 South Sixth Street
                          Suite 4600
                          Minneapolis, MN 55402

                          The Law Office of Kevin C. Riach
                          KEVIN C. RIACH, ESQ.
                          125 Main Street Southeast
                          Suite 339
                          Minneapolis, MN 55414

                          American Civil Liberties Union
                          of Minnesota
                          ALICIA L. GRANSE, ESQ.
                          P.O. Box 14720
                          Suite 1400
                          Minneapolis, MN 55414

                          Forsgren Fisher
                          REBECCA ROGERS, ESQ.
                          VIRGINIA R. McCALMONT, ESQ.
                          JACKSON EVERT, ESQ.
                          225 South Sixth Street
                          Suite 1500
                          Minneapolis, MN 55402

For the Defendants:       United States Department of
                          Justice
                          ANDREW I. WARDEN, ESQ.
                          1100 L Street Northwest
                          Suite 11400
                          Washington, DC 20005

                          United States Attorney's Office
                          ANA VOSS, ESQ.
                          300 South Fourth Street
                          Suite 600
                          Minneapolis, MN 55415

Court Reporter:           PAULA K. RICHTER, RMR-CRR-CRC
                          300 South Fourth Street
                          Box 1005
                          Minneapolis, Minnesota 55415

# P R O C E E D I N G S

**(VIA ZOOM VIDEOCONFERENCE)**

THE COURT:  Let's go ahead and get started.  I want to make sure that, first of all, to our court reporter, can you hear me?

COURT REPORTER:  Yes, Judge, I can hear you.

THE COURT:  Very good.  So I think the most organized way to get notices of appearances is to begin with whoever on behalf of the plaintiff is going to take the lead for today's call, if you would please identify yourself and let me know of anybody else that needs to be identified on the record for plaintiffs' counsel.

MR. WISLOCKY:  Yes, Judge.  This is Kyle Wislocky, counsel for plaintiffs.  I am going to be taking the lead for plaintiffs on today's call.  There's a number of other attorneys that are also representing plaintiffs that are on the call today, including Kevin Riach, Alicia Granse, and Rebecca Rogers and Virginia McCalmont.

THE COURT:  Okay.  But you, Mr. Wislocky, are going to be handling the conversation today?

MR. WISLOCKY:  Yes, I am, Your Honor.

THE COURT:  Great.  Welcome to all of you.

Let's do the same with whomever is going to be handling the call for the government today.

MR. WARDEN:  Good afternoon, Your Honor.  This is Andrew Warden from the Department of Justice in Washington, and with me on the line is Ana Voss, the civil chief from the District of Minnesota there.

THE COURT:  Great.  Welcome to you, Mr. Warden, and welcome, as always, Ms. Voss.

Thank you, all, for getting on the phone with me with relatively short notice.  To be clear, the purpose of today's call is not to dive in any real way into the merits of the pending complaint or the pending motion for a temporary restraining order.  Instead, I'm looking to figure out how to manage this from a scheduling point of view.  And at the highest level, I would summarize that the plaintiffs continue to seek a sort of two-part process with an immediate consideration of the motion for temporary restraining order.

Ordinarily, temporary restraining orders are considered in the realm of being ex parte, being issued without knowledge of the other side in an extremely swift matter.  And then preliminary injunctions, while still expedited, certainly compared to final injunctive relief in a case, tend to be entered with a little bit more time for deliberation and development of factual record.

And the main disagreement between the parties at this point is whether we should handle this in two steps,

first a temporary restraining order, followed by a preliminary injunction -- a discussion about a temporary restraining order and exploration of a preliminary injunction or whether they should be handled in one step as sometimes occurs with an expedited schedule put in place and have the Court just essentially convert the pending motion to one for preliminary injunctive relief and develop the record a little more fully.

So I'd like to begin with you, Mr. Wislocky.  Why don't you share with me what your position is.

MR. WISLOCKY:  Thank you, Your Honor.  Yeah, plaintiffs' position is that we should proceed with a temporary restraining order in the coming days.  Plaintiffs have requested the Court to order defendants to file their opposition to the temporary restraining order by noon on this coming Sunday with a hearing to follow, obviously, at the -- subject to the Court's availability, but we have proposed Monday.  Obviously we'll follow the Court's direction on the specific timing, but from our perspective, time is of the essence.  There are members of the plaintiff class, observers and protesters, that are continuing their lawful activity.  They're not going to stop observing defendants in public, and defendants have shown no indication that they're going to stop -- or that they're going to start respecting plaintiffs' rights.

So the imminent harm that observers and protesters face is ongoing and, critically, the imminent need for a hearing now is entirely of defendants' own making. The needs created through the breadth of defendants' conduct and their systematic targeting of peaceful individuals. Since the government is giving no indication that it's going to alter its conduct in the immediate future, plaintiffs cannot wait until next year for relief.

The government has been on notice of a suit challenging this type of conduct because ICE has made comparable deployments elsewhere, places like Chicago and Los Angeles, and each time litigation has ensued. You know, in those cases, the TRO requests were adjudicated in a matter of days. They weren't converted to preliminary injunctions and only heard weeks later, as the government is proposing here.

There's also significant overlap to these issues. In many cases, as we've detailed in the complaint, the unconstitutional actions that defendants are taking here in Minnesota are the same types of actions that they've taken elsewhere. And of course the Department of Justice is handling all of these matters, so I don't believe there's any legitimate claim by the government of an element of surprise or ill-preparedness to respond on these issues.

THE COURT: Okay. Can I ask just a couple of

somewhat collateral questions for you, and then I'll pivot to Mr. Warden. You mentioned that the government has been on notice of similar litigation because in two other cities there were requests for temporary restraining orders. Am I correct that one was granted, the one in Chicago, and one was denied, the one in Los Angeles?

MR. WISLOCKY: That's my understanding as well, Your Honor. I'll note that the one in Los Angeles, there was a preliminary injunction granted, although the FRO itself, I believe, was denied prior to that. But yes, Your Honor.

THE COURT: Okay. And I also note that there was a TRO and a preliminary injunction granted in Chicago. The preliminary injunction in Chicago was stayed about a month ago by the Seventh Circuit. I don't want to read too much into the significance of the stay as the Seventh Circuit itself told us not to do. "Do not overread this order" I think is an exact quote.

Are you aware of whether there has been argument in that case, whether there has been any ruling from the Seventh Circuit, what has happened in the Chicago case?

MR. WISLOCKY: I'm not at the moment aware of the subsequent steps following the Seventh Circuit's order that Your Honor has referenced. I'm happy to find out that detail and provide it to the Court.

THE COURT:  Okay.  I can find out, too.  I had a long list before today's call -- I'm sure you all did as well -- and I just haven't gotten to seeing what was going on in the Seventh Circuit docket.  I can do that homework.  Thank you for answering those questions.

Mr. Warden, same question for you.  Tell me about the government's position for why we should sort of skip the TRO step and go straight to preliminary injunction.  I think that you asked to be able to file your response, including factual and legal response, on January 9th.  Tell me why that makes sense.

MR. WARDEN:  Yes, Judge.  Thank you.  Andrew Warden for the defense.

Yes, we think a consolidated approach here just makes good sense for efficiency for the parties and the Court, having litigated similar cases in Los Angeles and Chicago, and I'm happy to tell you the posture of those cases.  I think what happened there is we went through multiple cycles of briefing over the same issues that really led to some redundancy and I think inefficiency, and so I think combining all of this into just one set of briefs that then Your Honor can issue a decision that would be an appealable order for either side, which I think is likely to go up either way this Court decides it, would be I think the most efficient way forward.

As for the timing, yes, we would ask for our response to be due January 9th. We think that's a reasonable approach here. The government does need time to investigate the very serious allegations that plaintiffs have made in their declarations. That is fact-specific, and that certainly takes time, and I think needs to account for likely personnel lapses coming up during the holiday period.

As we noted, many of these allegations in the declarations occurred upwards of two weeks ago, into early December, one as far back as mid November. And given the length and breadth of the filing that plaintiffs have made, they certainly didn't start this work yesterday, and so we think that it's fair for the government to have an appropriate opportunity to submit papers and also any contrary declarations.

I think as far as the imminence goes, I think it's very speculative that there is going to be any forthcoming harm to the named plaintiffs here. I think what differentiates this case very much so from the cases my friend on the other side mentioned in Chicago and LA is that there were sustained protests at the downtown federal building in Los Angeles on a daily basis, similarly at the ICE facility in suburban Chicago, where there were basically daily engagements between protesters and federal authorities.

Everything here seems to be very isolated and sporadic incidents about, you know, traffic engagements with certain plaintiffs all across the City of Minneapolis, so it really seems quite speculative that any particularly named plaintiff would have another engagement between now and when the time to brief this.  Particularly, there's been no allegation, so far as I've read the declarations, admittedly somewhat quickly, that any plaintiff has been subject to any kind of repeat engagement.  These seem to be one-time events that have happened to each particular plaintiff.  So we think, you know, given the totality of circumstances, it would be appropriate to treat this as a preliminary injunction on that proposed schedule.

I'm happy to answer Your Honor's questions on the status of the LA and Chicago cases.

THE COURT:  Yeah, do you mind filling me in about what's going on before the Seventh Circuit?

MR. WARDEN:  Sure.  So after the Seventh Circuit stayed the injunction, which the proposal here is functionally I think nearly identical to what was proposed in the district court there, the Seventh Circuit stayed the injunction, the plaintiffs in the Chicago case moved to voluntarily dismiss their case in light of that decision. And so the district court there is hearing a motion to voluntarily dismiss in January, and the appeal is currently

stayed because the plaintiffs no longer want to pursue the case.

In the Los Angeles case, as my friend noted, the district court denied a TRO in that case, later issued a preliminary injunction. Yesterday, in fact, the Ninth Circuit granted a partial stay in favor of the government that stayed the injunction there as to all protesters who were not parties to the case. The Ninth Circuit is now hearing expedited argument on the PI that will be heard, I believe, the first week of January.

THE COURT: And when you say as to protesters who were not parties, do you mean as to protesters aside from the named individual plaintiffs? I don't remember whether LA had class allegations as well.

MR. WARDEN: They did not raise class allegations. The injunction covered protesters generally, which was not a defined term in the injunction and so the Ninth Circuit has now stayed the injunction as to those individuals.

THE COURT: Okay. Thank you very much. Anything else you want to say, Mr. Warden?

MR. WARDEN: No, Your Honor. Thank you.

THE COURT: Okay. Mr. Wislocky, anything you'd like to say in response to the government's suggestions here or observations?

MR. WISLOCKY: Yeah. And I just wanted to briefly

mention that this implication that plaintiffs have taken some lengthy amount of time to work up this complaint and motion, it's simply not true, Your Honor.  Plaintiffs' counsel -- plaintiffs have worked furiously and as expeditiously as possible to get this complaint and motion filed and before the Court because relief is needed urgently now.

All six plaintiffs in this case have experienced retaliation or constitutional violations in this month of December, and Plaintiff Noor was arrested on Monday of this week.  So I think if you look at the timeline of ICE deployments to cities, the plaintiffs here in Minnesota have had the least amount of time from the time of the increased enforcement to seeking redress from the Court for constitutional violations, is my understanding.

You know, they mention -- my friend also mentioned one particular affidavit that concerned some activity in November, which is one of the 14 affidavits -- or 15 affidavits we filed.  That affidavit was executed on Monday of this week, so this is not something that we've taken a month to work up.

THE COURT:  All right.  Thank you very much.

I'm going to express a concern that I have, and then sort of make a decision here, but I'll give you an opportunity to respond to my concern, Mr. Wislocky.

I have read carefully the requested -- the proposed TRO, and my biggest reservation, it sounds like, is one shared by judges on the Seventh Circuit, perhaps on the Ninth Circuit, and that is that the scope of the TRO is significant and broad.  I'm not going to characterize whether it is as broad as the scope of relief that the Seventh Circuit expressed concern about or more narrowly tailored.  I have not lined up the two orders there.  I also am not aware of the differences between the TRO and the preliminary injunction in Chicago.  But I do have concerns that some of the relief requested in the TRO is not directly tied to allegations raised by the individual plaintiffs here.  It appears to be, in some cases, sort of prophylactic in nature, designed to capture or monitor or surveil violations of the sort that the plaintiffs complain about.

So a couple of examples.  I noticed there's a set of proposed restrictions on the use of flash-bangs or grenades, although our complaint and the TRO and supporting documents have no indication that either of those tools have been used here in the District of Minnesota.

There is a request for mandatory identifiers for officers, with some thought-out exceptions which I appreciate, but nonetheless, a pretty broad request for officers to wear identifiers, identifying information, badge numbers or names, and that is -- although there is

substantial briefing in the memorandum in support of the TRO, those particular requests and their legality aren't addressed in that briefing.

The same with a requirement that people be mandated to turn on their body-worn camera devices.  Some of those requests line up with experiences that the individual plaintiffs describe.  For instance, being able to turn on your body-worn camera when you are interacting with a protester or observer.  But a good number of those requests seem to be about turning on a body-worn camera during interactions that appear to have nothing to do with First Amendment exercise of protesters and things like wearing a body-worn camera when executing a removal order or on a charter flight for effectuating the removal order.

So I have some real concerns with the scope of relief that you are requesting with some of those specific asks.  I know that I assured you all that this isn't a debate on the merits.  I'm not looking for a debate on the merits, but that is informing my thinking about schedule, so I just figured it would be fair to give you a chance to tell me what's wrong with my thinking there.

MR. WISLOCKY:  I appreciate the opportunity, Your Honor.  I would say, to me, the concerns that the Court has raised or the thinking around the scope of the proposed order are things that, of course, you know, are valid that

the Court has raised and from my perspective, are things that can be addressed in the discussion, you know, at a hearing or in the briefing by -- you know, as we proceed. They would not be a basis to not have entry of an order that the Court feels is appropriate and factually supported for the wealth of other conduct, which is numerous other, you know, constitutional violations that have been detailed in the complaint and are discussed in the motion and that are also in the proposed order.

So I would say -- I mean, again, not arguing merits on it, I understand we're talking scheduling here, so from my perspective, these are things that can be dealt with at a hearing next week.  And, you know, to the extent the Court concludes that at that temporary restraining order stage plaintiffs haven't adequately supported everything that's in the requested relief, then the Court can order a narrower temporary restraining order and we can proceed through the litigation process and through an expeditious preliminary injunction stage.

THE COURT:  Okay.  And one additional question for you, Mr. Wislocky.  Do you believe that in the 48 hours between now and the due date for the government's response, that they could gather factual information about the request, or is your thought that they would just set forth legal positions broadly, similar to the ones that they did

in Chicago and Los Angeles?  I'm not saying they didn't address factual specifics, but that they could import the legal work that's already been done but -- I mean, do you think that they can provide meaningful factual response to the factual allegations in the complaint and the motion for TRO between now and noon on Sunday?

MR. WISLOCKY:  I think a number of these events have been newsworthy in the -- you know, some of these arrests and things, I suspect they've already been gathering facts related to these things even prior to the lawsuit.  I would expect that they would have review processes related to these sorts of interactions and uses of force that are occurring.  So, you know, I can't speak for my friends in the government and what they actually are or are not able to do, but I expect they would be able to respond as needed within the time frame we've proposed.

THE COURT:  Okay.  Mr. Warden, anything you'd like to say in response?

MR. WARDEN:  Yes, Judge.  I think we would appreciate time to investigate these factual matters to follow up on your last question.  We just received this complaint this morning here, and so we do take these allegations seriously.  They, you know, again cover a wide range of incidents across a number of different days, and so we think it would be beneficial for the -- you know, I think

the overall judicial function for the government to have time to present an investigation and appropriate facts regarding these incidents should we deem inappropriate rather than file a very truncated response here in 48 hours over, you know, a near holiday weekend, so we would appreciate additional time.

THE COURT:  Give me just a moment, if you would. I'm going to mute myself here while I look at something.

(Off the record briefly.)

THE COURT:  Okay.  Thank you for your patience, everyone.  I'm sorry to keep you waiting.  I was doing some quick math here.

I am going to convert this to a motion for preliminary injunction.  I do not mean to suggest that I do not have -- or take seriously the importance of the rights at issue or the gravity of the allegations of the plaintiffs.  I don't want the fact that I am going to set a schedule that allows a little bit more development of the record to be read as, you know, a prediction of merits in any way or a cavalier attitude to any of what's being talked about.  That's certainly not my intent.  But I want to give this the attention that it deserves.  I expect the government to give it the attention it deserves.  I want a thorough response to the allegations and anticipate that I will receive a thorough response to the allegations,

including development of the facts about the specific allegations contained in the complaint or the request for injunctive relief.

I also am mindful, as I have already tipped my hand a bit, about a body of instruction from the Eighth Circuit and, frankly, from the Supreme Court, but pretty developed by the Eighth Circuit which obviously controls my thinking, about not simply entering injunctive relief that requires the government to follow the law.  That is a kind of call to follow the Constitution injunction, and that is not useful to anyone and it's cautioned against.  But on the other end of the spectrum, to make sure that any injunctive relief, if injunctive relief is granted, is narrowly tailored, carefully designed to address the concerns that would rise to the injunctive relief.

So I am not suggesting there will be an injunction at the end of this process or not, but I am suggesting that I need time to make sure that any request is related to the alleged harms being shown and to give the government an opportunity to address the specifics of the requested injunctive relief.  We have looked somewhat through the records in Los Angeles and Chicago.  There are requests here that don't seem to have been made in those cases, and I expect some thoughtful exploration of those in briefing to come.

So here is the schedule I'm going to set. I should also make a note about the holidays. This is a difficult reality because in my practice as a judge, it is important to me to support people spending time with their families and to support people being able to take well-deserved breaks around holidays, but the First Amendment and the Fourth Amendment aren't suspended over the holidays. And the concerns raised by the plaintiffs here are genuine and as alleged, are urgent, and so there is a tension between my normal instinct to be generous with deadlines over the holidays so that lawyers can have lives with their families and my concern about the allegations that have been raised by the plaintiffs. And neither Chicago nor Los Angeles were dealing with this litigation around our sort of biggest and most observed set of holidays in the United States as we are here. So I am trying to leave some room for that humanity while also not putting this on a back burner or anything.

I am going to order that the government respond to the motion by January 5th, and the plaintiffs, if they wish, may file any response by January 7th. And I will hold a hearing at some point on January 8th if we can find a schedule that works for everyone.

Is there anything about that specific schedule, as opposed to the bigger decision about how to handle this,

that needs attention?  Let me start with you, Mr. Warden.  I know it is less time than you asked for.  It is more time than the plaintiffs were asking for.  Is there anything about the 5th that you cannot make that work?

MR. WARDEN:  No, Judge.  January 5th is acceptable.  Thank you.

THE COURT:  Okay.  And how about on behalf of the plaintiffs?  I think I just said that your reply would be the 7th.  Is there anything about that or this that you cannot make work?

MR. WISLOCKY:  No, Your Honor.  When the Court sets this schedule, I would appreciate it if you would just specify on the words that the Court would like for plaintiffs' -- a word limit for plaintiffs' reply.

THE COURT:  Okay.  Actually, I tend to really defer to you all with words, so if you two can meet and confer over the next couple of days and propose any word limit, do so, and if you're able to agree, I'm unlikely to tamper with it.

MR. WISLOCKY:  Understood, Your Honor.  We'll do so.

THE COURT:  Okay.  Thank you.

And does everybody think that they can have somebody in my courtroom -- it would be an in-person proceeding -- on Thursday, January 8th?

MR. WISLOCKY:  Speaking for plaintiffs, yes, Your Honor, we'll have someone there on the 8th.

THE COURT:  Okay.  I'm not sure of the time yet, but I'll ask my invaluable assistant to connect with you about finding a time that we can make work.

How about for the defendants, Mr. Warden or Ms. Voss?

MR. WARDEN:  Yes, Judge.  Andrew Warden.  We will have someone there on the 8th.  Thank you.

THE COURT:  Okay.  Thank you very much for getting together with me with such short notice.  I look forward to continuing to work on these very important issues, and I will see you all on the 8th.  And we will reduce this schedule to probably a docket entry or a docket order or text-only order of some kind.

In the meantime, if the parties need to communicate about anything between now and then, I will be available throughout the intervening two weeks, regardless of the holidays.  And simply email chambers, but of course be sure to copy opposing counsel, and we will determine from those email communications whether we can address whatever the concerns are by email or whether we need to have an additional status conference.

And between now and then, everyone take care of yourselves and happy holidays.  Thank you, all.

(Court adjourned at 2:33 p.m.)

*       *       *

I, Paula K. Richter, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Certified by:  *s/ Paula K. Richter*

Paula K. Richter, RMR-CRR-CRC