

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

Susan Tincher, et al.,

Plaintiffs,

v.

Kristi Noem, et al.,

Defendants.

Case No. 0:25-cv-04669

**AMICUS CURIAE BRIEF OF**

**ELDER MMOJA AJABU, PRO SE**

**DIRECTOR OF PAN-AFRIKAN AFFAIRS, BLACK PANTHER MOVEMENT**

**IN SUPPORT OF PLAINTIFFS**

**STATEMENT OF INTEREST**

Amicus Curiae Elder Mmoja Ajabu submits this brief pro se in his capacity as Director of Pan-Afrikan Affairs for the Black Panther Movement, a political organization historically rooted in the defense of human dignity, constitutional governance, and resistance to state oppression through lawful civic action.

Amicus files this brief to address the systemic constitutional danger presented when executive power is exercised against human beings—particularly Hispanics and Afrikans—without meaningful restraint, transparency, or accountability, and when the executive signals intent to ignore legal limits altogether.

**SUMMARY OF ARGUMENT**

This case presents more than allegations of excessive force. It presents a constitutional stress test.

The Constitution presumes that citizens possess both the right and the civic duty to oppose tyranny through lawful constitutional means when executive power becomes detached from law. That duty is not optional; it is embedded in the structure of republican government.

When a chief executive publicly signals disregard for legal limits, flirts with indefinite power, and tests institutional tolerance for lawlessness, the judiciary becomes the last effective barrier between constitutional governance and rule by will.

The allegations in Tincher v. Noem arise in precisely such a moment.

**ARGUMENT**

I. THE CONSTITUTION RECOGNIZES A CITIZEN RIGHT—AND DUTY—TO OPPOSE TYRANNY

The Founders understood tyranny not as a slogan, but as unchecked executive power. The Constitution therefore embeds multiple lawful mechanisms of resistance:

SCANNED

JAN 2 1 2026

U.S. DISTRICT COURT ST. PAUL

the First Amendment rights of speech, press, assembly, and petition;

access to courts and judicial review;

the duty of officials—and citizens—to refuse unlawful commands;

federalism and structural checks;

the right and duty to change tyrannical government.

The Supreme Court has recognized that the Constitution presupposes an active, vigilant citizenry. See West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 641 (1943) ("Fundamental rights may not be submitted to vote; they depend on the outcome of no elections.").

Citizens are not required to be passive in the face of unconstitutional conduct. They are required to respond lawfully, persistently, and publicly—through courts, protest, documentation, and political action.

That is not extremism.

That is constitutional citizenship.

## II. "TYRANNY" IS A LEGAL CONDITION: WHEN FORCE REPLACES LAW AND ACCOUNTABILITY IS SUPPRESSED

Tyranny, in constitutional jurisprudence, arises when:

Executive agents exercise force without effective constraint;

Disfavored populations are targeted as such;

Oversight, protest, and documentation are suppressed; and

The executive treats legal limits as optional.

The allegations in Tincher—including the use of chemical agents and intimidation against observers and journalists—fit squarely within the category of conduct the Constitution was designed to prevent.

The Supreme Court has repeatedly warned that constitutional violations are magnified when government action chills dissent and accountability. See NAACP v. Alabama, 357 U.S. 449 (1958); City of Houston v. Hill, 482 U.S. 451 (1987).

Force used to silence observation is not law enforcement.

It is power enforcing itself.

## III. EXECUTIVE SIGNALING THAT THE LAW WILL BE IGNORED HEIGHTENS THE COURT'S DUTY TO INTERVENE

Public statements and conduct by Donald Trump signal an intention to:

ignore statutory and constitutional limits;

target entire national, ethnic, and racial groups (including Somalians, Haitians, Ethiopians and historically captured Afrikans born as citizens of America);

treat our Afrikan identity as suspicion;

and subordinate law to his personal will.

Courts have long recognized that executive intent and signaling matter when evaluating constitutional risk. See Trump v. Hawaii, 585 U.S. ___ (2018) (considering executive statements as relevant context).

When an executive announces intentions to act unlawfully, courts are not required to wait and cannot wait until irreparable harm is complete. The court must act hastily and preemptive. Judicial restraint does not mean judicial blindness.

### IV. BEHAVIOR CONSISTENT WITH "KINGSHIP" IS CONSTITUTIONALLY DISQUALIFYING

The Constitution rejects monarchy explicitly. U.S. Const. art. I, §9, cl. 8; art. II, §1.

Conduct demonstrating:

personal loyalty demands;

contempt for judicial orders,

threats against political opponents,

normalization of emergency power,

or flirtation with indefinite tenure

is legally relevant—not rhetorically inflammatory.

The Supreme Court has warned against the "accumulation of all powers" in one branch. The Federalist No. 47 (Madison). When executive behavior mirrors kingship, courts must respond before normalization occurs.

### V. TESTING SYSTEM TOLERANCE IS ITSELF A CONSTITUTIONAL DANGER

Authoritarianism rarely arrives by decree. It arrives by testing limits:

Will courts intervene—or defer?

Will violations be excused as temporary?

Will fear suppress resistance?

If institutions repeatedly tolerate unlawful conduct, tolerance becomes precedent.

Declaratory and injunctive relief exist precisely to stop this process early. See 28 U.S.C. §§ 2201–2202; Fed. R. Civ. P. 65.

### CONCLUSION

This Court is not asked to decide political ideology.

It is asked to enforce constitutional boundaries.

When executive power signals contempt for law, targets human beings by race, suppresses accountability, and tests institutional tolerance for unchecked rule, the Constitution demands judicial action.

Citizens have the right and duty to resist tyranny.

Courts have the duty to make that resistance legal.

Respectfully submitted,

Elder Mmoja Ajabu

Director of Pan-Afrikan Affairs

Black Panther Movement

Pro Se

Indianapolis, IN

1 844 848 6489 x3 phone

**Ajabum15@gmail.com**

Date: January 13, 2026