UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SUSAN TINCHER, JOHN BIESTMAN, JANET LEE, LUCIA WEBB, ABDIKADIR NOOR, and ALAN CRENSHAW, *on behalf of themselves and other similarly situated individuals*,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS); TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement (ICE); MARCOS CHARLES, Acting Executive Associate Director, Enforcement and Removal Operations (ERO), ICE; DAVID EASTERWOOD, Acting Field Office Director, ERO, ICE Saint Paul Field Office; JOHN A. CONDON, Acting Executive Associate Director, Homeland Security Investigations (HSI); The Department of Homeland Security; Unidentified Federal Agencies; and Unidentified Federal Agents; *in their official capacities*,<br><br>Defendants. | Case No. 25-cv-04669<br><br>**SECOND DECLARATION OF LUCIA WEBB** |

1

I, Lucia Webb, declare as follows:

1. I am a 31-year-old resident of the Powderhorn neighborhood in Minneapolis, Minnesota. I've lived in Minneapolis since 2016. I'm the Operations Director at a local non-profit.

2. On January 21, 2026, I was monitoring a neighborhood chat for news of ICE activity because I am committed to observing and documenting the conduct of ICE officers, who have been violating the constitutional rights of protesters and legal observers in Minneapolis.

3. I learned that ICE was all over South Minneapolis, including around a school I have been volunteering at, so I contacted a friend, who picked me up.

4. As he was picking me up, we spotted a suspected ICE vehicle: a minivan with blacked out windows and Tennessee plates. We followed the van into Seward.

5. The van was eventually joined by another suspected ICE vehicle. Out of fear of being boxed in between the two cars, we pulled over to allow the second car to go ahead of us.

6. We continued following, losing one of the cars, until the car we were still following made a dangerous turn in front of a bus and we were left behind.

We continued to drive, heading back toward our neighborhood, as ICE was a large presence in the area.

7. We monitored the situation on foot for a while at the school near our houses. After school drop-off was over, we took a quick break, and then began driving again at approximately 10:35 a.m. A little after 10:45 a.m., we encountered a suspicious looking black Chevrolet with New York plates. The license plate read LVE5266.

8. We began following the SUV to monitor their movements, inform our neighbors, and document any misconduct. The driver was clearly watching us in the side mirror, and he made multiple unsafe driving choices at stop signs.

9. While we were following the vehicle, we maintained a safe distance from the SUV and obeyed all traffic laws. We did not at any point obstruct or impede their immigration enforcement activities or prevent them from driving in the direction they wanted to travel.

10. After about 5 minutes, at approximately 10:53 am CST, the SUV stopped in the middle of the road at 43rd St and 13th Ave S in South Minneapolis. To ensure we maintained a safe distance from the SUV, we stopped as well.

11. Three federal immigration enforcement agents exited the SUV. All three of them were masked and wearing tactical gear. At least two of them wore vests that read "Border Patrol."

12. At that point, I began recording with my cell phone. My friend put up his hands to show that he was not a threat. We kept our windows rolled up.

13. Two agents approached the driver's side and one agent approached the passenger side. One agent on the driver's side began speaking to my friend and held up his pointer finger. He said, "This is your first warning. You are unlawfully impeding. 18 U.S.C. § 111. You want to learn it, learn it."

14. At this point, one other person on the sidewalk began recording and blowing their whistle.

15. In response to the agents' accusations, my friend said, "I am driving on a public road where I live." I said, "We are allowed to observe your actions." We remained calm and did not threaten the agents or in any way.

16. An agent threatened to "arrest [us] for impeding."

17. The agents then returned to their vehicle. Observers on foot continued whistling as the vehicle drove away.

18. After the agents pulled away, my friend said, "I would prefer to disengage from them." I agreed. I then informed other legal observers with whom I was speaking that we were disengaging with those agents. A few moments

later, we pulled over to take some deep breaths and calm down after the jarring encounter.

19. I chose to disengage because the agents had given us a "warning." I interpreted this to mean that they would retaliate against me by threatening, detaining, using chemical weapons against, or even arresting me if I continued to follow them.

20. I was scared when the agents approached and surrounded my friend's car. But I view it as my civic duty to observe and protest ICE activity in Minneapolis. I will continue to follow ICE vehicles at a safe distance to observe, document, share information about, and protest their actions.

I declare under penalty of perjury that everything I have stated in this document is true and correct.

Dated and signed on ___1/22/2026___ in Hennepin County, State of Minnesota.

_____
Lucia Webb