UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SUSAN TINCHER, JOHN BIESTMAN, JANET LEE, LUCIA WEBB, ABDIKADIR NOOR, and ALAN CRENSHAW, *on behalf of themselves and other similarly situated individuals*,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS); TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement (ICE); MARCOS CHARLES, Acting Executive Associate Director, Enforcement and Removal Operations (ERO), ICE; DAVID EASTERWOOD, Acting Field Office Director, ERO, ICE Saint Paul Field Office; JOHN A. CONDON, Acting Executive Associate Director, Homeland Security Investigations (HSI); The Department of Homeland Security; Unidentified Federal Agencies; and Unidentified Federal Agents; *in their official capacities*,<br><br>Defendants. | Case No. 25-cv-04669 (KMM/DTS)<br><br><br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF AMENDED MOTION TO SEAL DECLARATIONS** |

## INTRODUCTION

Plaintiffs submit this memorandum in support of their Amended Motion to Seal the unredacted declarations of Witness #1 and Witness #2 filed in connection with Plaintiffs' Motion for Temporary Restraining Order. As the Court has already recognized in granting preliminary injunctive relief, this case arises from the alleged retaliatory conduct of federal agents during Operation Metro Surge, an increasingly tense immigration enforcement

operation in Minnesota. The declarations in this case contain sensitive identifying and personal information that, if disclosed publicly, would expose the witnesses to a substantial risk of harassment and retaliation. Accordingly, Plaintiffs respectfully request partial sealing of the declarations of Witnesses #1 and #2 to prevent their personal identifying information from being disclosed. Because Plaintiffs will continue to file declarations in this case, per the Court's directive, Plaintiffs also respectfully request partial sealing of all future nonparty declarations subject to a joint motion for continued sealing consistent with Local Rule 5.6(d)(3).

## ARGUMENT

"There is a common-law right of access to judicial records." *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). But "the right to inspect and copy judicial records is not absolute." *Warner Commc'ns*, 435 U.S. at 598. "[T]he decision as to access is one best left to the sound discretion of the [district] court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 599.

The facts and circumstances of this case strongly favor sealing identifying information in nonparty declarations. There is no dispute that the situation in Minnesota is tense and at the center of national political debate. With that posture comes growing scrutiny of every aspect of this case including, regrettably, the declarants, who themselves have experienced or witnessed unconstitutional treatment. To ensure that this case proceeds with the benefit of nonparty declarants' perspectives, Plaintiffs respectfully ask that the

court seal the declarations in question and permit the temporary sealing of all future nonparty declarations.

I. **There is a high risk that the declarations of Witnesses #1 and #2 and future nonparty declarants will be used for improper purposes.**

Courts have "supervisory power over [their] own records and files" and may use this power to deny access to court files that "become a vehicle for improper purposes." *Id.* at 598 (providing examples of when court files have been used for improper purposes). When determining whether to limit access to court files, courts weigh "'the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed.'" *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 791 (8th Cir. 2021) (quoting *IDT Corp.*, 709 F.3d at 1223); *see also Warner Commc'ns*, 435 U.S. at 602.

Interests served by the common-law right of access include allowing the public to evaluate judicial proceedings and holding the court accountable for its decisions. *In re Bair*, 9 F.4th at 791. "But these interests have 'bowed before the power of a court to insure that its records are not used to gratify private spite,' to 'promote public scandal,' [or] to serve 'as reservoirs of libelous statements for press consumption.'" *Id.* (quoting *Warner Commc'ns*, 435 U.S. at 598). The court's weighing of these competing values relies heavily "'on the observations and insights of the presiding judge.'" *Id.* (quoting *United States v. Webbe*, 791 F.2d 103, 106 (8th Cir. 1986)).

The salutary interests served by sealing the declarations of Witnesses #1 and #2 and future nonparty declarants sharply outweigh the interests served by the common-law right

3

of access. If the declarations in question are not sealed, there is a high risk that they will be used for improper purposes, which would undermine not only the privacy interests of the witnesses and future nonparty declarants but also the fair administration of justice.

### A. Failing to seal the declarations of Witnesses #1 and #2 and future nonparty declarants would undermine their significant privacy interests.

When weighing the common-law right of access against the salutary interests served by nondisclosure, courts consider "the privacy interests of those resisting disclosure." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995); *see also IDT Corp.*, 709 F.3d at 1223–24 (relying on *Amodeo*). The privacy interests of "innocent" individuals "weigh heavily in a court's balancing equation." *Amodeo*, 71 F.3d at 1050–51 (quotation omitted). The privacy interests of Witnesses #1 and #2 and future nonparty declarants—all "innocent" individuals in this litigation—strongly favor nondisclosure of their identities. If their identities are disclosed, they face two significant risks: doxing and harassment by supporters of Operation Metro Surge and potential retaliation by the current administration.

First, if the identities of the witnesses and future nonparty declarants are not shielded from the public, these "innocent" individuals will face a serious threat of doxing and harassment by those who politically support Operation Metro Surge. Doxing is defined as "publicly identify[ing] or publish[ing] private information about (someone) especially as a form of punishment or revenge." *Doxing*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/dox (last viewed on Jan. 26, 2026). The use of doxing as a tool of political retribution is on the rise—as are the attendant risks "to

4

physical safety, digital security, and civic participation."[1] Supporters of the current administration have used doxing to intimidate and retaliate against their perceived opponents.[2] And it is likely that they will do so again; the current administration has encouraged it.[3] The escalating tension in Minnesota between federal agents and state protesters and observers, coupled with inflammatory rhetoric about these protesters and observers, create a substantial risk that supporters of Operation Metro Surge will view Witness #1, Witness #2, and future nonparty declarants as political enemies and will seek to dox and harass them.[4] This unfortunate but very real threat favors nondisclosure. *See Amodeo*, 71 F.3d at 1050–51; *Cancino Castellar v. Mayorkas*, No. 17-CV-00491-BAS-

---

[1] Shuhan Wang, *The Escalating Threats of Doxxing and Swatting: An Analysis of Recent Developments and Legal Responses*, Nat'l Ass'n of Atty's Gen. (Aug. 12, 2025), at https://www.naag.org/attorney-general-journal/the-escalating-threats-of-doxxing-and-swatting-an-analysis-of-recent-developments-and-legal-responses/.

[2] Huo Jingnan, Jude Joffe-Block & Audrey Nguyen, *People Are Losing Jobs Due to Social Media Posts about Charlie Kirk*, NPR (Sept. 13, 2025), at https://www.npr.org/2025/09/13/nx-s1-5538476/charlie-kirk-jobs-target-social-media-critics-resign.

[3] Oliver Holmes, *JD Vance Backs Mass 'Doxing" Campaign to Find and Harass Charlie Kirk Critics*, The Guardian (Sept. 16, 2025), at https://www.theguardian.com/us-news/2025/sep/16/jd-vance-doxing-charlie-kirk-critics.

[4] María Luisa Paúl, *Her Husband Was Mistakenly Deported. Now She's Caught in a Political Frenzy*, Wash. Post (Apr. 22, 2025), at https://www.washingtonpost.com/immigration/2025/04/21/jennifer-vasquez-sura-kilmar-abregro-garcia-wife (describing family of Kilmar Abrego García moving to a safe house following online harassment); Jessica Pishko, T*he Private Citizens Who Want to Help Trump Deport Migrants*, The New Yorker (June 6, 2025), at https://www.newyorker.com/news/the-lede/the-private-citizens-who-want-to-help-trump-deport-migrants.

5

AHG, 2021 WL 3678440, at *4 (S.D. Cal. Aug. 19, 2021) (granting a motion to seal based on threats of doxing).

Second, the disclosure of the identities of Witness #1, Witness #2, and future nonparty declarants would put them at risk of retaliation by the administration. In the wake of Renee Good's killing, "Border Czar" Tom Homan pushed to create a "database" of "those who impede ICE" to make these individuals "famous."[5] It is unclear whether this "database" has been created and, if so, what it is being used for. But the mere threat evinces an intent to retaliate against perceived opponents—including lawful protesters and observers, like the declarants in this case. Indeed, Witnesses #1 and #2 have already expressed fear for their safety. *See* ECF 107 at ¶ 17; ECF 109 at ¶ 18. The risk that these witnesses and future nonparty declarants will be targeted by the current administration also favors nondisclosure. *See Amodeo*, 71 F.3d at 1050–51.

In sum, the privacy interests of Witness #1, Witness #2, and future nonparty declarants "weigh heavily" in favor of sealing identifying information in their declarations. *See id.* (quotation omitted). This is especially so given the likelihood that their declarations, if unsealed, will be used for "improper purposes." *See Warner Commc'ns*, 435 U.S. at 598. These privacy interests alone provide a basis for granting Plaintiffs' motion. *See id.*; *Amodeo*, 71 F.3d at 1050–51; *see also Webster Groves Sch. Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1377 (8th Cir. 1990) (finding juvenile's privacy interest outweighed publisher's interest in access to the juvenile's records); *Indep. Sch. Dist. No. 283, St. Louis Park, Minn.*

---

[5] *Homan Pushes to Create 'Database' to Make Those Who Impeded ICE 'Famous'*, Fox News (Jan. 15, 2026), at https://www.foxnews.com/video/6387789141112.

*v. S.D. By & Through J.D.*, 948 F. Supp. 892, 898 (D. Minn. 1996) (similar). As the Court recognized in its preliminary injunction order, sealing of nonparty witness declarations is appropriate in this case. *See* ECF 85 at 40 n.20.

  **B.** **Failing to seal the declarations of Witnesses #1 and #2 and future nonparty declarants would impede the fair administration of justice.**

  When balancing the interests of the common-law right of access and the salutary interests served by nondisclosure, courts also consider "the danger of impairing law enforcement or judicial efficiency." *Amodeo*, 71 F.3d at 1050. "Unlimited access, while perhaps aiding the professional and public monitoring of courts, might adversely affect law enforcement interests or judicial performance." *Id.* For instance, in cases that depend on witness testimony, the judicial performance may be impaired if witnesses are discouraged from participating. *See id.* And witnesses may be discouraged from participating if, in a high profile and politically charged case such as this one, they are worried about their identity being exposed. *See id.* In these cases, if "confidentiality cannot be assured, cooperation will not be forthcoming." *Id.* One consideration for sealing, "therefore, is whether public access to the materials at issue is likely to impair in a material way the performance of Article III functions." *Id.*

  Such impairment would occur here if the identities of the witnesses and future nonparty declarants were disclosed. Given the previously stated threats to their privacy interests, Witnesses #1 and #2 and future nonparty declarants would be discouraged from participating in this case if their anonymity could not be assured—at great cost to the administration of justice. As the Court acknowledged in its preliminary injunction order, the nonparty declarations have served important purposes in this case. *See* ECF No. 85 at

7

44 & n.22 (finding that the nonparty declarations spoke to Plaintiffs' credibility and the likelihood of future harm). The nonparty declarations have also provided invaluable (and largely unrebutted) insight into Defendants' conduct on the ground. *See id.* at 37–38. And they have bolstered the public record at a time when the federal government is curtailing access to information—even for elected officials and local law enforcement.[6]

If Witnesses #1 and #2 are not allowed to file their declarations under seal, prospective nonparty declarants may choose not to file declarations at all. This chilling effect would not only impede the administration of justice by depriving the Court of key evidence—it would also undermine faith in the legal system by effectively excluding witnesses to the alleged constitutional violations in this case. These negative consequences provide another basis for granting Plaintiffs' motion. *See Amodeo*, 71 F.3d at 1052 (granting a motion to seal in part because "valuable cooperation might cease" if informants "anticipate that their cooperation will likely become a matter of public knowledge"); *cf. Signature Mgmt. Team, LLC v. Doe*, 323 F. Supp. 3d 954, 960 (E.D. Mich. 2018) (granting a motion to seal because defendant showed that he engaged in substantial protected speech that unmasking would chill).

---

[6] *FBI Takes Over Investigation Into Fatal Shooting of Renee Good*, MPR News (Jan. 8, 2026), at https://www.mprnews.org/story/2026/01/08/fbi-will-investigate-after-ice-agent-shoots-renee-good-in-minneapolis; Kilat Fitzgerald, *Minneapolis Shooting: Minnesota BCA Says DHS Blocked Them from Shooting Scene*, Fox 9 (Jan. 24, 2026), at https://www.fox9.com/news/minneapolis-shooting-minnesota-bca-says-dhs-blocked-shooting-scene; Sergio Martínez-Beltrán, *DHS Restricts Congressional Visits to ICE Facilities in Minneapolis with New Policy*, NPR (Jan. 22, 2026), at https://www.npr.org/2026/01/11/nx-s1-5673949/dhs-restricts-congressional-visits-to-ice-facilities-in-minneapolis-with-new-policy.

## II. Sealing the declarations of Witnesses #1 and #2 and future nonparty declarants would not impair the interests served by the common-law right of access.

Finally, the Court should grant Plaintiffs' motion because sealing the declarations in question would not undermine the interests served by the common-law right of access. As discussed above, the common-law right of access enables the public to evaluate judicial proceedings and hold the court accountable for its decisions. *See In re Bair*, 9 F.4th at 791. Sealing identifying information in the declarations of Witnesses #1 and #2 and future nonparty witnesses would not impair these functions. The redacted declarations of Witnesses #1 and #2 obscure very little: only that which could be used to identify the witnesses. The vast majority of information in the declarations—and all the information that is relevant to the Court's legal analysis—is already public. *See* ECF 107; ECF 109. Therefore, sealing the declarations of Witnesses #1 and #2 and future nonparty witnesses would not prevent the public from evaluating judicial proceedings or holding the Court accountable for its decisions. *In re Bair*, 9 F.4th at 791. In short, it would not impede the interests served by the common-law right of access in any meaningful way. *See id.*

Because the salutary interests served by nondisclosure far exceed the interests served by the common-law right of access, Plaintiffs' Amended Motion to Seal should be granted. *See id.*; *Doe v. Mayorkas*, No. 22-cv-3142 (JRT/DJF), 2024 WL 3014865, at *1–2 (D. Minn June 14, 2024) ("[T]he serious risk to Plaintiff and Plaintiff's family members from publicly disclosing their names outweighs any public interest.").

9

### III. The declarations of all future nonparty declarants should be presumptively temporarily sealed.

In addition to granting Plaintiffs' Amended Motion to Seal as to the declarations of Witnesses #1 and #2, Plaintiffs respectfully request that the Court allow the parties to temporarily seal all personally identifying information in all future nonparty declarations, subject to the filing of a joint motion for continued sealing within 21 days of a declaration's filing, in accordance with Local Rule 5.6(d)(3).

The district court has broad authority to regulate access to court files based on the unique "facts and circumstances" of the case. *Warner Commc'ns*, 435 U.S. at 599; *see In re Bair*, 9 F.4th at 791 (explaining that sealing decisions rely "heavily . . . on the observations and insights of the presiding judge" (quotation omitted)). Given the evolving nature of Operation Metro Surge, the Court has already authorized the parties to continue to file declarations in this case. *See* ECF 81 at 87:5–13. In the interest of judicial economy, Plaintiffs respectfully request that the Court allow the parties to temporarily seal all personal identifying information in all future nonparty declarations, subject to a joint motion for continued sealing consistent with Local Rule 5.6(d)(3).

### CONCLUSION

Because the confidentiality interests of Witnesses #1 and #2 outweigh the interests served by the common-law right of access, Plaintiffs respectfully request that the Court grant their Amended Motion to Seal and permanently seal these witnesses' declarations. Plaintiffs further request that the Court temporarily seal all personal identifying information in all future nonparty declarations (including a witness's name), subject to the filing of a joint motion for continued sealing under Local Rule 5.6(d)(3). In the event that

any witness decides to no longer remain anonymous with respect to their statements in these proceedings, Plaintiffs will promptly inform the court and request that the respective declaration be unsealed.

Dated: January 27, 2026

/s/ Caitlinrose H. Fisher

**AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA**
Teresa Nelson (#269736)
Catherine Ahlin-Halverson (#350473)
Alicia Granse (#400771)
P.O. Box 14720
Minneapolis, MN 55414
(651) 529-1692
tnelson@aclu-mn.org
cahlin@aclu-mn.org
agranse@aclu-mn.org

**THE LAW OFFICE OF KEVIN C. RIACH**
Kevin C. Riach (#389277)
125 Main St. SE, Suite 339
Minneapolis, MN 55414
(612) 203-8555
kevin@riachdefense.com

**FORSGREN FISHER MCCALMONT DEMAREA TYSVER LLP**
Robert J. Gilbertson (#22361X)
Caitlinrose H. Fisher (#398358)
Virginia R. McCalmont (#399496)
Jackson C. Evert (#402214)
Rebecca R. Rogers (#403827)
1500 Capella Tower
225 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 474-3300
bgilbertson@forsgrenfisher.com
cfisher@forsgrenfisher.com
vmccalmont@forsgrenfisher.com
jevert@forsgrenfisher.com
rrogers@forsgrenfisher.com

**CIRESI CONLIN LLP**
Kyle W. Wislocky (#393492)
Jacob F. Siegel (#399615)
225 S. 6th St., Suite 4600
Minneapolis, MN 55402
(612) 361-8233
kww@ciresiconlin.com
jfs@ciresiconlin.com

*Attorneys for Plaintiffs and the Proposed Class*