UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| SUSAN TINCHER, JOHN BIESTMAN, JANET LEE, LUCIA WEBB, ABDIKADIR NOOR, and ALAN CRENSHW, *on behalf of themselves and Other similarly situated individuals,* | Case No. 25-cv-04669 |
| Plaintiffs, | |
| v. | |
| KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS); TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement (ICE); MARCOS CHARLES, Acting Executive Associate Director, Enforcement and Removal Operations (ERO), ICE; DAVID EASTERWOOD, Acting Field Office Director, ERO, ICE Saint Paul Field Office; JOHN A. CONDON, Acting Executive Associate Director, Homeland Security Investigations (HSI); The Department of Homeland Security; Unidentified Federal Agencies; and Unidentified Federal Agents; *in their official capacities,* | **DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF VIOLATION** |
| Defendants. | |

_____

On January 22, 2026, Plaintiffs filed a "Notice of Violation of Preliminary Injunction" claiming a violation of the Court's preliminary injunction on the morning of January 21, 2026. *See* ECF No. 101. Plaintiff Lucia Webb alleges that she and a friend were riding in her friend's vehicle (the Honda) and following agents

1

to observe their activity. Webb alleges that the vehicle they were following stopped and agents approached the Honda. Declaration of Lucia Webb, ECF No. 102 ¶¶ 8, 10-11. Webb claims that because the agents approached and stood on two sides of the vehicle, this constituted a Fourth Amendment seizure in violation of the Court's preliminary injunction that was still in effect that morning. *Id.* ¶ 13. It did not.

As detailed in a declaration from one of the agents in the car that Ms. Webb was following, that morning, four Border Patrol agents were conducting targeted immigration operations in a vehicle when they noticed a grey Honda occupied by two individuals "following [their] vehicle and honking its horn persistently." Declaration of Agent F304 (F304 Decl.) ¶ 5. For approximately 30 minutes, the Honda continued to follow their vehicle honking at the officers the entire time creating a "loud, consistent commotion around [their] vehicle." *Id.* ¶ 6.

After 30 minutes of following and persistent honking detracting from operations, the agent driving the vehicle came to a stop on the right side of the street, leaving the left side unobstructed. *Id.* ¶¶ 5-6. At no time did agents activate any lights or sirens in the vehicle and gave no indication that the Honda was required to pull over. *Id.* ¶ 7. Despite having the unobstructed opportunity to proceed around the agents' vehicle, the Honda voluntarily stopped behind the agent's vehicle and continued honking. *Id.* ¶ 7. Waiting for the Honda to leave, officers remained in the car for 15 seconds before three agents exited the vehicle and approached the Honda. *Id.* One agent approached the driver's side window, one on the passenger side and one near the rear driver's side door. *Id.* ¶ 8.

The agent at the driver's side window gave no order and the Honda occupants made no attempt to roll down the window. *Id.* ¶ 8. Instead, given the totality of the circumstances—including incessant honking detracting from official duties—the agent at the driver's side window provided a verbal warning for impeding. *Id.* ¶¶ 5-8. Immediately after the warning, the agents walked back to their vehicle, drove away and the horn-blaring Honda stopped following and impeding their official duties. *Id.* ¶ 9.

A video from the body-worn camera worn by Agent F304 will be simultaneously submitted to the Court and Plaintiffs' counsel at the time of this filing, referred to herein as Exhibit A.

### No violation of the preliminary injunction has occurred.

Plaintiffs contend that Defendants violated the portion of the preliminary injunction that prohibits:

> Stopping or detaining drivers and passengers in vehicles where there is no reasonable articulable suspicion that they are forcibly obstructing or interfering with Covered Federal Agents, or otherwise violating 18 U.S.C. § 111. The act of safely following Covered Federal Agents at an appropriate distance does not, by itself, create reasonable suspicion to justify a vehicle stop.
> ECF No. at 82.

As part of its reasoning, the Court previously relied on the assumption that these drivers and passengers, including Webb, were following traffic laws and were therefore engaged in lawful observation. *See* Preliminary Injunction Order, ECF No. 85 at 67. While not delving into federal law enforcement's ability to enforce local laws, the Court essentially relied on the lack of assertion that Plaintiffs were

3

breaking local laws as part of its determination that the stops constituted an unlawful seizure. *Id.*

Here, in contrast to the Court's reading of the factual record at the preliminary injunction stage, Webb was in a car set on interfering with the agents' official duties by stalking officers while persistently blaring the car's horn. F304 Decl. ¶¶ 5-7. Conspicuously absent from the Notice and Webb's declaration is a key detail, that the entire time they were following officers, they were blaring the Honda's horn, thereby violating Chapter 389 of the Minneapolis municipal code which prohibits:

> *Horns and other signal devices.* The sounding of any horn or signal device on an automobile, motorcycle, bus or other vehicle, except as a danger signal or traffic warning.

Minneapolis, Minn., Code of Ordinances Chapter 389.65(a)(3) – Prohibited Acts. In fact, violations of this section are "subject to enforcement through criminal, civil and administrative means." *Id.* At 389.65(a). The reason for this ordinance is obvious. A car horn emits a loud and unpleasant noise. Unnecessary honking creates a safety hazard by potentially distracting other drivers and generally interferes with the ability of drivers and bystanders in the area to carry out their business.

Given that Webb's friend persistently violated this ordinance by blaring the horn for 30 minutes while stalking law enforcement agents, it was not unreasonable to conclude the vehicle occupants were interfering with the agents' targeted immigration operations. F304 Decl. ¶ 5-7; *see also* Videos submitted by Lucia

4

Webb showing the driver of the vehicle continuing to honk the horn as the agents approached; Exhibit A. Simply put, the evidence supports that while Webb was inside the Honda, she was exceeding lawful behavior—breaking the law is not peaceful, unobstructive behavior such that this encounter would result in a violation of the injunction.

Even if the Court were to conclude that the Honda occupants were lawfully observing agents, the agents did not "stop" or "detain" the vehicle's occupants within the meaning of the Court's order or seize them within the meaning of the Fourth Amendment. The agents' vehicle pulled to the side of the road, leaving an unobstructed path for the Honda to leave. F304 Decl. ¶ 7. The agents did not activate any traffic control lights, nor use any verbal or non-verbal signals for the vehicle to stop. *Id.* After pulling to the side of the road, the agents waited in the car for approximately 15 seconds to determine if the Honda occupants were going to drive away or cease their unlawful activity. *Id.* When it became clear that the occupants of the Honda had stopped of their own volition and would not move forward, the agents excited their vehicle and walked to the Honda to give a warning to refrain from further impeding their official duties. *Id.* ¶ 8. Even Webb acknowledges that the agents stopped – not that *she was stopped*. Webb Decl. ¶ 10. And as captured by Agent F304's body-worn camera, it is clear that the agents were stopped on the right side of the road with an unobstructed path for the Honda to leave but, the occupants voluntarily chose not to depart. F304 Decl. ¶ 7.

Finally, where, as here, an agent approaches and interacts with a person, but the person is free to ignore the officer and go about their business, at most, this qualifies as a consensual encounter rather than a seizure. As articulated in *United States v. White*, 81 F.3d 775, 779 (8th Cir. 1996), "[a] seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area—even if the officer has no reason to suspect the individual is involved in criminal activity—provided the officer does not indicate that compliance with his request is required." Here, it was clear to Webb and her friend that compliance was not required at this encounter because the Honda occupants did not even roll down their window when the officer was addressing them. *Id.* ¶ 8; *see also*, Webb Decl. ¶ 12. They had been following officers for 30 minutes, breaking traffic laws by continuously honking their horn and they were ultimately provided a verbal warning after they decided to stop behind the agent's parked vehicle despite having an unobstructed path to leave. *Id.* ¶ 7. Based on the totality of the circumstances, they were not seized for purposes of the Fourth Amendment. *See United States v. Munoz*, 590 F.3d 916, 921 (8th Cir. 2010).

Dated: February 6, 2026                    Respectfully submitted,

                                                      BRETT A. SHUMATE
                                                    Assistant Attorney General
                                                    Civil Division

                                                    ANDREW WARDEN
                                                    Assistant Director
                                                    Federal Programs Branch

/s/ *Kathleen C. Jacobs*
JEREMY S.B. NEWMAN
KATHLEEN C. JACOBS
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 598-7615
Fax: (202) 616-8470
kathleen.c.jacobs@usdoj.gov

*Counsel for Defendants*