UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| SUSAN TINCHER, JOHN BIESTMAN, JANET LEE, LUCIA WEBB, ABDIKADIR NOOR, and ALAN CRENSHAW, *on behalf of themselves and other similarly situated individuals*, | Case No. 25-cv-04669-KMM-DTS |
| Plaintiffs, | **DECLARATION OF ANDREA DROZDOWSKI** |
| v. | |
| KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS); TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement (ICE); MARCOS CHARLES, Acting Executive Associate Director, Enforcement and Removal Operations (ERO), ICE; DAVID EASTERWOOD, Acting Field Office Director, ERO, ICE Saint Paul Field Office; JOHN A. CONDON, Acting Executive Associate Director, Homeland Security Investigations (HSI); The Department of Homeland Security; Unidentified Federal Agencies; and Unidentified Federal Agents; *in their official capacities*, | |
| Defendants. | |

---

I, Andrea (Andie) Drozdowski, declare as follows:

1. I am a resident of Chaska, Carver County, Minnesota.

2. I am over 18 years old.

3. I am a full-time student at St. Katherine University, attending via the GI Bill. I am also a former police officer, a disabled Navy veteran, and I volunteer as the Carver

County DFL Communications Director. I have just been hired at a non-profit in Hennepin County, as well.

4. I make the following declaration based on personal knowledge.

5. I have been concerned about the presence of U.S. Immigration and Customs Enforcement (ICE) and Customs and Border Protection (CBP) agents (hereafter, "federal agents") in my community. I have had two encounters with these federal agents.

6. The first occurred on the evening of Wednesday, January 14, 2026. I was at the Whipple Federal Building, recording the events there in my capacity as the Carver County DFL Communications Director, when I received news that federal agents had shot someone in North Minneapolis. I immediately left Whipple to document the events there.

7. I arrived in the area of the shooting. On North Aldrich Avenue, I saw a group of reporters and other media people clustered together filming and reporting on the actions of the federal agents and the citizens on the scene. The media people were from news organizations such as Sky News and CNN and were clearly credentialed. Many appeared to be livestreaming. I stayed close to them to make my own documentation of the events because I believed the federal agents would not attack the media, who were exercising their First Amendment rights to record what was happening.

8. That belief turned out to be wrong. The federal agents began using flash and smoke grenades against the civilians at the scene, including those of us in the media. While I was able to document some of this, eventually I was overcome by smoke and had to leave to preserve my own health.

2

9. As a former police officer, I was shocked by the level of non-lethal force the federal agents used against the civilian population at the scene. The level of force seemed disproportionate to any reasonable assessment of the threat posed to the federal agents by those at the scene.

10. I was unable to continue to use my First Amendment rights to document the actions of these federal agents as a direct result of the excessive force they employed that evening.

11. I had my next encounter with federal agents on Saturday, January 17, 2026. At the time, I was part of a group in Chaska who had volunteered to follow vehicles suspected of being used by federal agents in order to observe the agents' actions.

12. That morning, I received information on the group's Signal chat about a Jeep Wagoneer that appeared to have federal agents that was near my current location. I spotted the vehicle and started following it from a safe distance, obeying all traffic laws while doing so.

13. I lost sight of the vehicle but soon after spotted it pulling into a Holiday retail station at the intersection of Engler Boulevard and Highway 41. There it met up with two other vehicles that also had federal agents in them, a minivan and a small Mitsubishi sport utility vehicle (SUV). All totaled, there were six federal agents between the three vehicles.

14. I pulled into the Holiday station and parked a safe distance away from the federal agents' vehicles, in the turnaround area for an adjacent daycare. Another member of my watch group had also pulled into the station to help me observe. She also parked a safe distance away from their vehicles.

15. The three vehicles started to leave the Holiday station on an adjacent street but then stopped so as to block the exit. My colleague began to pull out but then stopped in front of my vehicle when they blocked the exit. One of the federal agents approached my colleague's vehicle while another approached me. He told me that if I continued to follow them, I would be arrested for impeding federal actions. I responded by saying that I was not impeding them simply by following them. After we argued this point for a bit, he returned to his vehicle.

16. Neither he nor his colleague identified themselves or wore nametags. While the agent who spoke to me had a badge on his belt loop, I was not able to see what agency had issued the badge or to determine any identifying information from it. The only identifying marks on the two agents were patches on their vests that said, "Police, Federal Agent."

17. Although I disagreed with their assertions about the legality of my actions, this incident also followed the shooting and killing of Renee Good by a federal agent in Minneapolis. I therefore decided not to continue following them out of concern for my own safety and security. The exercise of my First Amendment rights were therefore curtailed by the intimidating threats of these federal agents, making that the second time in a week where my rights were negatively affected.

18. I have not participated in any further observation work since the Holiday station incident out of fear of reprisals, which constitutes another ongoing infringement of my rights.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Signed on 2/3/2026 in Carver County, Minnesota.

Andrea Drozdowski