UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SUSAN TINCHER, JOHN BIESTMAN, JANET LEE, LUCIA WEBB, ABDIKADIR NOOR, and ALAN CRENSHAW, *on behalf of themselves and other similarly situated individuals*,<br><br>        Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS); TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement (ICE); MARCOS CHARLES, Acting Executive Associate Director, Enforcement and Removal Operations (ERO), ICE; DAVID EASTERWOOD, Acting Field Office Director, ERO, ICE Saint Paul Field Office; JOHN A. CONDON, Acting Executive Associate Director, Homeland Security Investigations (HSI); The Department of Homeland Security; Unidentified Federal Agencies; and Unidentified Federal Agents; *in their official capacities*,<br><br>        Defendants. | Case No. 25-cv-04669-KMM-DTS<br><br>**DECLARATION OF ROBERT DUBAY** |

I, Robert Dubay, declare as follows:

1.     I am 36 years old and reside in the Saint Paul suburbs. I have lived in the Saint Paul area since 2010 and lived in rural Minnesota prior to that.

2.     I am medically retired from the United States Army, where I held the rank of Captain. I served in artillery, including air-ground coordination and assignments working

alongside special forces. I have served in deployments. I retired in November 2023. I now care for my four children as a stay-at-home parent.

3.  I am making this declaration based on my personal observations and firsthand experiences described below.

4.  On Tuesday, January 13, 2026, at approximately 11:15 a.m., I was driving westbound on University Avenue near Hamline Avenue in Saint Paul, Minnesota, with my partner, Cheyenne Wilson, in the passenger seat.

5.  We were aware of the federal government's "Operation Metro Surge," which had resulted in increased activity by DHS officers and U.S. Immigration and Customs Enforcement ("ICE") agents in our community, including near my children's school on the East Side of St. Paul. The school, which primarily serves Hmong families, had received threatening emails. We have been helping by providing books and toys to families who are afraid to leave their homes.

6.  While stopped at the red light at University Avenue and Hamline Avenue, I observed two vehicles—each carrying two individuals in tactical gear—run the red light. The first vehicle was a larger tan SUV with tinted windows. The second vehicle was a white Jeep with tinted windows.

7.  Their appearance, equipment, and erratic driving behavior alarmed us, and I was concerned about the safety of people in the community.

8.  Out of concern and to observe, I turned and followed them at a safe distance of approximately three car lengths. I was not attempting to (and did not) interfere or

2

communicate with them. I maintained a steady and safe speed, did not make any sudden movements, honk, or attempt to approach their vehicles.

9. The vehicles made a right turn onto Lexington Parkway and looped through the area. I continued following from a safe distance of approximately three car lengths.

10. We eventually ended up at or near Hubbard Street and Lexington Parkway. My car was facing west on Hubbard.

11. At that point, the second vehicle—the white Jeep—slammed on its brakes and stopped directly in front of us. I stopped our vehicle. The first vehicle continued driving.

12. Two individuals exited the white Jeep and approached our car, one on each side. Both carried window breakers and sidearms.

13. The individual approaching my side appeared to be a white male in his mid-40s, with white stubble, wearing a hat, and not wearing a mask (though he had a neck scarf). I recall seeing the word "POLICE" on Velcro near his gear.

14. The individual who approached Cheyenne's side appeared younger, a white male in his 20s–30s with a dark beard/mustache. I recall seeing "DHS" on his gear and "ERO" on the back. He did not speak.

15. I did not see visible badge numbers, and they did not identify their agency before issuing threats.

16. We kept our doors locked and our windows rolled up, and we began recording on our phones.

17. The driver's-side agent was the only one who spoke. As he approached my window, he immediately ordered me to "open the window." I shook my head "no" and held up my phone to show that I was recording.

18. The agent then lifted a window breaker in his hand, leaned toward my window, and stated, in substance: "If you continue to follow us, you will be removed from your vehicle. We will arrest you."

19. While speaking, he pointed the window breaker directly at my window and gestured as though he would use it to break the glass.

20. He then repeated: "You will be removed from your vehicle. This is your one warning."

21. His tone was sharp, forceful, and commanding—as though barking orders. He made no attempt to deescalate, explain the situation, or communicate in any professional manner. His demeanor was menacing and increased my fear for our safety.

22. I asked for his badge number. Instead of identifying himself, he repeated the threat and stated "55-50," as best we recall. Both agents then returned to their vehicle and left.

23. During this encounter, we were located on a quiet, secluded residential road with no pedestrians, traffic, or other cars around, and the isolation made the encounter feel especially frightening and intimidating. I believe the agents intentionally led us to this secluded area so there would be no witnesses.

24. At no point did we obstruct, interfere with, or attempt to interfere with the agents. We had been safely following their vehicles at a reasonable distance out of concern

for what we had witnessed in our neighborhood. We were not driving aggressively, blocking their path, attempting to communicate with them, or doing anything that could reasonably be viewed as a threat.

25. We were shaken by the encounter and drove to the Como Pool parking lot to calm down.

26. After approximately ten minutes, we began driving home, traveling north on Lexington, when a silver/gray truck began driving erratically behind us.

27. The silver/gray truck followed us closely for around ten minutes, refusing to use turn signals, accelerating into turns to stay with us, and shadowing our movements. The driver appeared to be a middle-aged white male with a beard and a baseball cap.

28. The driver did not appear to be wearing tactical gear, and I could not determine whether he was affiliated with ICE or law enforcement.

29. Out of fear, we did not go directly home. We eventually pulled off to the side of the road and waited until the vehicle was no longer visible.

30. Since this incident, I have seen ICE vehicles/agents at least a dozen times in the area, including while dropping my kids off at school.

31. I have circulated our video footage. Based on additional publicly shared videos, I believe that the same driver's-side agent who confronted us was also recorded in a separate incident where he asked another driver/observer, "Haven't you learned your lesson yet?" in connection with the killing of Renee Good, and he appears to smack the observer's phone in that video.

32. Our encounter with ICE has aggravated my PTSD. Since that day, I have been in a heightened state of hypervigilance, waking up early, sleeping less, and constantly scanning my environment.

33. Because of the encounter, I have begun taking sleep medication, but I have been sleeping significantly less since the encounter.

34. I have installed and relied on additional security measures, including a dash cam, Ring camera, and locked doors and windows at all times.

35. We now drive together whenever possible, avoid certain neighborhoods, and avoid visiting some neighbors for fear that our license plate might draw ICE attention to them.

36. The encounter has had a lasting effect on my daily life and sense of safety.

37. I am more committed to documenting ICE and law enforcement activity to protect our neighbors.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Signed on   1/23/2026   in Ramsey County, Minnesota.

*Robert Dubay*
Robert Dubay