UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

SUSAN TINCHER, JOHN BIESTMAN, JANET LEE, LUCIA WEBB, ABDIKADIR NOOR, and ALAN CRENSHAW, *on behalf of themselves and Other similarly situated individuals,*

      Plaintiffs,

v.

KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS); TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement (ICE); MARCOS CHARLES, Acting Executive Associate Director, Enforcement and Removal Operations (ERO), ICE; DAVID EASTERWOOD, Acting Field Office Director, ERO, ICE Saint Paul Field Office; JOHN A. CONDON, Acting Executive Associate Director, Homeland Security Investigations (HIS); The Department of Homeland Security; Unidentified Federal Agencies; and Unidentified Federal Agents; *in their official capacities,*

      Defendants.

Case No. 25-cv-04669-KMM-DTS

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR INDICATIVE RULING**

---

## INTRODUCTION

After aggressively litigating on an emergency basis to obtain a broad preliminary injunction and sustain it on appeal, Plaintiffs have given up on that injunction, asking this Court to issue an indicative ruling that it would dissolve the preliminary injunction. To be sure, if Plaintiffs want to stop litigating this case and voluntarily dismiss their amended complaint because of changed circumstances, Defendants would join such a motion. Yet Plaintiffs do not forswear further litigation or commit not to seek another preliminary injunction. Instead, Plaintiffs ask this Court for assistance in averting an Eighth Circuit ruling on Defendants' appeal of the preliminary injunction, so that Plaintiffs can come back to this Court and seek an *even broader* injunction, even though the Eighth Circuit has already held that the government's interlocutory appeal "is likely to succeed on the merits" because the existing injunction is "too broad." *Tincher v. Noem*, 164 F.4th 1097, 1099 (8th Cir. 2026) (citation omitted).

Plaintiffs' main argument is that the preliminary injunction is "obsolete" and "no longer effective" because it "applied only to Operation Metro Surge." Pls'. Mem. of Law in Supp. of Mot. for Indicative Ruling Pursuant to Fed. R. Civ. P. 62.1, at 1, 4, ECF No. 240 ("Mem."). That argument is incorrect and rests on a misreading of the preliminary injunction's plain text. By its terms, the injunction applies not just to Operation Metro Surge, but also to "related operations that have been ongoing in this District since December 4, 2025," and "officers and agents responding to protests that arise in response to Operation Metro Surge." Order at 81, ECF No. 85 ("PI Order"). The Department of

1

Homeland Security ("DHS") has significantly reduced its footprint in Minnesota, but its ongoing immigration enforcement in Minnesota can plausibly be considered as, at a minimum, "related" to Operation Metro Surge. In addition, members of the public continue to participate in "protests . . . in response to Operation Metro Surge." *Id.*

The preliminary injunction is not moot. The appeal of the injunction is not moot. Nevertheless, Plaintiffs ask this Court to help them moot the appeal to prevent an anticipated adverse appellate ruling that would hinder their efforts to obtain further injunctive relief. That amounts to procedural gamesmanship. The Court should deny this motion so that the Eighth Circuit can resolve the expedited appeal forthwith.

## ARGUMENT

### I. The Preliminary Injunction Is Not Moot

Plaintiffs' argument for an indicative ruling depends on the premise that the preliminary injunction is moot and no longer has any effect, but that premise is false. Even though DHS has significantly reduced its immigration enforcement activity in Minnesota, the injunction continues to have effect.

**A.** The preliminary injunction applies to "all persons who . . . protest Operation Metro Surge" and restrains DHS "officers and agents responding to protests that arise in response to Operation Metro Surge." PI Order at 81. Protests arising in response to Operation Metro Surge are ongoing. Indeed, significant protests in response to Operation Metro Surge are occurring in the Twin Cities area this week. *See* "2,000 expected to participate in anti-ICE organizing effort" (last visited Feb. 25, 2026), https://www.twincities.com/2026/02/24/2000-expected-to-participate-in-anti-ice-

organizing-effort/ ("Bring the Heat, Melt the ICE Week of Action" a five-day series including protests related to Operation Metro Surge beginning on February 25, 2026 culminating in a march on Sunday, March 1, 2026 from Fort Snelling to the Whipple Federal Building). Approximately 400 United States Immigration and Customs Enforcement ("ICE") officers are currently detailed to the Twin Cities metro area. Declaration of Sam Olson ¶ 6, *Hussen v. Noem*, 0:26-cv-00324-ECT-ECW (D. Minn. Feb. 23, 2026), ECF No. 169-2 (Olson Decl.). The detailed officers' responses to ongoing protests would be restrained by the injunction. Therefore, the preliminary injunction would still have an effect.

The preliminary injunction also applies to "all persons who do or will in the future record, observe, and/or protest . . . related operations." PI Order at 81 ¶ 1. Ongoing immigration enforcement in Minnesota conducted by the detailed officers is, at a minimum, "related" to Operation Metro Surge. Thus, the preliminary injunction would continue to apply to individuals recording, observing, and/or protesting those enforcement operations and restrain how detailed officers respond to those activities. In this way too, the preliminary injunction would still have an effect.

**B.** Plaintiffs' central argument is that because government officials have made statements regarding the winding down of "Operation Metro Surge," the preliminary injunction has no effect. Pls'. Mem. of Law in Supp. of Mot. for Indicative Ruling Pursuant to Fed. R. Civ. P. 62.1, at 1, 4, ECF No. 240 ("Mem."). That is incorrect for multiple reasons.

First, the preliminary injunction excluded from its coverage only DHS "officers and agents . . . conducting routine operations." PI Order at 82. The order explained that the reason it limited the scope of the preliminary injunction was to avoid "hamper[ing] totally unrelated activities of other federal law enforcement offices throughout Minnesota" and "regularly conducted business of Border Patrol agents on the northern border, Coast Guard officers on the Great Lakes, customs officials at airports, and other federal officers doing their work unrelated to Operation Metro Surge." PI Order at 79. This, in conjunction with the "related operations" language, makes clear that the injunction applies to immigration enforcement activities beyond those called "Operation Metro Surge," and applies to the ICE officers currently detailed to the Twin Cities area. *See* Olson Decl. ¶ 6.

Second, if the preliminary injunction is moot, then so is Plaintiffs' First Amended Complaint. Plaintiffs' motion is premised on a clear demarcation between Operation Metro Surge conduct and non-Operation Metro Surge conduct, and posits that the temporal dividing line is Tom Homan's announcement regarding Operation Metro Surge on February 12, 2026. *See* Mem. 2, 4. In Plaintiffs' view, because those categories of conduct are discrete, the preliminary injunction does not apply to non-Operation Metro Surge conduct. But this framework directly contradicts Plaintiffs' First Amended Complaint, which requests that the Court permanently enjoin future non-Operation Metro Surge conduct because of alleged wrongdoing solely attributable to Operation Metro Surge conduct.

If there is nothing for the preliminary injunction to enjoin because of the announcement that Operation Metro Surge would end, then there is nothing for the Court

4

to permanently enjoin either, because the allegedly wrongful conduct purportedly justifying injunctive relief—alleged wrongdoing during the surge—is over. As such, if the Court determines that the preliminary injunction is moot, the First Amended Complaint should be dismissed as moot too.

## II. The Court Should Not Enter an Indicative Ruling that It Would Dissolve the Preliminary Injunction, Which Remains in Effect

Because this Court's preliminary injunction has continuing effect, the question becomes whether this Court should facilitate Plaintiffs' attempt to abandon that injunction voluntarily. If this request were a prelude to dismissing the case, Defendants would be receptive. Yet Plaintiffs are instead pressing forward, having just filed the First Amended Complaint. *See* First Am. Compl., ECF No. 136. In that complaint, Plaintiffs seek to represent an incredibly broad putative class of "[a]ll persons who do or will in the future record, observe, and/or peacefully protest against the DHS immigration enforcement and removal operations that have been ongoing in this District since December 4, 2025." *Id.* ¶ 286. And Plaintiffs seek "injunctive relief for the 'class as a whole,'" *id.* ¶ 297, meaning injunctive relief that applies to all future immigration and removal operations in Minnesota, not just those related to Operation Metro Surge. Their Memorandum reiterates that "Plaintiffs seek prospective injunctive relief from this Court," Mem. 5, in the form of "a new injunction that . . . governs the time period after the Surge's end," *id.* at 6. In other words, Plaintiffs want this Court to dissolve the existing preliminary injunction, which remains in effect, only so that they can then seek another injunction that is even broader

than the preliminary injunction that the Eighth Circuit condemned as "too broad." *Tincher*, 164 F.4th at 1099.

Although Defendants do not make this statement lightly, it is difficult to describe this litigation conduct as anything other than procedural gamesmanship. After the Eighth Circuit ruled that "the government has made a 'strong showing' that its challenge to the injunction 'is likely to succeed on the merits,'" *id.* (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)), Plaintiffs undoubtedly fear that the Eighth Circuit will rule against them in Defendants' appeal of the preliminary injunction. Plaintiffs are likely concerned that the Eighth Circuit will issue statements and holdings that will cast a shadow over their attempts to obtain further injunctive relief in the case, such as the conclusion in the stay opinion that "this [putative class] has *no* chance of getting certified." *Id.* Thus, Plaintiffs have apparently made the strategic calculation that it is better to abandon the fight over the existing preliminary injunction in order to avoid hindering their efforts to obtain another, even broader injunction. This gambit should be seen for what it is: a transparent attempt to evade a potential adverse decision from the Eighth Circuit.

The Court should not indulge this gamesmanship. In *Acheson Hotels, LLC v. Laufer*, the Supreme Court noted that it was "sensitive to [the defendant's] concern about litigants manipulating the jurisdiction of this Court" by strategically mooting cases. 601 U.S. 1, 5 (2023). In that case, the Supreme Court accepted the plaintiff's argument that her abandonment of the case rendered it moot, but only because the Supreme Court was "not convinced, however, that [plaintiff] abandoned her case in an effort to evade [the Supreme Court's] review." *Id.* Here, Plaintiffs ask this Court to dissolve a preliminary injunction

6

with ongoing effect when the Eighth Circuit has already ruled that Defendants are likely to succeed in the appeal, and Plaintiffs wish to seek further injunctive relief unencumbered by such an adverse appellate ruling. That "abandon[ment]" of this Court's preliminary injunction is the sort of "effort to evade" appellate review that the Supreme Court suggested would be improper, indeed "manipulati[ve]." *Id.*

At a minimum, if the Court rejects Defendants' arguments and issues an indicative ruling that it would dissolve the preliminary injunction, that ruling should clarify that the dissolution would be with prejudice to seeking another preliminary injunction at any point in this case. The Court should not countenance Plaintiffs strategically mooting the appeal of the Court's preliminary injunction so that they can obtain a second bite at the apple of preliminary relief.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' Motion for Indicative Ruling.

Dated: February 26, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW WARDEN
Assistant Director
Federal Programs Branch

 /s/ Jeremy S.B. Newman
JEREMY NEWMAN
KATHLEEN C. JACOBS
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 532-3114
Fax: (202) 616-8470
jeremy.s.newman@usdoj.gov

*Counsel for Defendants*