UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

SUSAN TINCHER, JOHN BIESTMAN,
JANET LEE, LUCIA WEBB,
ABDIKADIR NOOR, ALAN
CRENSHW, ABIGAIL SALM, RYAN
DOXSEY, MARGARET WOOD, THE
NEWSGUILD-COMMUNICATIONS
WORKERS OF AMERICA and
STATUS COUP NEWS, *on behalf of
themselves and other similarly situated
individuals,*

   Plaintiffs,

v.

KRISTI NOEM, Secretary, U.S.
Department of Homeland Security (DHS);
TODD LYONS, Acting Director, U.S.
Immigration and Customs Enforcement
(ICE); MARCOS CHARLES, Acting
Executive Associate Director,
Enforcement and Removal Operations
(ERO), ICE; DAVID EASTERWOOD,
Acting Field Office Director, ERO, ICE
Saint Paul Field Office; JOHN A.
CONDON, Acting Executive Associate
Director, Homeland Security
Investigations (HIS); The Department of
Homeland Security; Unidentified Federal
Agencies; and Unidentified Federal
Agents; *in their official capacities,*

   Defendants.

Case No. 25-cv-04669 (KMM/DTS)

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO
DISMISS FIRST AMENDED
COMPLAINT**

_____

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................2

    A.    Plaintiffs' Allegations.............................................................................2

    B.    Procedural History...................................................................................2

LEGAL STANDARD ........................................................................................................4

ARGUMENT ......................................................................................................................5

    A.    Plaintiffs lack standing to seek prospective relief.........................................5

    B.    This case is now moot. ................................................................................ 10

    C.    Plaintiffs fail to state a First Amendment claim (Count I).......................... 12

    D.    Plaintiffs who were not seized fail to state a Fourth Amendment claim
        (Count II). .................................................................................................. 19

    E.    Plaintiffs fail to state a civil conspiracy or declaratory judgment claim
        (Counts III and IV). ...................................................................................21

CONCLUSION .................................................................................................................22

## TABLE OF AUTHORITIES

### Cases

*Aldridge v. City of St. Louis*,
  75 F.4th 895 (8th Cir. 2023) .................................................................................*passim*

*Allied Servs., LLC v. Smash My Trash, LLC*,
  153 F.4th 600 (8th Cir. 2025) .......................................................................................22

*Arc of Iowa v. Reynolds*,
  94 F.4th 707 (8th Cir. 2024) .............................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................................5

*Babbitt v. United Farm Workers*,
  442 U.S. 289 (1979).............................................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................5, 21

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ............................................................................................5

*Chestnut v. Wallace*,
  947 F.3d 1085 (8th Cir. 2020) .......................................................................................14

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)...............................................................................................5, 6, 7, 8

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)..........................................................................................................5

*Colten v. Kentucky*,
  407 U.S. 104 (1972)........................................................................................................13

*Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*,
  138 F.3d 351 (8th Cir. 1998) ...................................................................................10, 11

*Crooks v. Lynch*,
  557 F.3d 846 (8th Cir. 2009) ............................................................................................5

*Frost v. Sioux City*,
  920 F.3d 1158 (8th Cir. 2019) ................................................................................. 6

*Hoyland v. McMenomy*,
  869 F.3d 644 (8th Cir. 2017) ................................................................................. 14

*Johnson v. City of Ferguson*,
  926 F.3d 504 (8th Cir. 2019) ................................................................................. 20

*Laney v. City of St. Louis*,
  56 F.4th 1153 (8th Cir. 2023) ................................................................................ 16

*Liner v. Jafco, Inc.,*
  375 U.S. 301 (1964) ...........................................................................................10-11

*Mitchell v. Kirchmeier*,
  28 F.4th 888 (8th Cir. 2022) ............................................................................ 15, 17

*Mizokami Bros. of Ariz., Inc. v. Mobay Chem. Corp.*,
  660 F.2d 712 (8th Cir. 1981) ................................................................................. 21

*Molina v. City of St. Louis*,
  59 F.4th 334 (8th Cir. 2023) ............................................................................ 13, 14

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
  449 F.2d 884 (3rd Cir. 1977) ................................................................................... 4

*Ness v. City of Bloomington*,
  11 F.4th 914 (8th Cir. 2021) .................................................................................. 14

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................................................. 3

*Noem v. Vasquez Perdomo*,
  146 S. Ct. 1 (2025) ................................................................................................ 7, 9

*Osborn v. United States*,
  918 F.2d 724 (8th Cir. 1990) ................................................................................... 4

*Puente v. City of Phoenix*,
  123 F.4th 1035 (9th Cir. 2024) ............................................................................. 20

iii

*Stearns v. Wagner*,
122 F.4th 699 (8th Cir. 2024),
*reh'g and reh'g en banc denied*,
No. 23-3448, 2025 WL 82375 (8th Cir. Jan 13, 2025)..................................................18

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)................................................................................................4, 6

*Tincher v. Noem*,
164 F.4th 1097 (8th Cir. 2026) ...............................................................................1, 3

*Torgerson v. Roberts Cnty.*,
139 F.4th 638 (8th Cir. 2025) ....................................................................................21

*Torres v. Madrid*,
592 U.S. 306, 311 (2021)....................................................................................19, 20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)......................................................................................................6

*Walker v. City of Pine Bluff*,
414 F.3d 989 (8th Cir. 2005) .....................................................................................14

*Whitmore v. Arkansas*,
495 U.S. 149 (1990).................................................................................................5, 6

## Constitutional Provisions

U.S. Const. amend. IV ................................................................................................19

## Other Authorities

Fed. R. Civ. P. 62.1.......................................................................................................4

Minneapolis, Minn., Code of Ordinances Chapter 389.65(a)(3)......................................17

**INTRODUCTION**

Beginning in December 2025, the Department of Homeland Security ("DHS") began an immigration enforcement operation throughout the Twin Cities and other parts of Minnesota called Operation Metro Surge. Some have protested this operation lawfully and peacefully, but as the Eighth Circuit has already found in this case, others unfortunately have engaged in unlawful and obstructive conduct. *See Tincher v. Noem*, 164 F.4th 1097, 1099 (8th Cir. 2026) (videos submitted in this case "show a fast-changing mix of peaceful and obstructive conduct").

On February 13, 2026, Plaintiffs filed a First Amended Complaint (ECF No. 136 "FAC") on behalf of individuals and journalist organizations encountering federal immigration enforcement activities and protesting these activities throughout the judicial district. Plaintiffs allege that their Constitutional rights were violated by DHS's effort to protect federal employees, federal property, and the public from violent and unlawful protests that occurred between December 3, 2025, and February 2, 2026.

The FAC, however, fails to plausibly allege an imminently certain risk of future harm which is necessary to pursue prospective relief—especially in light of the FAC's acknowledgment that federal officials have announced an end to Operation Metro Surge. That Plaintiffs may have been subject to misconduct in the past is insufficient to establish that the same Plaintiffs will be subject to similar misconduct again in the future. For the most part, Plaintiffs' allegations, even taken as true, fail to state a claim for violation of

1

their constitutional rights. This Court should dismiss the FAC for lack of subject matter jurisdiction to invoke standing under Article III and for failure to state a claim.

## BACKGROUND

### A.    Plaintiffs' Allegations

Plaintiffs are nine individuals and two organizations advancing various claims against Defendants based on Defendants' efforts to protect federal employees, property, and the public from violent and disruptive protests erupting throughout the Twin Cities in response to lawful immigration enforcement operations since December 2025. First, Plaintiffs claim Defendants have retaliated in violation of the First Amendment. FAC, ¶¶ 298-307. Second, Plaintiffs claim that Defendants violated Plaintiffs' Fourth Amendment rights "to be free from unreasonable seizures." *Id.* ¶¶ 308-13. Third, Plaintiffs claim that Defendants engaged in a civil conspiracy "to deprive Plaintiffs . . . of their constitutional rights." *Id.* ¶¶ 314-17. Finally, Plaintiffs seek declaratory relief that the acts at issue are unlawful. *Id.* ¶¶ 318-21.

### B.    Procedural History

On December 17, 2025, Plaintiffs initiated this action by filing a complaint, Class Action Compl. & Demand for Jury Trial, ECF 1, and the following day, a motion for temporary restraining order, Mem of Law in Supp. of Pls.' Mot. For TRO. ECF No. 18. The Court subsequently converted the motion for temporary restraining order to a motion for preliminary injunction. Order, ECF No. 24. Defendants opposed the converted motion. Defs' Opp'n to Pls.' Mot. For Prelim. Inj., ECF No. 46.

2

On January 13, 2026, the Court heard argument on Plaintiffs' motion and Defendants' opposition. On January 16, 2026, the Court granted a broad preliminary injunction that applied to "all persons who do or will in the future record, observe, and/or protest Operation Metro Surge and related operations that have been ongoing in this District since December 4, 2025." Order at 81, ECF No. 85. It dictated how covered agents and officers could respond to protest activity, use pepper-spray or other nonlethal munitions, and stop drivers who follow federal vehicles. *See id.* at 82. Defendants filed their Notice of Appeal to the U.S. Court of Appeals for the Eighth Circuit on January 19, 2026. ECF No. 87.

The Eighth Circuit administratively stayed the preliminary injunction pending consideration of Defendants' motion for stay pending appeal on January 21, 2026. Order, ECF No. 92. On January 26, 2026, the Eighth Circuit granted Defendants' stay during the pendency of review of the merits pending appeal. The Eighth Circuit concluded that "the government has made 'a strong showing' that its challenge to the injunction 'is likely to succeed on the merits[,]'" because the injunction was "too broad" and "too vague." *Tincher*, 164 F.4th at 1099 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

On February 13, 2026, Plaintiffs filed their First Amended Complaint. ECF No. 136.

On February 19, 2026, the Eighth Circuit issued an order holding the appeal in abeyance until March 6, 2026, pending an indicative ruling by this Court on Plaintiffs' motion to dissolve the preliminary injunction filed in the appeal. Order, ECF No. 233. Briefing before this Court on the indicative ruling concluded on February 26, 2026. Pls.'

Mot. for Indicative Ruling Pursuant to Fed. R. Civ. P. 62.1, ECF No. 237; Defs.' Opp'n to Pls.' Mot. For Indicative Ruling, ECF No. 245.

On March 5, 2026, the Court granted Plaintiffs' motion for indicative ruling and issued an indicative ruling that it would dissolve the preliminary injunction if the Eighth Circuit remanded the appeal, reasoning that "[t]he plain language of the Injunction—both in its discussion of the Court's limitations as to breadth and in the decretal language—clearly ties it to [Operation Metro Surge], which is now over." Order, ECF No. 246 at 7.

## LEGAL STANDARD

Defendants bring this motion under Rule 12(b)(1), arguing lack of standing and mootness, and under 12(b)(6), arguing that Plaintiffs have failed to state a claim.

Under Rule 12(b)(1), a court "must distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citation omitted). In a factual attack that challenges the court's subject matter jurisdiction, the court "considers matters outside the pleadings, and the nonmoving party does not have the benefit of 12(b)(6) safeguards." *Id.* (citation omitted). In fact, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* at 730 (citation omitted). To this end, once challenged, the plaintiff has the burden to prove that jurisdiction does in fact exist. *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 449 F.2d 884, 891 (3rd Cir. 1977)). Where a party seeks prospective equitable relief, they must make "allegations of future injury [that are] particular and concrete." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998). While

4

allegations of past injury might support a remedy at law, prospective equitable relief requires a claim of imminent future harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

Under Rule 12(b)(6), courts must dismiss complaints that do not allege sufficient facts to demonstrate a plausible entitlement to relief. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009). This plausibility showing "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation[,]" and it "asks for more than a sheer possibility that [the] defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## ARGUMENT

Plaintiffs' claims for prospective relief are predicated on alleged past events that do not establish any continuing risk of future injury to Plaintiffs. This Court should find that dismissal is warranted because Plaintiffs lack standing to assert the type of prospective relief claimed, and because Plaintiffs' claims for prospective relief are moot. Alternatively, almost all of Plaintiffs' claims fail as a matter of law.

### A.   Plaintiffs lack standing to seek prospective relief.

The FAC does not plausibly allege that the "threatened injury" of future First or Fourth Amendment violations are "*certainly impending*" and not merely "*possible*." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*,

5

495 U.S. 149, 158 (1990)). Where, as here, a party seeks only prospective equitable relief, they must make "allegations of future injury [that are] particular and concrete." *Steel Co.,* 523 U.S. at 109. In fact, "allegations of past injuries alone are insufficient to establish standing, and a plaintiff must show 'an ongoing injury or . . . an immediate threat of injury.'" Order at 41, ECF No. 85 (quoting *Frost v. Sioux City*, 920 F.3d 1158, 1162 (8th Cir. 2019) (quotation omitted)).

While allegations of past injury might support a remedy at law, prospective equitable relief requires a claim of imminent future harm. *Lyons*, 461 U.S. at 105; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021). As the Supreme Court held, "[a]llegations of *possible* future injury do not satisfy the requirements of Art. III." *Whitmore*, 495 U.S. at 158 (emphasis added). To constitute injury in fact, a threatened injury must be "certainly impending." *Id.* (quoting *Babbitt v. United Farm Workers*, 442 U.S. 289, 298 (1979)). For a plaintiff to have standing, an alleged injury must be "concrete" and "real and immediate' not 'conjectural' or hypothetical.'" *Lyons*, 461 U.S. at 101-02. And even if a plaintiff establishes that his rights were violated in past incidents, he nonetheless lacks standing to obtain prospective injunctive relief absent a "real and immediate threat" that he will suffer the same injury in the future. *Id.* at 105. "[I]f the risk of harm is too speculative, there is no Article III standing." Order at 41, ECF No. 85 (citing *Arc of Iowa v. Reynolds*, 94 F.4th 707, 711 (8th Cir. 2024)). Under *Lyons*, the question is whether any given plaintiff has alleged "a sufficient likelihood" such that the specific plaintiff will "again be wronged in a similar way[.]" 461 U.S. at 111.

The facts and reasoning of *Lyons* are instructive.  In *Lyons*, the plaintiff alleged that he had been subjected to excessive force "without any provocation or resistance on his part."  *Id*. at 105.  Nonetheless, the Court held that he lacked standing, because the plaintiff had not alleged "a sufficient likelihood" that he would "again be wronged in a similar way."  *Id*. at 111.  This Court suggested that *Lyons* could be distinguished because "the plaintiff's risk of being put in a future chokehold was predicated on him being subjected to another traffic stop, which would require assuming that he would break the law again."  Order at 46, ECF No. 85.  But the *Lyons* plaintiff likewise alleged that he had been subjected to excessive force "without any provocation or resistance on his part" to be put in the chokehold. 461 U.S. at 105. Yet the Supreme Court held that plaintiff lacked standing. Simply put, the *Lyons* inquiry does not turn on plaintiffs' ability to avoid harm by complying with the law but on whether the harm's recurrence is sufficiently likely.  Here, the alleged harms are unlikely to recur to Plaintiffs given the individualized variables at each incident and the happenstance manner in which the alleged incidents occurred.

Further, Plaintiffs seeking injunctive relief must show that the predicated wrongful conduct will recur *and* that plaintiff himself will suffer it.  *See, e.g.*, *Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 2 (2025) (Kavanaugh, J. concurring) ("[P]laintiffs have no good basis to believe that law enforcement will unlawfully stop *them* in the future based on the prohibited factors—and certainly no good basis for believing that any stop of the plaintiffs is imminent. Therefore, they lack Article III standing[.]").  That other individuals might suffer harm does nothing for a plaintiff's own standing.

Here, Plaintiffs cannot adequately allege risk of future harm. Allegations of past misconduct do not establish that Plaintiffs themselves are sufficiently likely to "again be wronged in a similar way." *Lyons*, 461 U.S. at 111. The allegations in the FAC arise from spontaneous encounters that members of the public had with federal law enforcement engaging in law enforcement operations in the field.[1] All but two paragraphs (FAC ¶¶ 274-75) of the FAC alleging injury by Plaintiffs appear to relate to these types of impromptu in-the-street encounters with federal law enforcement rather than as part of traditional protest activity, such as a demonstration.[2] *Id.* ¶¶ 164-273, 276-81.

Even considering Plaintiffs' allegations of past harm, the conclusion of Operation Metro Surge and accompanying drawdown of federal officers and agents underscore that their claims that they will be subjected to violations of their First or Fourth Amendment rights in the future are too speculative to support standing. Customs and Border Protection (CBP) has demobilized all of the more than 1,000 employees who were deployed as part of Operation Metro Surge. Decl. of Marty Raybon Sr. ¶¶ 7-10. Immigration and Customs Enforcement (ICE) has reduced the number of officers and agents detailed to the area from

---

[1] Plaintiffs Tincher, Crenshaw, and Wood all learned of nearby immigration enforcement activities and went to investigate. FAC ¶¶ 165, 217, 262. Plaintiffs Biestman, Lee, Webb, Salm, Doxey, and Wood actively sought out federal immigration enforcement and followed federal officers in their vehicles. *Id.* ¶¶ 185, 203, 246, 254, 258, & 260. Plaintiff Noor happened upon a traffic stop of another vehicle and pulled to the side of the road. *Id.* ¶ 231.
[2] The only factual allegations Plaintiffs made that seem to involve a more traditional protest involves allegations made by Plaintiff organization Status Coup. *See* FAC ¶¶ 274-75. Status Coup members make vague allegations of being present at the Whipple Federal Building for a protest, but none of the members submitted declarations, nor does the FAC allege facts sufficient to discern with any specificity what was occurring at the facility at the time the alleged unlawful conduct occurred.

8

approximately 3,000, to fewer than 500. *See* Second Decl. of David Easterwood ¶¶ 8-9. Those who remain are focused on arrest and removal of incarcerated aliens and criminal investigations of fraud, money laundering, and public safety priorities. *Id.* ¶¶ 10-11.

Standing "does not exist merely because plaintiffs experienced past harm and fear its recurrence." *Vasquez Perdomo*, 146 S. Ct. at 2 (Kavanaugh, J., concurring). While Plaintiffs allege that they will continue to engage in protest activity as a basis for their likelihood of future harm, the injuries they claim arise from spontaneous encounters with federal law enforcement engaging Operation Metro Surge in the field, not organized protest activity. Thus, because there are significantly fewer federal immigration officers present, the likelihood of encountering a federal immigration enforcement operation, let alone future injury, grows significantly more speculative. Especially where, as here, thousands of officers and agents have departed since Plaintiffs' alleged injuries occurred.

Finally, in concluding that Plaintiffs had standing in support of their motion for preliminary injunction, this Court previously distinguished this case from another stay on appeal noting:

> The Court is mindful that injunctive relief was stayed on appeal in a recent similar case[,]" *Chicago Headline Club v. Noem*, No. 25-3023, Dkt. 28 (Stay Order) (7th Cir. Nov. 19, 2025) ("Stay Order"). However, in that case, the stay was based in part on the observation that the enforcement surge in Chicago had come to an end by the time of the appeal. Stay Order at 2 ("And we are aware of public reporting suggesting that the enhanced immigration enforcement initiative may have lessened or ceased, which could affect both the justiciability of this case and the propriety of injunctive relief.").

Order at 45 n.23, ECF No. 85.

9

This same reasoning further reinforces that—given the draw-down of Operation Metro Surge, the dwindling likelihood that Plaintiffs themselves are at risk of imminent harm, and the novel nature of the so-called protests in this case—this case should be dismissed. Notably, it was on this very basis that the *Chicago Headline* plaintiffs voluntarily dismissed their case. *Chi. Headline*, No. 25-cv-12173 (Pls. Mot. to Dismiss, ECF No. 295) ("[T]he situation that precipitated the relief sought in this litigation has changed in a material way. Specifically, it appears that Operation Midway Blitz, has ended."). And just yesterday, the Seventh Circuit issued an opinion in *Chicago Headline* vacating the preliminary injunction order. The court concluded that "the factual and legal foundations of the preliminary injunction are up for debate[,]" noting that "the district court concluded that all the lead plaintiffs had Article III standing at a high level of generality," despite precedent holding that "[s]tanding is not dispensed in gross." *Chi. Headline Club v. Noem*, No. 23-3023, slip op. 12 (7th Cir. March 5, 2025). The court further admonished that "plaintiffs suing for injunctive relief cannot establish standing by mere speculation," and that the district court's conclusion that plaintiffs had standing even after circumstances changed on the ground "appears to be in substantial tension with *Lyons*." *Id.* at 12-13.

### B.    This case is now moot.

For similar reasons that Plaintiffs lack standing, this case is also moot. "The doctrine that federal courts may not decide moot cases 'derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" *Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351, 354 (8th Cir. 1998) (quoting *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3

10

(1964)).  "A claim for injunctive relief may become moot if challenged conduct permanently ceases."  *Id.* at 354.

Here, Plaintiffs raise prospective claims for injunctive and prospective relief based solely on Defendants' alleged conduct during Operation Metro Surge.  *See*, *e.g.*, FAC ¶¶ 94-95; *id.* ¶ 283 (noting that the federal government announced, the day before Plaintiffs filed the FAC, that Operation Metro Surge "would end").  Yet Operation Metro Surge has now concluded.  *See* Second Easterwood Decl. ¶¶ 5, 10 ("Operation Metro Surge was an exclusively federal operation" that has reached its "conclusion").  More importantly, the vast majority of DHS personnel who were surged to Minnesota as part of Operation Metro Surge have left.  *See* Raybon Decl. ¶¶ 7-10 (CBP demobilized approximately 1,029 employees assigned to Operation Metro Surge throughout February 2026); Second Easterwood Decl. ¶¶ 8-9 (while there were approximately 3,000 ICE officers and agents detailed to the St. Paul Field Office as part of Operation Metro Surge, approximately 482 remain).  The detailed ICE officers and agents who remain are focused on arrest and removal of incarcerated individuals and criminal investigations of fraud, money laundering, and public safety priorities, Second Easterwood Decl. ¶¶ 10-11.  That is quite different from the type of "'at-large' arrests of illegal aliens in the Twin Cities metro area," First Decl. of David Easterwood ¶ 5, ECF No. 47, which was a focus of Operation Metro Surge, and which led to the types of interactions between DHS personnel and protestors

11

throughout the Twin Cities area, during which Plaintiffs contend in the FAC that Defendants engaged in unconstitutional conduct.[3]

This Court rightly recognized that the argument that Plaintiffs' case "suffers from . . . mootness issues" has "some force." Order, ECF No. 246, at 9. Plaintiffs seek injunctive relief against alleged unlawful conduct during Operation Metro Surge, but Operation Metro Surge has now ended. Plaintiffs will likely argue the case is not moot because DHS remains active in Minnesota after Operation Metro Surge. But the FAC does not adequately plead any controversy regarding Defendants' post-Operation Metro Surge conduct. The FAC merely speculates that Defendants may engage in future conduct that Plaintiffs view as unconstitutional. *See* FAC ¶ 285. Plaintiffs' factual allegations of Defendants' conduct during a significant surge of enforcement resources do not match their requested remedy of an injunction against Defendants' ongoing operations after that surge has ended. To the extent this lawsuit ever presented a controversy, it is now moot.

### C.   Plaintiffs fail to state a First Amendment claim (Count I).

Plaintiffs raise a single First Amendment claim, based on a theory that Defendants have retaliated against them for engaging in protected First Amendment activity. *See* FAC ¶¶ 299-300 (alleging that Plaintiffs "engaged in constitutionally protected" First Amendment activity); *id.* ¶ 301 ("Defendants retaliated against Plaintiffs . . . for engaging in constitutionally protected activity"). A retaliation claim requires three showings:

---

[3] To be sure, DHS makes clear that "ERO officers within the St. Paul Field Office will continue to manage their traditional immigration enforcement portfolios – prioritizing threats to national security, public safety, and border security." Second Easterwood Decl. ¶ 10.

To prevail on their retaliation claim, the plaintiffs must show that they engaged in protected First Amendment activity. If they can make that showing, then the focus shifts to whether the officers took an adverse action that would chill a person of ordinary firmness from continuing in the protected activity. Finally, the plaintiffs must prove the officers would not have taken the adverse action but for harboring retaliatory animus against the plaintiffs because of the exercise of their First Amendment rights.

*Aldridge v. City of St. Louis*, 75 F.4th 895, 898-99 (8th Cir. 2023) (citation modified).

Each Plaintiff fails to make at least one of the required showings. Some Plaintiffs were not engaged in protected First Amendment activity at all. For example, some Plaintiffs (such as John Biestman, Janet Lee, Lucia Webb, and Ryan Doxsey) rely on a claim that by stalking law enforcement vehicles in cars, they were engaged in protected activity of observing law enforcement. *See* FAC ¶¶ 144, 146 (contending that Plaintiffs "following" law enforcement vehicles in cars is an "exercise of their First Amendment rights"); *id.* ¶¶ 188, 205, 255 (alleging that Biestman, Lee, Webb, and Doxsey followed law enforcement vehicles). However, the Supreme Court has held that there is no First Amendment "right to observe the issuance of a traffic ticket or to engage the issuing officer in conversation." *Colten v. Kentucky*, 407 U.S. 104, 109 (1972). And the Eighth Circuit has concluded that precedent does not "clearly establish a *First Amendment* right to observe police officers." *Molina v. City of St. Louis*, 59 F.4th 334, 340 (8th Cir. 2023). In *Molina*, a qualified immunity case that turned on whether a First Amendment right to observe police officers was clearly established in 2015, the Eighth Circuit explained that it did not believe that such a First Amendment right existed at all. *Id.* at 338. Rather, the Eighth Circuit concluded that "*Colten* suggests that observing police conduct is not expressive." *Id.* at 339.

13

Although this Court reasoned at the preliminary injunction stage that "the First Amendment protects the right to peacefully observe government officials, including law enforcement officers, who are engaged in their official duties in public," PI Order at 49-50, ECF No. 85, Eighth Circuit precedent cited by the Court does not support this conclusion.[4]  In any event, even if there were a First Amendment right to stand and observe police officers, that would not extend to chasing them on roadways.  *See id.* 50 n.24 (noting that "[a]t this time, the Court does not find that following law enforcement vehicles is protected by the First Amendment" because "none of the case law the Court has found clearly supports such a conclusion").

Furthermore, Plaintiffs fail to allege facts that plausibly demonstrate that actions taken by Defendants were caused by retaliatory animus toward protected speech, rather than by an "obvious alternative explanation," such as the Defendants' understanding of their law enforcement duties.  *Aldridge*, 75 F.4th at 900.  "If [a law enforcement officer's]

---

[4] For example, in *Ness v. City of Bloomington*, 11 F.4th 914, 923 (8th Cir. 2021), the Court found that taking photographs and videos of members of the public (not law enforcement) in a public park was protected speech, but it did not deal with merely observing law enforcement.  In *Hoyland v. McMenomy*, 869 F.3d 644 (8th Cir. 2017), where the Eighth Circuit affirmed rejection of a qualified immunity defense based on a First Amendment retaliation theory, the plaintiff was not merely observing but was clearly engaged in speech, *id.* at 649-50 (plaintiff was "screaming at the officers" and told them to "do their jobs 'the right way'").  And *Hoyland* was later abrogated by the Supreme Court.  *See Molina*, 59 F.4th at 338.  This Court also cited *Chestnut v. Wallace*, 947 F.3d 1085 (8th Cir. 2020), and *Walker v. City of Pine Bluff*, 414 F.3d 989 (8th Cir. 2005), but the Eighth Circuit in *Molina* explained that these were "Fourth Amendment cases" about whether observing police officers justified a seizure, which did not demonstrate "a *First Amendment* right to observe police officers."  *Molina*, 59 F.4th at 339-40.  Notably, this Court acknowledged that its analysis of these cases conflicted with the Eighth Circuit's analysis of *Molina*.  *See* PI Order 51 n.26.

response was driven not by 'animus' but by the defendant's understanding—however mistaken—of his official duties, then it was not 'retaliatory.'" *Id.* at 899 (quoting *Mitchell v. Kirchmeier*, 28 F.4th 888, 896 (8th Cir. 2022)).

Even taking Plaintiffs' allegations as true, their allegations and supporting declarations demonstrate obvious alternative explanations to retaliatory animus. For example, Plaintiff Susan Tincher stepped into an established law enforcement perimeter where federal law enforcement officers were arresting potentially dangerous individuals, and after disobeying multiple orders to get back before she was arrested.[5] Other bystanders who vocally opposed ICE, but did not disobey orders to back up, were not arrested. *See* Rollins Decl. ¶¶ 6, 8; Decl. of Nicole Sorensen ¶¶ 12, 18, ECF No. 1-12. It is a far more plausible explanation that Tincher was arrested because federal law enforcement officers sought to maintain a secure perimeter during an active operation rather than as a form of retaliation for her posing the single question of "Are you ICE?". *See* FAC ¶ 170.[6]

Plaintiff Abdikadir Noor's allegations suggest that he was arrested because officers believed he was engaged in violence, not because of his speech. Prior to his arrest, Noor stood at the front of and helped direct a crowd that had surrounded federal officers. FAC ¶ 238. Those in the crowd assaulted federal officers by throwing snow, to the point where

---

[5] *See* FAC ¶¶ 170-71; Decl. of Susan Tincher ¶¶ 5-8, ECF No. 1-1; Decl. of Katherine Rollins ¶ 8, ECF No. 1-10.

[6] For the reasons stated above, Defendants maintain that standing and observing law enforcement activity is not protected First Amendment activity. *See supra*, pp. 13-14. But even if it were, it is not protected First Amendment activity to obstruct an active law enforcement operation by disobeying orders to get back from the edge of a law enforcement perimeter. Thus, at the time she was arrested, Tincher was not engaged in First Amendment activity by standing in the location from which officers had ordered her to back up.

15

the officers "looked increasingly panicked and called for backup." *Id.* At the pleading stage, the Court must take as true Plaintiffs' allegation that Noor was not personally throwing snow, *see id.*, even though Defendants have presented factual evidence that he was engaged in violent assaults against the officers.[7] Still, Plaintiffs' account supports the "obvious alternative explanation," *Aldridge*, 75 F.4th at 899-900 (quoting *Laney v. City of St. Louis*, 56 F.4th 1153, 1158 (8th Cir. 2023)), that federal officers arrested him because they believed (even if mistakenly) that the person at the front of and directing a violent crowd was participating in the violence. *See id.* at 899 (law enforcement response "driven not by 'animus' but by the defendant's understanding—however mistaken—of his official duties" is not retaliatory).

Some Plaintiffs were approached and briefly warned by federal officers after following the officers on roadways. This Court has already noted the lack of case law that "clearly supports" a conclusion "that following law enforcement vehicles is protected by the First Amendment." PI Order 50 n.24. That alone defeats the retaliation claims of those plaintiffs who followed law enforcement officers on roadways.

Furthermore, Plaintiffs' allegations and declarations demonstrate a pattern of drivers engaging in aggressive or dangerous behavior while following vehicles they presume are associated with certain federal agencies, such as honking while following, *see* Decl. of Imogen Page ¶ 3, ECF No. 1-9; Decl. of Adam Check ¶¶ 8, 10, ECF No. 136-13; Decl. of Ryan Doxsey ¶ 7, ECF No. 160; Decl. of Jacob W. Jester, ¶ 7, ECF No. 136-34;

---

[7] *See* First Decl. of David Easterwood ¶ 27, ECF No. 47; Defs.' Resp. to ECF No. 75, ECF No. 78, Ex. B.

16

Second Decl. of Claire W. Smith ¶ 2, ECF No. 136-68; Decl. of Margaret Wood ¶ 7, ECF No. 137,[8] following ICE vehicles back to ICE's Twin Cities office, Decl. of Lucia Webb ¶ 7, ECF No. 1-4, following ICE vehicles along with a group of other cars, *id.* ¶ 13, and lying in wait for a caravan of three ICE vehicles to begin driving and then driving in the middle of the caravan, Decl. of Flannery Clark ¶¶ 5-6, ECF No. 1-8.  In instances where federal officers approached the drivers, they consistently warned the drivers that their following activity was causing a safety hazard or impeding or interfering with their law enforcement efforts.[9]  That demonstrates that federal officers "w[ere] driven not by 'animus' but by [their] understanding . . . of [their] official duties," which means that their actions were "not 'retaliatory,'" regardless of whether the Court concludes that their understanding of their official duties was "mistaken." *Aldridge*, 75 F.4th at 899 (quoting *Mitchell,* 28 F.4th at 896 (8th Cir. 2022)).

Some Plaintiffs allege that they were exposed to pepper spray or other non-lethal munitions.  *See* FAC ¶ 226 (Alan Crenshaw); *id.* ¶ 262 (Margaret Wood); *id.* ¶¶ 274-76 (employees of Status Coup).  However, such claims again fail when there is an "obvious

---

[8] Drivers who honked while following federal vehicles in Minneapolis violated the Minneapolis municipal code, which prohibits "[t]he sounding of any horn or signal device on an automobile, motorcycle, bus or other vehicle, except as a danger signal or traffic warning." Minneapolis, Minn., Code of Ordinances Chapter 389.65(a)(3).  The reason for this ordinance is obvious. A car horn emits a loud and unpleasant noise. Unnecessary honking creates a safety hazard by potentially distracting other drivers and generally interferes with the ability of drivers and bystanders in the area to carry out their business.

[9] *See*, *e.g.*, Webb Decl. ¶ 9 (officer "accused me of impeding officers"); Clark Decl. ¶ 20 ("You're putting my agents at risk."); Page Decl. ¶ 6 (officer was "telling me I was interfering"); Declaration of Riley Kellermeyer ¶ 5, ECF No. 1-11 (officer "said I was 'impeding' them"); Declaration of Beatriz Rudolph Leon ¶ 29, ECF No. 14 (admonishing driver for "interfering with our investigation").

17

alternative explanation" that officers "utiliz[ed] the pepper spray as a crowd control mechanism rather than retaliating against a particular protestor." *Aldridge*, 75 F.4th at 899-900. They also fail where "[t]here is no evidence in the record of [law enforcement officers] indicating animus toward [a plaintiff] or singling him out." *Id.* at 899; *see also Stearns v. Wagner*, 122 F.4th 699, 703 (8th Cir. 2024) ("us[ing] pepper spray indiscriminately as a crowd control technique" is not retaliatory because it does not "'single out' anyone" for their speech (quoting *Aldridge*, 75 F.4th at 900)), *reh'g and reh'g en banc denied*, No. 23-3448, 2025 WL 82375 (8th Cir. Jan 13, 2025).

Plaintiffs' own allegations and declarations bear out the obvious alternative explanations for federal officers having to use pepper spray and/or crowd control devices. Some Plaintiffs allege that they were exposed to pepper spray while present at large protests, which in some cases turned violent and obstructive. *See, e.g.*, Decl. of Alan Crenshaw ¶ 10, ECF 1-6 (crowd led to a "traffic jam" in which it "took about 20 minutes for [ICE officers] to exit the area"); *id.* ¶ 12 ("[s]ome people threw snowballs at" ICE vehicles). And none of the Plaintiffs present at large protests allege any facts suggesting they were singled out for their speech. For example, Plaintiff Margaret Wood was exposed to pepper spray when she was leaning over a fence into a yard where federal officers were trying to make an arrest, and an officer said, "Get back." FAC ¶ 262; Wood Decl. ¶ 31. Those allegations suggest that the use of pepper spray was motivated by a desire to clear the area of an ongoing law enforcement operation, not retaliatory animus for First Amendment speech.

18

###### D.    Plaintiffs who were not seized fail to state a Fourth Amendment claim (Count II).

Plaintiffs fail to state a claim under the Fourth Amendment insofar as they do not allege that they were seized. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const, amend. IV. Therefore, a Fourth Amendment seizure-based claim requires that there be a seizure and that the seizure was unreasonable. Plaintiffs Alan Crenshaw and The NewsGuild – Communications Workers of America (TNG-CWA) fail to state a Fourth Amendment claim because they do not even allege that they were seized.[10]

Plaintiff Crenshaw alleges that he was exposed to pepper spray from ICE officers when ICE officers were attempting to leave a scene, and he was among a crowd that was yelling, blowing whistles, contributing to a traffic jam that impeded officers' exit, and throwing snowballs at ICE vehicles. Crenshaw Decl. ¶¶ 7-13; FAC ¶¶ 224-26. That is not a seizure. The "seizure" of a "person" follows from either some physical force or show of authority that "in some way restrains the liberty of the person." *Torres v. Madrid*, 592 U.S.306, 311 (2021) (citation modified). Just yesterday, the Eighth Circuit applied this standard to hold that a plaintiff was not seized when an officer "deployed one less-lethal impact round at [plaintiff], striking her hand," as part of an effort "to disperse the crowd and to establish control of the area" of a riot. *Perkins v. Des Moines*, No. 24-1375, slip op.

---

[10] Defendants are not moving to dismiss the Fourth Amendment claims of the remaining Plaintiffs for failure to state a claim. However, as explained above, those Plaintiffs' claims should be dismissed for lack of standing and mootness. *See supra*, pp. 5-12. If those claims survive the motion to dismiss, Defendants intend to defend them on the grounds that any seizures were reasonable.

19

7 (8th Cir. Mar. 5, 2026). The Ninth Circuit has also explained that dispersal of an noncompliant crowd by airborne chemical irritants (e.g., tear gas and pepper spray) is not a "seizure" within the meaning of the Fourth Amendment because "an application of force with an objective intent merely to *disperse* or *exclude* persons from an area—and *without* any measures objectively aimed at detaining or confining them in the process—does not involve the necessary 'intent to *restrain*' that might give rise to a 'seizure.'" *Puente v. City of Phoenix*, 123 F.4th 1035, 1052 (9th Cir. 2024). Therefore, officers using pepper spray while trying to exit the scene of a violent protest is not a seizure. *See Johnson v. City of Ferguson*, 926 F.3d 504, 506-07 (8th Cir. 2019) (en banc) (stating that a seizure requires "the "intentional acquisition of physical control terminating" a person's freedom of movement.).

Similarly, TNG-CWA does not allege that any of its members were seized. Rather, it alleges that one member "was hit with a teargas cannister while covering [a] protest," and another "was pushed by federal agents and threatened with arrest," but was not arrested. FAC ¶ 265. "A seizure requires the use of force *with intent to restrain*." *Torres*, 592 U.S. at 317. That standard "does not transform every physical contact between a government employee and a member of the public into a Fourth Amendment seizure." *Id.* Absent an allegation of the use of force with intent to restrain, TNG-CWA's and Plaintiff Crenshaw's Fourth Amendment claims must fail.[11]

---

[11] Some Plaintiffs allege that they were seized but also allege other interactions with officers that did not involve seizure. *See, e.g.*, Doxsey Decl. ¶¶ 12-13 (alleging that he "saw what I believed was an ICE vehicle" drive past his house and park in front of his

20

E.      **Plaintiffs fail to state a civil conspiracy or declaratory judgment claim (Counts III and IV).**

In Count III, labeled "Civil Conspiracy," Plaintiffs allege that Defendants have "conspired, under color of law, to deprive Plaintiffs . . . of their constitutional rights," FAC ¶ 315, meaning the same constitutional rights at issue in Plaintiffs' two substantive claims, *see id.* ¶ 316 (referring to "unlawful, excessive force" and "retaliat[ion]").  "The principal elements of [civil conspiracy] are an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.  A claim of civil conspiracy thus rests on the underlying substantive wrong." *Mizokami Bros. of Ariz., Inc. v. Mobay Chem. Corp.*, 660 F.2d 712, 718 n.8 (8th Cir. 1981).  Where a plaintiff brings a claim of civil conspiracy to deprive plaintiff of a constitutional right, the plaintiff must "prove a deprivation of a constitutional right or privilege." *Torgerson v. Roberts Cnty.*, 139 F.4th 638, 646 (8th Cir. 2025).  As explained above, Plaintiffs largely fail to state a substantive constitutional claim. *See supra*, pp. 12-20.  Furthermore, they fail to plausibly allege any agreement by Defendants to violate their rights.  To plead the existence of a conspiracy, a complaint must allege "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556.  "[A] conclusory allegation of agreement" is insufficient. *Id.*  Yet Plaintiffs plead no more than a conclusory allegation of agreement.  *See* FAC ¶ 315 ("Defendants conspired, under color of law, to deprive

---

house); Wood Decl. ¶ 34 (alleging that she was exposed to pepper spray).  Such incidents that do not involve a seizure cannot serve as the basis for a Fourth Amendment claim.

21

Plaintiffs and the Plaintiff Class of their constitutional rights."). Therefore, Plaintiffs' civil conspiracy claim fails.

Count IV, titled, "Declaration of Rights, 28 U.S.C. § 2201," seeks a "declaration that the acts at issue are unlawful," FAC ¶ 321, based on the legal theories asserted in the two substantive counts. "A claim for declaratory judgment is not a separate cause of action but a remedy for a viable underlying cause of action." *Allied Servs., LLC v. Smash My Trash, LLC*, 153 F.4th 600, 610 (8th Cir. 2025). Therefore, Plaintiffs' separate cause of action for a declaratory judgment fails.

## **CONCLUSION**

For these reasons, the Court should grant Defendants' Motion to Dismiss and enter an order dismissing the First Amended Complaint.

22

Dated: March 6, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW WARDEN
Assistant Director
Federal Programs Branch

*/s/ Jeremy S.B. Newman*
JEREMY S.B. NEWMAN
KATHLEEN C. JACOBS
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 532-3114
Fax: (202) 616-8470
jeremy.s.newman@usdoj.gov

*Counsel for Defendants*

23