UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

SUSAN TINCHER, JOHN BIESTMAN,
JANET LEE, LUCIA WEBB,
ABDIKADIR NOOR, ALAN
CRENSHAW, ABIGAIL SALM, RYAN
DOXSEY, MARGARET WOOD, THE
NEWSGUILD-COMMUNICATIONS
WORKERS OF AMERICA, and
STATUS COUP NEWS, *on behalf of
themselves and other similarly situated
individuals,*

          Plaintiffs,

    v.

KRISTI NOEM, Secretary, U.S.
Department of Homeland Security (DHS);
TODD LYONS, Acting Director, U.S.
Immigration and Customs Enforcement
(ICE); MARCOS CHARLES, Acting
Executive Associate Director,
Enforcement and Removal Operations
(ERO), ICE; DAVID EASTERWOOD,
Acting Field Office Director, ERO, ICE
Saint Paul Field Office; RODNEY
SCOTT, Commissioner, U.S. Customs and
Border Protection (CBP); GREGORY
BOVINO, Chief Border Patrol Agent,
CBP; JOHN A. CONDON, Acting
Executive Associate Director, Homeland
Security Investigations (HSI); THOMAS
HOMAN, DHS Executive Assistant
Director of Enforcement and Removal;
The Department of Homeland Security;
Unidentified Federal Agencies; and
Unidentified Federal Agents; *in their
official capacities*,

          Defendants.

Case No. 25-cv-4669 (KMM/DTS)

**PLAINTIFFS' MEMORANDUM OF
LAW IN SUPPORT OF MOTION
FOR JURISDICTIONAL
DISCOVERY**

At the end of last year, the United States government began flooding Minnesota with thousands of federal agents for an immigration enforcement action they dubbed "Operation Metro Surge." The government made no "provision for dealing with the hundreds of habeas petitions and other lawsuits that were sure to result" from this tidal wave of federal law enforcement activity. *Juan T.R. v. Noem*, No. 26-CV-0107, 2026 WL 200329, at *1 (D. Minn. Jan. 26, 2026) (Schiltz, C.J.) (order to show cause). This case, brought on behalf of a putative class of journalists, observers, and peaceful protesters whose First and Fourth Amendment rights were violated by federal agents, is one of the many lawsuits that resulted from the government's actions.

Plaintiffs[1] Susan Tincher, John Biestman, Janet Lee, Lucia Webb, Abdikadir Noor, and Alan Crenshaw filed a class action complaint seeking to protect the constitutional rights of themselves and others on December 17, 2025 (Doc. 1) and moved for a temporary restraining order the next day (Doc. 16). This Court converted Plaintiffs' motion into one for a preliminary injunction, which the parties briefed and argued. On January 16, 2026, this Court entered a thoroughly-reasoned 83-page Order granting preliminary injunctive

---

[1] These initial plaintiffs were subsequently joined by Abigail Salm, Ryan Doxsey, Margaret Wood, The NewsGuild – Communications Workers of America, and Status Coup News. "Plaintiffs" refers to all of the plaintiffs identified in Plaintiffs' First Amended Complaint (Doc. 136).

relief to Plaintiffs and the putative class that they represent (Doc. 85). Defendants[2] appealed, and the appellate process remains ongoing.[3]

On February 13, 2026, Plaintiffs filed a First Amended Complaint adding additional allegations, claims, and defendants (Doc. 136). On March 6, 2026, Defendants moved to dismiss Plaintiffs' First Amended Complaint (Doc. 253). Defendants' motion to dismiss asserts that Plaintiffs' First Amended Complaint is jurisdictionally deficient under Federal Rule of Civil Procedure 12(b)(1) and fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants argue that Plaintiffs lack standing and that this case is moot based on reductions in DHS personnel and changes in enforcement strategies. *See* Mem. in Support of Defs.' Mot. to Dismiss First Am. Compl. (hereinafter "Defs.' MTD") (Doc. 258 at 9). Pursuant to this Court's Case Management Order (Doc. 135 at 2 ¶ 5[4]), Plaintiffs now respectfully bring this motion for jurisdictional discovery needed to oppose Defendants' motion to dismiss.

## LEGAL STANDARD

"In deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual

---

[2] As hereinafter used in this memorandum, "Defendants" refers collectively to Kristi Noem, Todd Lyons, Marcos Charles, David Easterwood, Rodney Scott, Gregory Bovino, John A. Condon, Thomas Homan, and the Department of Homeland Security ("DHS").

[3] Because Defendants' motion to dismiss and this motion for jurisdictional discovery are not related to the issues on appeal, this Court retains jurisdiction to adjudicate them. *See Janousek v. Doyle*, 313 F.2d 916, 920 (8th Cir. 1963).

[4] Page numbers refer to the CM/ECF pagination.

attack—where it may consider matters outside the pleadings." *Croyle ex rel. Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). "A factual attack occurs when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction." *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) (quotation omitted). In the face of a factual attack, Plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence. *See Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018).

Because the burden of establishing jurisdiction rests with Plaintiffs, this Court should not grant a motion to dismiss in response to a factual attack without permitting jurisdictional discovery. *See Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008). Failure to allow jurisdictional discovery when such discovery is necessary to respond to a factual attack may be an abuse of discretion. *See id.*

## ARGUMENT

Plaintiffs should be permitted to conduct limited discovery on factual issues relevant to Defendants' arguments for dismissal based on standing and mootness. Defendants' jurisdictional arguments are based on matters outside the four corners of Plaintiffs' First Amended Complaint, which means their attacks are factual. Courts in the Eighth Circuit routinely allow parties to conduct discovery before responding to factual attacks on jurisdiction. And the specific discovery that Plaintiffs seek is narrowly tailored to the

3

standing and mootness issues raised by Defendants' motion. Plaintiffs' motion for jurisdictional discovery should be granted.

I.      **Plaintiffs should be permitted to conduct discovery before responding to Defendants' jurisdictional motion to dismiss.**

        A.      **Defendants' attack on the Court's jurisdiction is factual, not facial, which entitles Plaintiffs to discovery.**

Defendants' jurisdictional motion to dismiss relies on two declarations: one from an official in U.S. Customs and Border Protection ("CBP"), and one from an official in U.S. Immigration and Customs Enforcement ("ICE"). *See* Decl. of Marty C. Raybon Sr. ("Raybon Decl.") (Doc. 254); Decl. of David Easterwood ("Easterwood Decl.") (Doc. 255). According to the CBP and ICE declarants, "Operation Metro Surge has now concluded," "the vast majority of [federal agents] who were surged to Minnesota as part of Operation Metro Surge have left," and federal agents remaining in Minnesota "are focused on arrest and removal of incarcerated individuals and criminal investigations of fraud, money laundering, and public safety priorities." Defs.' MTD at 16 (citing Easterwood and Raybon Declarations). Relying on those assertions, Defendants contend that Plaintiffs are unlikely to experience future violations by federal agents of their rights to observe, record, protest, and report on their government's actions. *See id.* at 13. Defendants thus claim that this case is moot and that Plaintiffs lack standing to pursue injunctive relief.

Because Defendants rely on evidence outside the First Amended Complaint, the motion raises a factual attack on this Court's jurisdiction. *See Davis*, 886 F.3d at 679. Plaintiffs are entitled to test the basis of Defendants' factual attack through jurisdictional discovery. *See Steinbuch*, 518 F.3d at 589. Courts in this District routinely grant

4

jurisdictional discovery when a motion to dismiss relies on evidence that is extrinsic to the complaint and unavailable to plaintiffs. *See, e.g.*, *Randall v. Greatbanc Trust Co.*, No. 22-CV-2354 (ECT/DJF), 2023 WL 2662676, at *1–2 (D. Minn. Mar. 28, 2023) (granting motion for jurisdictional discovery where Defendants were expected to submit extrinsic evidence in support of a motion to dismiss on standing grounds); *Tim-Minn, Inc. v. Tim Hortons USA, Inc.*, No. 19-CV-409 (JNE/ECW), 2019 WL 2865600, at *4–5 (D. Minn. July 3, 2019) (granting motion for discovery where jurisdictional facts were not publicly available). The facts on which Defendants base their standing and mootness arguments are both outside Plaintiffs' First Amended Complaint and not within Plaintiffs' control. *See* Raybon Decl. (Doc. 254); Easterwood Decl. (Doc. 255). Plaintiffs should be permitted to probe these asserted facts in discovery. *See Steinbuch*, 518 F.3d at 589; *Randall*, 2023 WL 2662676, at *2.

**B.      Discovery is necessary for Plaintiffs to respond to Defendants' factual attack.**

Plaintiffs are not only entitled to jurisdictional discovery—they require it in order to fully respond to Defendants' motion to dismiss. The crux of Defendants' argument is that Plaintiffs are not likely to encounter federal agents and have their constitutional rights violated again because the federal government has announced that Operation Metro Surge has ended; there has been a related drawdown of federal agents in Minnesota; and the priorities of the agents who remain have shifted. *See* Defs.' MTD at 13 ("Even considering Plaintiffs' allegations of past harm, the conclusion of Operation Metro Surge and accompanying drawdown of federal officers and agents underscore that their claims that

they will be subjected to violations of their First or Fourth Amendment rights in the future are too speculative to support standing."); *id.* at 17 (similar argument for mootness). Plaintiffs need discovery into these factual assertions for at least three reasons.

*First*, Defendants' standing and mootness arguments are premised on short, self-serving declarations, which Plaintiffs should not be required to accept at face value. In our adversarial system, cross-examination "'is beyond any doubt the greatest legal engine ever invented for the discovery of truth.'" *Watkins v. Sowders*, 449 U.S. 341, 349 n.4 (1981) (quoting 5 J. Wigmore, Evidence § 1367 (Chadbourn rev. 1974)). In analogous circumstances, this Court has accordingly permitted plaintiffs to depose declarants whose written testimony is the basis of a defendant's motion to dismiss on jurisdictional grounds. *See Randall*, 2023 WL 2662676, at *2 ("Plaintiffs are further entitled to depose the declarant upon whose statements Defendants rely in support of their anticipated motion regarding the contents of her declaration and the documents supporting it."). Plaintiffs should be given the opportunity to depose Defendants' declarants in this case.

*Second*, even if declarations may provide sufficient grounds for a jurisdictional motion to dismiss in some cases, this case is not one of them. Defendants have a history of submitting declarations that do not contain reliable information. In its Order granting Plaintiffs' motion for a preliminary injunction, for example, this Court noted that an earlier declaration from Defendant Easterwood contained a "partial counter-factual narrative of the events leading up to the arrests of [Plaintiffs] Tincher and Noor." (Doc. 85 at 38). In other words, this Court has already concluded that Defendant Easterwood submitted a sworn declaration that was contradicted by the available documentary evidence. *See id.*

6

Other courts have gone even further and found federal agents' sworn testimony about Operation Metro Surge and similar immigration enforcement actions was not credible. *See, e.g.*, *Hussen v. Noem*, No. 26-CV-324 (ECT/ECW) (D. Minn. Mar. 9, 2026) (Doc. 191 at ¶¶ 21-24 (comparing ICE officer's written declaration to other testimony and video evidence and concluding the officer's declaration was "less credible")); *The Advocates for Human Rights v. U.S. Dep't of Homeland Security*, No. 26-CV-00749 (D. Minn. Feb. 12, 2026) (Doc. 95 at 4 (finding statement in ICE declaration "belied by the record")); *Illinois v. Trump*, No. 25-CV-12174, 2025 WL 2886645, at *5 (N.D. Ill. Oct. 10, 2025) (finding that three declarations submitted by some of the same Defendants "contain unreliable information"). Because Defendants have a history of providing "counter-factual narrative[s]" and not credible information in this case and similar cases, Plaintiffs should be allowed to test the factual assertions in Defendants' declarations through limited oral and written discovery.

*Third*, Plaintiffs should be permitted to take discovery because Defendants' declarations do not provide comprehensive answers to the questions that this Court will need to answer to decide whether Plaintiffs have standing and whether this case is moot. Consider each of Defendants' core factual assertions in turn. Defendants first assert that Operation Metro Surge "has now concluded." Defs.' MTD at 16. But that says nothing about DHS's *future* plans for Minnesota or whether Defendants may ramp up immigration enforcement actions in the state again soon. Defendants' public comments certainly suggest this possibility. *See, e.g.*, Louis Krauss, *Close to 650 Federal Agents Remain in Minnesota Weeks After Border Czar Announced End of Operation*, The Minn. Star Trib. (Mar. 4,

7

2026), https://www.startribune.com/close-to-650-federal-agents-remain-in-minnesota-weeks-after-border-czar-announced-end-of-operation/601590007 (quoting Defendant Homan as saying, "There's over 800 flights a day landing in St. Paul, Minnesota; if we need to come back, we'll come back."). If Defendants may return to Minnesota in the near term, their mootness argument could be defeated by the doctrine of voluntary cessation, *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000), or the exception for acts that are "capable of repetition yet evading review," *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 795 (8th Cir. 2016) (quotation marks omitted). Plaintiffs should be permitted to explore both current personnel deployments and plans for future deployments before responding to Defendants' motion to dismiss on mootness grounds.

Defendants next assert that "the vast majority of DHS personnel who were surged to Minnesota as part of Operation Metro Surge have left." Defs.' MTD at 16. According to Defendants, the fact that the waves of federal agents deployed to Minnesota have receded from the high-water mark of 3,000 to approximately 482 means that Plaintiffs are less likely to have constitutionally problematic encounters with federal agents in the future. *Id.* (citing Easterwood Decl. ¶¶ 8–9). There are several problems with Defendants' argument. To begin, and as noted above, Plaintiffs should not be required to accept Defendants' unverified say-so regarding the number of federal agents who are actually in Minnesota. This is particularly true because public reports indicate that the true number of federal agents in Minnesota may be considerably higher than Defendants reported in their declarations. *See, e.g.*, Krauss, *supra* at 7.

8

But even setting that issue aside, does reducing the number of federal agents from thousands to hundreds really decrease the risk that these agents will violate Plaintiffs' constitutional rights? Operation Midway Blitz—an analog of Operation Metro Surge that Defendants conducted in Chicago—appears to have involved the deployment of approximately 200 CBP agents, but it still resulted in widespread violations of the constitutional rights of peaceful observers and protesters. *See Chicago Headline Club v. Noem*, No. 25 C 12173, 2025 WL 3240782, at \*16, 80–87 (N.D. Ill. Nov. 20, 2025), *vacated by* 2026 WL 622677 (7th Cir. Mar. 5, 2026). And Chicago is roughly three times the size of the Twin Cities. Under these circumstances, Plaintiffs should be permitted to probe both the extent to which the so-called "drawdown of federal officers and agents," Defs.' MTD at 13, has actually happened, and the extent to which this reduction in federal forces actually eliminates the risk that Plaintiffs will again suffer the constitutional rights violations that brought them to court.

Finally, Defendants assert that "[t]he detailed ICE officers and agents who remain [in Minnesota] are focused on arrest and removal of incarcerated individuals and criminal investigations of fraud, money laundering, and public safety priorities." *Id.* at 16. Defendants assert that this shift in focus means that federal agents are less likely to encounter peaceful observers and protesters like Plaintiffs and therefore are less likely to violate their constitutional rights. *See id.* at 16–17. But this assertion raises more questions relevant to standing and mootness than it answers. Have Defendants really shifted the focus of their immigration-related operations in Minnesota? If so, why does this change mean that federal agents are less likely to encounter and interact with peaceful observers and

9

protesters? Were any of the federal agents who violated Plaintiffs' constitutional rights engaged in the sorts of activities that are purportedly now the focus of ICE and CBP activities in Minnesota? Do federal agents conducting the "'at-large' arrests" of immigrants (which were the focus of Operation Metro Surge, *id.* at 16), receive different training than federal agents who are "focused on arrest and removal of incarcerated individuals and criminal investigations"? Do different policies apply to these agents' interactions with members of the public who are protesting their actions?

Plaintiffs should be permitted to explore and test these factual issues before being asked to defend against Defendants' motion to dismiss on jurisdictional grounds.

## II.    The discovery Plaintiffs seek is narrowly tailored to the jurisdictional issues raised in Defendants' dismissal motion.

Plaintiffs seek the production of documents and deposition testimony tailored to the standing and mootness issues raised in Defendants' motion to dismiss. The specific discovery that Plaintiffs seek—and the reasons that Plaintiffs have not been able to obtain the facts sought in this discovery to date—are described in the Declaration of Virginia McCalmont ("McCalmont Decl.") and supporting exhibit being filed alongside this brief. *See* Fed. R. Civ. P. 56(d); *see also Johnson v. United States*, 534 F.3d 958, 965 (8th Cir. 2008) (request for jurisdictional discovery should be accompanied by a Rule 56(d) affidavit). The discovery Plaintiffs seek is necessary, appropriate, and within this Court's authority to order before further proceedings on Defendants' motion to dismiss. *See*

10

*Johnson*, 534 F.3d at 964 (district courts have "wide discretion" to grant jurisdictional discovery (quotation omitted)).

**Requests for production of documents.** Plaintiffs seek responses to seven requests for the production of documents ("RPDs") that are narrowly drawn and tailored to the jurisdictional issues raised by Defendants' motion to dismiss. *See* McCalmont Decl. Ex. A (draft requests for production of documents). Two of Plaintiffs' RPDs are for documents "sufficient to show" particular points, rather than requests for all documents related to those points. *See id.* at 5–6 (Requests 3 & 6). All of Plaintiffs' RPDs are limited to the period from November 1, 2025 to present—a less than five-month timeframe that hews closely to the initiation, operation, and conclusion of Operation Metro Surge. *See id.* at 4 (Instruction 3). And all of Plaintiffs' requests are highly relevant to questions of Plaintiffs' standing and this case's mootness:

- Documents about Plaintiffs (**Request 1**) will illuminate whether Plaintiffs have reason to fear retaliation or targeting by federal agents deployed to Minnesota in the future.

- Documents about Defendants' objectives, policies, and training during and after Operation Metro Surge (**Requests 2, 3, and 5**) will allow Plaintiffs to test Defendants' assertion that their shift in immigration enforcement priorities has reduced the likelihood that Plaintiffs will again be subject to deprivations of their constitutional rights in the future—as will statistics about the number of federal agents deployed to Minnesota and the arrests they made on a daily basis (**Request 6**).

- Documents about Defendants' plans for future immigration enforcement actions in Minnesota (**Request 4**) will allow Plaintiffs to assess whether the mootness exception for conduct that is capable of repetition yet evading review or the voluntary cessation doctrine applies in this case.

- Documents referenced or relied on by Defendants in drafting their filings in this case, including the Raybon and Easterwood declarations (**Request 7**), will aid

11

Plaintiffs in testing the truth of the factual assertions that form the basis of Defendants' motion to dismiss.

Because this Court and other courts have already determined that other sworn statements provided by Defendants have been "counter-factual," (Doc. 85 at 37), and of questionable credibility, *see Hussen* (Doc. 191 at ¶ 24), allowing Plaintiffs to request and receive this documentary evidence is a critically important check on the information contained in Defendants' declarations. Plaintiffs should not be forced to simply take Defendants' word on jurisdictional facts.

**Depositions.** Plaintiffs also seek to take the depositions of (1) Marty C. Raybon Sr.; (2) David Easterwood; and (3) a Rule 30(b)(6) governmental representative on topics to be identified by Plaintiffs after Defendants' completion of document productions. *See* McCalmont Decl. ¶ 12. Depositions of declarants who provide factual information in support of a jurisdictional motion to dismiss are routinely ordered by this Court. *See, e.g.*, *Randall*, 2023 WL 2662676, at *2. Depositions of the declarants in this case are particularly warranted because of concerns regarding the completeness and accuracy of information Defendants provided in previously filed declarations. *See* Order (Doc. 85 at 38). Furthermore, a deposition of a governmental representative pursuant to Federal Rule of Civil Procedure 30(b)(6) is appropriate to ensure that Plaintiffs receive complete information that binds Defendants on evidentiary points relevant to standing and mootness. Plaintiffs acknowledge that they will need to identify the agency from which they seek Rule 30(b)(6) deposition testimony, as well as the matters on which testimony will be sought. *See* Fed. R. Civ. P. 30(b)(6). But Plaintiffs should be permitted to receive and

12

review Defendants' document productions prior to identifying with specificity what testimony is required, and from whom, to facilitate Plaintiffs' ability to fully respond to Defendants' motion to dismiss on jurisdictional grounds.

"Should the Court bar Plaintiff[s'] access to jurisdictional discovery at this juncture, Plaintiff[s] may be unable to fully and fairly defend against the . . . Defendants' Motion to Dismiss." *Yellow Brick Road, LLC v. Koster*, No. 13-CV-2266 (JRT/LIB), 2014 WL 12932224, at *4 (D. Minn. Feb. 25, 2014). Plaintiffs' motion for jurisdictional discovery should be granted.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' motion for jurisdictional discovery; permit Plaintiffs to serve and order Defendants to answer the requests for production of documents attached as Exhibit A to the Declaration of Virginia McCalmont submitted herewith; and order Defendants to make available for depositions Marty C. Raybon Sr., David Easterwood, and a Rule 30(b)(6) governmental representative on topics to be identified by Plaintiffs within 14 days of Defendants' completion of document productions.

Dated:  March 13, 2026

**AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA**
Teresa Nelson (#269736)
Catherine Ahlin-Halverson (#350473)
Alicia Granse (#400771)
P.O. Box 14720
Minneapolis, MN 55414
(651) 529-1692
tnelson@aclu-mn.org
cahlin@aclu-mn.org
agranse@aclu-mn.org

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
Esha Bhandari (NY #4923140), *pro hac vice*
Brian Hauss (NY #5437751), *pro hac vice*
Scarlet Kim (NY #5025952), *pro hac vice*
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
ebhandari@aclu.org
bhauss@aclu.org
scarletk@aclu.org

**FREDRIKSON & BYRON, P.A.**
Leah C. Janus (#0337365)
Pari I. McGarraugh (#0395524)
Panhia Vang (#0399444)
Megan M. Helstrom (#0403441)
Ayesha Mitha (#504462)
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 492-7000
ljanus@fredlaw.com
pmcgarraugh@fredlaw.com
pvang@fredlaw.com
mhelstrom@fredlaw.com
amitha@fredlaw.com

*/s/ Virginia R. McCalmont*

**FORSGREN FISHER MCCALMONT DEMAREA TYSVER LLP**
Robert J. Gilbertson (#22361X)
Caitlinrose H. Fisher (#398358)
Virginia R. McCalmont (#399496)
Jackson C. Evert (#402214)
Rebecca R. Rogers (#403827)
1500 Capella Tower
225 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 474-3300
bgilbertson@forsgrenfisher.com
cfisher@forsgrenfisher.com
vmccalmont@forsgrenfisher.com
jevert@forsgrenfisher.com
rrogers@forsgrenfisher.com

**THE LAW OFFICE OF KEVIN C. RIACH**
Kevin C. Riach (#389277)
125 Main St. SE, Suite 339
Minneapolis, MN 55414
(612) 203-8555
kevin@riachdefense.com

**CIRESI CONLIN LLP**
Kyle W. Wislocky (#393492)
Jacob F. Siegel (#399615)
225 S. 6th St., Suite 4600
Minneapolis, MN 55402
(612) 361-8233
kww@ciresiconlin.com
jfs@ciresiconlin.com

*Attorneys for Plaintiffs and the Proposed Class*

14