UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SUSAN TINCHER, JOHN BIESTMAN, JANET LEE, LUCIA WEBB, ABDIKADIR NOOR, ALAN CRENSHAW, ABIGAIL SALM, RYAN DOXSEY, MARGARET WOOD, THE NEWSGUILD-COMMUNICATIONS WORKERS OF AMERICA, and STATUS COUP NEWS, *on behalf of themselves and other similarly situated individuals,* | Case No. 25-cv-04669-KMM-DTS |
| Plaintiffs, | |
| v. | **DECLARATION OF M█████ B███████** |
| KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS); TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement (ICE); MARCOS CHARLES, Acting Executive Associate Director, Enforcement and Removal Operations (ERO), ICE; DAVID EASTERWOOD, Acting Field Office Director, ERO, ICE Saint Paul Field Office; RODNEY SCOTT, Commissioner, U.S. Customs and Border Protection (CBP); GREGORY BOVINO, Chief Border Patrol Agent, CBP; JOHN A. CONDON, Acting Executive Associate Director, Homeland Security Investigations (HSI); THOMAS HOMAN, DHS Executive Assistant Director of Enforcement and Removal; The Department of Homeland Security; Unidentified Federal Agencies; and Unidentified Federal Agents; *in their official capacities,* | |
| Defendants. | |

I, M█ B█████, declare as follows:

1. I am a resident of Minneapolis, Minnesota. I am 23 years old. I am a legal assistant at a local non-profit. I make this declaration based on my personal knowledge.

2. I have seen federal immigration agents abduct my neighbors off the street with my own eyes and I have heard the accounts of the horrific conditions that people are subjected to in ICE detention. This is wrong. I don't want my neighbors to be abducted. I don't want my own government to detain people in inhumane conditions. It's terrifying that the federal government could do this to people. I object to the aggressive and immoral tactics used by the federal government.

3. I participate as a legal observer because observers play a crucial role in documenting the activities of federal immigration agents. In my opinion, observers can and do collect evidence that can be later used in defense of the people who have been detained. It is extraordinarily important to me that people are not taken in silence. It is our obligation to bear witness and to communicate our observations to the community.

4. On the afternoon of Saturday, March 28, 2026, I was observing at the Whipple Federal Building from a parking lot nearby. I observed a black Jeep Laredo with Minnesota license plate LSY 982 leave Whipple. I could see at least one person inside the Jeep was wearing a mask. I later checked the Defrost MN license plate register and discovered that this vehicle had been reported dozens of times at Whipple or being used in connection with federal immigration enforcement activity. Based on these facts, I feel confident that this Jeep was being used by federal immigration agents on March 28, 2026.

5. My companion and I followed the Jeep in my car, driving carefully and from a safe distance, as it left Whipple. While on the highway, past Woodbury, Minnesota, the Jeep's driver seemed to become aware that I was following the Jeep. The Jeep switched lanes twice; I did the same. Then, the Jeep got off at an exit; I did too.

6. Once off the highway, the Jeep turned onto Viking Drive, a quiet road in Pine Springs, Minnesota. I followed at a safe distance.

7. The second I turned onto Viking Drive, the Jeep quickly made a U-turn and drove at my car, fast. I was afraid the Jeep would ram my car. The Jeep pulled up right next to my car so that our driver's side windows were roughly side-by-side.

8. The driver opened his window. I could see that he was a white man wearing a green neck gaiter covering his nose and mouth. He screamed at me, "Do you need something?" His demeanor was very aggressive and it frightened me.

9. We tried to drive away, but the road was a dead end and there was nowhere for us to go. The Jeep followed me extremely closely. This was very scary. I turned around where the road ended. The Jeep must have also turned around and got in front of me because the Jeep ended up between my car and the egress back onto the main road.

10. The Jeep was partially blocking our pathway back out to the main road. His brake lights remained on and it looked like his car was still in gear. It might have been possible for us to drive around the Jeep, but I was scared it wouldn't be safe to do so and that the Jeep might ram our car. I was extremely aware that we were in an isolated area far from home.

11.     We waited, blocked in by the Jeep for perhaps five to ten minutes before a resident of the street drove up and asked if we were ok. We explained the situation and he parked his car and observed the situation from outside his nearby home. We felt more comfortable with another person watching the scene because I know that federal immigration agents can escalate to violence quickly and the area was otherwise isolated.

12.     Shortly after the man began observing, two Washington County Sheriff's Deputies arrived in two squad cars. We watched one of the deputies talk to the occupant of the Jeep.

13.     Then, one of the deputies, I believe it was the same one that had approached the Jeep, walked up to my car. They asked if there was a reason that we were following the Jeep "from the airport." I answered that we were driving on a road. My companion and I noted between ourselves that we hadn't followed "from the airport," we followed from Whipple. If the agent in the Jeep told the deputy that we followed from the airport, that's not true.

14.     The deputy ran my driver's license and ultimately let me go without any citation or warning, which makes sense because I hadn't broken any laws. When the deputy told me I was free to go, I immediately drove away from the area.

15.     I found this experience intimidating. I have continued to participate in legal observing, but I am more fearful and more cautious. I avoid putting myself in situations with federal agents in isolated areas and I avoid observing vehicles that have been previously reported as associated with violent or intimidating conduct.

4

16.    Although I have done nothing wrong, I fear that I will be subjected to retaliation if my name is publicly revealed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Signed on ___4/1/26___ in Hennepin County, Minnesota.