**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Susan Tincher, John Biestman, Janet Lee, Lucia Webb, Abdikadir Noor, and Alan Crenshaw, *on behalf of themselves and other similarly situated individuals*, | No. 0:25-cv-4669 (KMM/DTS) |
| Plaintiffs, | **ORDER** |
| v. | |
| Markwayne Mullin, Secretary of U.S. Department Of Homeland Security;[1] Todd Lyons, Acting Director, U.S. Immigration and Customs Enforcement (ICE); Marcos Charles, Acting Executive Associate Director, Enforcement and Removal Operations (ERO), ICE; David Easterwood, Acting Field Office Director, ERO, ICE Saint Paul Field Office; John A. Condon, Acting Executive Associate Director, Homeland Security Investigations; the Department of Homeland Security; Unidentified Federal Agencies; and Unidentified Federal Agents; *in their official capacities*, | |
| Defendants. | |

This matter is before the Court on Plaintiffs' Motion to Dissolve the Preliminary Injunction. (Dkt. 276.) For the following reasons, the Motion is granted. The Court's January 16, 2026 Preliminary Injunction is dissolved because it is now moot.

---

[1] Markwayne Mullin is now the Secretary of Homeland Security and is automatically substituted for Kristi Noem as a party pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1

## I.    BACKGROUND

Plaintiffs initiated this action on December 17, 2025, alleging that Defendants and their agents violated Plaintiffs' First and Fourth Amendment rights while carrying out immigration enforcement activities in Minnesota. (*See generally* Dkt. 1.) Specifically, Plaintiffs challenged the constitutionality of Defendants' actions in the context of enforcement activities during "Operation Metro Surge," which involved the assignment of thousands of law enforcement agents to the Twin Cities for the purpose of arresting undocumented immigrants. (*Id.*) Plaintiffs also moved for a temporary restraining order, which the Court converted to a motion for a preliminary injunction. (Dkts. 16, 24.)

On January 16, 2026, the Court granted that motion and issued a preliminary injunction ("Injunction") enjoining Defendants and their agents from engaging in certain conduct. (Dkt. 85.) The Injunction was narrower than that requested by Plaintiffs, in part because of Defendants' concern that a broader injunction could hamper routine federal law enforcement activities unrelated to the immigration enforcement operation then underway. As the Court explained:

> [T]he Court has limited the language used in the injunction to the Defendants and their officers and agents engaging in immigration enforcement activities as part of the current Operation Metro Surge. While the Court declines to specify a geographic limitation at this time because the operation is expanding beyond Minneapolis and St. Paul, it makes clear that the regularly conducted business of Border Patrol agents on the northern border, Coast Guard officers on the Great Lakes, customs officials at the airports, and other federal officers doing their work unrelated to Operation Metro Surge are not covered by the injunction.

(*Id.* at 79.) The Injunction's protections covered "all persons who do or will in the future record, observe, and/or protest Operation Metro Surge and related operations that have been ongoing in this District since December 4, 2025." (*Id.* at 81 ¶ 1.)[2] The Injunction's limitations constrained "Defendants and their officers and agents operating in the District of Minnesota to conduct immigration enforcement activities as part of Operation Metro Surge" as well as "to Defendants and their officers and agents responding to protests that arise in response to Operation Metro Surge." (*Id.* at 81 ¶ 2.) These two categories of officers and agents were identified as "Covered Federal Agents." (*Id.*) The Court then specified that the Injunction did not "apply to Defendants and their officers and agents otherwise conducting routine operations within the District of Minnesota." (*Id.* at 81–82 ¶ 2.) Finally, the Injunction established it would "remain in effect until Operation Metro Surge concludes or the conditions change such that it is no longer necessary." (*Id.* at 82 ¶ 5.)

On January 19, 2026, Defendants filed a notice of appeal from the Injunction to the United States Court of Appeals for the Eighth Circuit, and, a day later, filed a motion to stay the Injunction pending appeal. On January 21, the Eighth Circuit entered an administrative stay of the Injunction, and soon thereafter granted Defendants' motion to stay the Injunction pending appeal. *Tincher v. Noem*, 164 F.4th 1097, 1098 (8th Cir. 2026).

Several weeks later, Plaintiffs filed a motion before the Eighth Circuit seeking to stay the appeal to allow Plaintiffs time to file a motion to dissolve the Injunction before

---

[2] Citations are to the ECF pagination.

this Court.[3] Pls.-Appellees' Mot. to Stay Proceedings, *Tincher v. Noem*, No. 26-1105 (8th Cir. Feb. 13, 2026). Defendants opposed the motion. Opp'n to Mot. to Stay Proceedings, *Tincher v. Noem*, No. 26-1105 (8th Cir. Feb. 17, 2026). On February 19, 2026, the Eighth Circuit granted the stay in part, giving this Court time to issue an indicative ruling regarding whether it would dissolve the Injunction pursuant to Federal Rule of Civil Procedure 62.1. (Dkt. 233.)

Plaintiffs subsequently filed a Motion for an Indictive Ruling on dissolving the Injunction (Dkt. 237), which Defendants opposed (Dkt. 245). On March 5, 2026, the Court granted the Motion for an Indicative Ruling and "indicate[d] that it would grant a motion to dissolve the January 16, 2026 Preliminary Injunction (Dkt. 85) as moot if the Court of Appeals remands for that purpose." (Dkt. 246 at 9 ¶ 2.) In response, the Eighth Circuit remanded the Injunction back to this Court on March 17, 2026 for the purpose of ruling on a motion to dissolve the Injunction, stating in full:

> This case is hereby remanded to the district court for the limited purpose of allowing the district court to rule on Plaintiff's motion to dissolve the preliminary injunction. The parties are instructed to move for appropriate relief from our court within fourteen days of the date of the district court's ruling on such motion. *See* Fed. R. App. P. 12.1(b).

(Dkt. 263 at 1.) Plaintiffs then filed this Motion seeking to dissolve the Injunction. (Dkt. 276.) Defendants continue to oppose its dissolution. (Dkt. 287.)

---

[3] Plaintiffs also filed an Amended Complaint in this Court on February 13. (Dkt. 136.)

### III.   DISCUSSION

Under Article III, federal courts may only adjudicate "actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "Through the passage of time and the occurrence of irrevocable events, disputes may disappear so that federal courts no longer can grant effective relief. When this happens, the issue is moot and a federal court has no power to decide the issue." *Lebanon Chem. Corp. v. United Farmers Plant Food, Inc.*, 179 F.3d 1095, 1099 (8th Cir. 1999) (cleaned up). A preliminary injunction can become moot "where the effective time period of the injunction has passed." *Stevenson v. Blytheville Sch. Dist. No. 5*, 762 F.3d 765, 768 (8th Cir. 2014) (quotation and emphasis omitted); *see Olin Water Servs. v. Midland Rsch. Lab'ys, Inc.*, 774 F.2d 303, 306 (8th Cir. 1985) (concluding that a preliminary injunction is moot where it "expired by its own terms" during appeal). If the passage of time or changing circumstances render an injunction moot, it should be dissolved. *See Forbes v. Ark. Educ. Television Commc'n Network Found.*, 982 F.2d 289 (8th Cir. 1992) (per curiam); *Fauconniere Mfg. Corp. v. Sec'y of Def.*, 794 F.2d 350, 352 (8th Cir. 1986); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394 (1981) ("If the parties lack a legally cognizable interest in the determination whether the preliminary injunction was properly granted, . . . then we must vacate the district court's order and remand the case for consideration of the remaining issues.") (quoting *Ammond v. McGahn*, 532 F.2d 325, 328 (3d Cir. 1976)).

Operation Metro Surge ("OMS") has come to an end. On February 12, 2026, White House Border Czar Tom Homan, one of the leaders of OMS, stated that OMS had concluded and that the number of federal agents was being reduced. (*E.g.*, Dkt. 241-2 at 5

("I have proposed, and President Trump has concurred, that this surge operation conclude."); Dkt 241-2 at 3 ("But as far as the immigration surge, it's over. . . . And we should be back to regular footprint within a week.").) Defendants do not dispute that OMS itself has officially concluded and acknowledge that "the government announced the end of Operation Metro Surge" on February 12, 2026. (Dkt. 287 at 3.)

Because OMS has ended, the Court concludes that the Injunction is now moot. The scope of the Injunction expressly encompassed only conduct stemming from OMS and excluded non-OMS conduct. Indeed, the Injunction specified that the covered class of plaintiffs were those "record[ing], observ[ing], and/or protest[ing] Operation Metro Surge and related operations that have been ongoing in this District since December 4, 2025"; that the covered Defendants and officers were those "operating in the District of Minnesota to conduct immigration enforcement activities as part of Operation Metro Surge" or otherwise "responding to protests that arise in response to Operation Metro Surge[]"; and that it excluded "Defendants and their officers and agents otherwise conducting routine operations within the District of Minnesota." (Dkt. 85 at 81–82 ¶¶ 1–2.) Moreover, the Injunction clearly stated that it "shall remain in effect until Operation Metro Surge concludes[.]" (*Id.* at 82–83 ¶ 5.) The Injunction was expressly tied to the ongoing nature of OMS; now that OMS has concluded, the Injunction can no longer be effective.

Defendants' arguments that the Injunction is not moot are unpersuasive. First, Defendants argue that, even if OMS is over, the Injunction remains relevant because it encompasses not just OMS but also other "related operations." They highlight that the Injunction covers plaintiffs who "record, observe, and/or protest Operation Metro Surge

6

*and related operations* that have been ongoing in this District since December 4, 2025." (*Id.* at 81 ¶ 1 (emphasis added).) But Defendants' focus on "and related operations" strips this clause of its context. The plain language of the Injunction—both in its discussion of the Court's limitations as to breadth and in the decretal language—clearly ties it to OMS, which is now over. Moreover, Defendants' reading would vitiate any temporal limit whatsoever on the Injunction, which is far from the limited order the Court intended.

Defendants also argue that the Injunction is not moot because protests against immigration enforcement continue. Defendants highlight that 500 federal immigration agents remain in the Twin Cities, contending that their responses to ongoing protests would be covered by the Injunction, if it were in effect. But the current conditions are enormously different from those on the ground when the Injunction was issued. OMS was characterized by the presence of thousands of armed immigration agents patrolling the streets of the Twin Cities and making at-large arrests of persons suspected of being noncitizens. Plaintiffs and others responded to OMS's unique operations with equally unique protests at the locations of immigration agents' activities, as well as observing and recording OMS personnel while they carried out their official duties. The Injunction addressed that particular dynamic. The fact that some Minnesotans continue to protest federal immigration enforcement and policy generally only highlights that "the current conditions differ vastly from those prevailing when" this Court issued the Injunction. *Arc of Iowa v. Reynolds*, 33 F.4th 1042, 1044 (8th Cir. 2022) (per curiam) (vacating a preliminary injunction as moot where the "current conditions differ[ed] vastly from those prevailing when the district court addressed" the issues underlying the injunction).

Defendants lastly argue that, should the Court dissolve the Injunction, that dissolution should be done with prejudice to prevent Plaintiffs from moving for a new preliminary injunction. In the alternative, Defendants ask that such dissolution preclude Plaintiffs from relying on any pre-February 12, 2026 conduct in a second request for an injunction. Defendants suggest that, despite moving to vacate the current Injunction, Plaintiffs will immediately seek a new one, and they are taking these steps in order to evade appellate review. For this reason, Defendants ask the Court to proactively restrict both the future remedies available to Plaintiffs and their use of evidence already in the record. However, Defendants cite no authority to support the imposition of such restrictions in this case, and the Court declines the invitation to do so here. A determination to the contrary would be to prejudge issues not before the Court on this limited Motion.

This conclusion does not mean that the discussion of these issues necessarily comes to an end. Should Plaintiffs seek additional interim injunctive relief, Defendants are free to raise their concerns about the propriety of such an injunction and the relevance of events from December through early February to any such requests. Plaintiffs will of course continue to bear the burden of satisfying the strictures of Article III standing for their claims for injunctive relief, *see City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), and they will have to demonstrate a need for any future motion for preliminary injunctive relief, *see Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981). Furthermore, a Motion to Dismiss the Amended Complaint is currently pending before this Court in which Defendants have argued that Plaintiffs lack standing to seek any prospective relief and that the case is now moot. (Dkts. 253, 258.) The Court will address Defendants' broader

concerns about the ongoing viability of the Plaintiffs' claims in the context of the Motion to Dismiss. But those concerns do not weigh against dissolving an injunction that is now clearly moot.

Accordingly, the Court grants Plaintiffs' Motion and dissolves the January 16 Injunction.

### ORDER

For the reasons stated herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion to Dissolve the Preliminary Injunction (Dkt. 276) is **GRANTED**.

2. The Court's January 16, 2026 Preliminary Injunction (Dkt. 85) is **DISSOLVED as moot**.

Date: April 8, 2026                            *s/Katherine Menendez*
                                               Katherine Menendez
                                               United States District Judge