# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

SUSAN TINCHER, *et al.,*

        Plaintiffs,

v.

MARKWAYNE MULLIN, Secretary, U.S.
Department of Homeland Security (DHS),
*et al.*,

        Defendants.

Case No. 25-cv-04669 (KMM/DTS)

**DEFENDANTS' REPLY TO
PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION
TO DISMISS**

_____

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................... 1

ARGUMENT................................................................................................................ 2

I.  Plaintiffs lack standing. ...................................................................................... 2

    A.  The First Amended Complaint undermines Plaintiffs' likelihood of future injury. ................................................................................................ 2

    B.  Plaintiffs cannot show that they face a real and immediate threat of repeated injury. ........................................................................................ 4

II.  The FAC should be dismissed because the case is moot. ..................................... 8

    A.  The conclusion of Operation Metro Surge moots this case. ......................... 8

    B.  No exception to mootness applies. .............................................................. 11

        1.  The "capable of repetition, yet evading review" exception is inapplicable. ..................................................................................... 11

        2.  The voluntary cessation exception is inapplicable.................................. 13

III.  Plaintiffs fail to state a First Amendment claim....................................................... 14

    A.  Observing law enforcement or following law enforcement on roadways is not protected First Amendment activity................................. 15

    B.  Plaintiffs fail to plead causation for their retaliation claims. ...................... 16

IV.  Plaintiffs Crenshaw and CWA fail to plead a Fourth Amendment claim.............. 19

V.  Plaintiffs fail to plead a valid conspiracy claim. .................................................. 20

CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Aldridge v. City of St. Louis,*
75 F.4th 895 (8th Cir. 2023) ............................................................................. 16, 17, 18

*Already, LLC v. Nike, Inc.,*
568 U.S. 85 (2013) ........................................................................................................ 9

*Alvarez v. Smith,*
558 U.S. 87 (2009) ........................................................................................................ 9

*Arizonans for Off. Eng. v. Arizona,*
520 U.S. 43 (1997) ........................................................................................................ 8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................................... 20

*Bonenberger v. St. Louis Metropolitan Police Department,*
810 F.3d 1103 (8th Cir. 2016) .................................................................................... 20

*Braitberg v. Charter Commc'ns, Inc.,*
836 F.3d 925 (8th Cir. 2016) ........................................................................................ 3

*Chafin v. Chafin,*
568 U.S. 165 (2013) ...................................................................................................... 8

*Chestnut v. Wallace,*
947 F.3d 1085 (8th Cir. 2020) .................................................................................... 15

*Chicago Headline Club v. Noem,*
No. 25-3023 (7th Cir. 2025). ....................................................................................... 8

*Church of Scientology of Cal. v. United States,*
506 U.S. 9 (1992) .......................................................................................................... 9

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) .............................................................................................. 2, 3, 10

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ............................................................................................. 2, 7, 10

*Clark v. Brewer,*
776 F.2d 226 (8th Cir. 1985) ...................................................................................... 12

*Colten v. Kentucky*,
407 U.S. 104 (1972)..................................................................................................15

*Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*,
138 F.3d 351 (8th Cir. 1998) .....................................................................................8

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
528 U.S. 167 (2000)..............................................................................................8, 11

*Hickman v. Missouri*,
144 F.3d 1141 (8th Cir. 1998) .................................................................................12

*Hoyland v. McMenomy*,
869 F.3d 644 (8th Cir. 2017) ...................................................................................16

*In re SuperValu, Inc.*,
870 F.3d 763 (8th Cir. 2017) .....................................................................................3

*Keohane v. Fla. Dep't of Corr. Sec'y*,
952 F.3d 1257 (11th Cir. 2020) ...............................................................................13

*Keup v. Sarpy Cnty.*,
159 F.4th 533 (8th Cir. 2025) ..................................................................................19

*Laird v. Tatum*,
408 U.S. 1 (1972)........................................................................................................7

*Marks v. Bauer*,
107 F.4th 840 (8th Cir. 2024), *vacated on other grounds*, 145 S. Ct. 2733 (2025)
(mem.), *remanded to*, 166 F.4th 1121 (8th Cir. 2026) ...............................................19

*Mille Lacs Band of Ojibwe v. Madore*,
128 F.4th 929 (8th Cir. 2025) ..................................................................................13

*Mills v. Green*,
159 U.S. 651 (1895)....................................................................................................9

*Mo. Soybean Ass'n v. EPA*,
289 F.3d 509 (8th Cir. 2002) ...................................................................................14

*Molina v. City of St. Louis*,
59 F.4th 334 (8th Cir. 2023) ...............................................................................15, 16

*Moore v. Thurston*,
928 F.3d 753 (8th Cir. 2019) ...................................................................................13

*Murphy v. Hunt,*
  455 U.S. 478 (1982)..................................................................................................12

*Murthy v. Missouri,*
  603 U.S. 43 (2024)............................................................................................1, 5, 7

*Ness v. City of Bloomington,*
  11 F.4th 914 (8th Cir. 2021) ...............................................................................15-16

*Nieters v. Holtan,*
  83 F.4th 1099 (8th Cir. 2023) ...............................................................................16

*Noem v. Vasquez Perdomo,*
  146 S. Ct. 1 (2025).................................................................................................2

*Ohio v. EPA,*
  969 F.3d 306 (6th Cir. 2020) ..................................................................................13

*O'Shea v. Littleton,*
  414 U.S. 488 (1974)..................................................................................................11

*Park v. Forest Service of U.S.,*
  205 F.3d 1034 (8th Cir. 2000) ............................................................................3, 6

*Princeton Univ. v. Schmid,*
  455 U.S. 100 (1982)..................................................................................................9

*Prowse v. Payne,*
  984 F.3d 700 (8th Cir. 2021) ..................................................................................13

*Quraishi v. St. Charles Cnty., Mo.,*
  986 F.3d 831 (8th Cir. 2021) ..................................................................................18

*Reach Cmty. Dev. v. DHS,*
  --- F. Supp. 3d ---, 2026 WL 632695 (D. Or. Mar. 6, 2026) .........................................19

*Resurrection Sch. v. Hertel,*
  35 F.4th 524 (6th Cir. 2022) ..................................................................................13

*Smith v. Bacon,*
  699 F.2d 434 (8th Cir. 1983) ..................................................................................20

*Spencer v. Kemna,*
  523 U.S. 1 (1998)..............................................................................................11, 12

*Spokeo, Inc. v. Robins*,
 578 U.S. 330 (2016)......................................................................................................4, 6

*Storer v. Brown*,
 415 U.S. 724 (1974)........................................................................................................ 11

*Super Tire Eng'g Co. v. McCorkle*,
 416 U.S. 115 (1974)........................................................................................................ 11

*Thurairajah v. City of Fort Smith*,
 925 F.3d 979 (8th Cir. 2019) ......................................................................................... 16

*Tincher v. Noem*,
 164 F.4th 1097 (8th Cir. 2026) ...................................................................................... 10

*Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*,
 382 F.3d 1276 (11th Cir. 2004) ...................................................................................... 14

*Torres v. Madrid*,
 592 U.S. 306 (2021)......................................................................................................... 19

*United States v. Sanchez-Gomez*,
 584 U.S. 381 (2018)........................................................................................................... 8

*Walker v. City of Pine Bluff*,
 414 F.3d 989 (8th Cir. 2005) ......................................................................................... 15

*Weinstein v. Bradford*,
 423 U.S. 147 (1975).............................................................................................. 11, 12, 13

*Whitmore v. Arkansas*,
 495 U.S. 149 (1990)........................................................................................................... 2

## INTRODUCTION

As explained in Defendants' Motion to Dismiss brief,[1] Plaintiffs fail to establish the Court's jurisdiction over this case or state a valid claim. Plaintiffs' Opposition[2] fails to persuade otherwise.

*First*, Plaintiffs lack standing to seek prospective relief. Because Operation Metro Surge is over, Plaintiffs fail to show "a substantial risk that, in the near future, they will suffer an injury that is traceable to a Government defendant and redressable by the injunction they seek." *Murthy v. Missouri*, 603 U.S. 43, 49-50 (2024). More than two months after the announced end of Operation Metro Surge, Plaintiffs still make no allegation that any Plaintiff has suffered any injury since then. Plaintiffs' argument that the Court should simply ignore the undisputed fact that Operation Metro Surge has ended disregards the forward-looking standard for standing to seek prospective relief.

*Second*, any controversy has been mooted by the end of Operation Metro Surge. All of Plaintiffs' allegations of violations of their rights pertain to Operation Metro Surge, which is now over. Thus, the controversy regarding Operation Metro Surge is moot, and Plaintiffs do not plead a factual basis for any controversy regarding Defendants' conduct toward Plaintiffs after Operation Metro Surge.

*Third*, Plaintiffs largely fail to state a valid claim. Plaintiffs' allegations, even taken as true, do not plausibly suggest that Defendants' actions toward Plaintiffs were motivated by retaliatory animus toward protected First Amendment activity, rather than Defendants'

---

[1] Mem. in Supp. of Defs.' Mot. to Dismiss First Am. Compl., ECF No. 258 ("Mem.").

[2] Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, ECF No. 294 ("Opp'n").

understanding of their law enforcement duties.  And those Plaintiffs who do not allege that they were seized cannot state a Fourth Amendment claim.

## ARGUMENT

**I.      Plaintiffs lack standing.**

**A.      The First Amended Complaint undermines Plaintiffs' likelihood of future injury.**

The First Amended Complaint fails to establish that any named Plaintiff has standing to pursue their claims.  Plaintiffs must show that an alleged injury is "concrete" and "real and immediate, not 'conjectural' or 'hypothetical'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).  Here, standing "does not exist merely because plaintiffs experienced past harm and fear its recurrence."  *Noem v. Vasquez Perdomo*,146 S. Ct. 1, 2 (2025) (Kavanaugh, J., concurring) (citing *Lyons*, 461 U.S. 95).  It is not sufficient to allege that a plaintiff's rights were violated in past incidents, because absent a "real and immediate threat" that he will suffer the same injury again in the future, he lacks standing.  *Lyons*, 461 U.S. at 105.  Given the end of Operation Metro Surge, Plaintiffs' allegations are insufficient to support an inference that the "threatened injury" of future constitutional violation is "*certainly impending.*"  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).  As the Supreme Court emphasized in *Clapper*, "allegations of *possible* future injury are not sufficient" to establish Article III standing.  *Id.*

Even if the Court confines its analysis to the allegations of the FAC, Plaintiffs cannot show a threatened injury that is certainly impending for several reasons.  First, the

FAC establishes that the government had announced that Operation Metro Surge was ending. First Am. Compl. ("FAC") ¶¶ 282-285, ECF No. 136. This announcement negates the likelihood of an imminent future injury and makes any risk of repeated injury hypothetical at best. *See Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016) ("[A] speculative or hypothetical risk is insufficient.").

Second, in the two months since Operation Metro Surge ended, not a single original Plaintiff alleged new injuries in the FAC.[3] The absence of any such allegations highlights the speculative nature of potential future injury. *See In re SuperValu, Inc.*, 870 F.3d 763, 771 (8th Cir. 2017) ("the mere possibility" of future injury "is not enough for standing").

Third, Plaintiffs' FAC is largely supported by non-party declarations, thus, Plaintiffs themselves have shown no reasonable basis to believe that *a Plaintiff* will suffer future injury. *See Park v. Forest Service of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000) ("In the case of complaints for injunctive relief, the 'injury in fact' element of standing requires a showing that the plaintiff faces a threat of ongoing or future harm." (citing *Lyons*, 461 U.S. at 101-05)). The question is not whether others will suffer injury, but whether the named Plaintiffs seeking prospective injunctive relief have demonstrated a concrete, particularized likelihood of themselves suffering an imminent injury. The non-party declarations "add[] nothing to the question of standing" because the "named plaintiffs who represent a class must allege and show that they personally have been injured, not that

---

[3] Plaintiff Crenshaw added a description of events he allegedly witnessed, but does not allege suffering any injury. *See* FAC ¶ 228.

injury has been suffered by other, unidentified members of the class to which they belong."

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (citation modified).

Fourth, Plaintiffs cannot establish standing by arguing that "[w]hile there may be fewer agents on the ground, there is no indication that their response to Minnesotans documenting, observing, filming, or protesting their activities will change." FAC ¶ 285. That speculative claim is undermined by the fact that the situation in Minnesota has, in fact, changed, as reflected in the FAC. Indeed, it is notable that between the filing of the initial complaint in December and the FAC in February, no additional allegations were added by the original Plaintiffs, although Operation Metro Surge was, at the time, in full swing. And Plaintiffs have not come forward with any new allegations of harm since the end of Operation Metro Surge. Thus, Plaintiffs' own factual allegations in the FAC at a minimum suggest that future injury is hypothetical and conjectural.

**B.      Plaintiffs cannot show that they face a real and immediate threat of repeated injury.**

Plaintiffs' primary response to Defendants' argument that the end of Operation Metro Surge undermines their standing is to ask the Court to ignore it. Opp'n 29 ("ultimate drawdown and other post-filing events" are not "relevant" to "standing"). According to Plaintiffs, the Court can only consider events as the original Complaint's filing on December 17, 2025, or the FAC's filing on February 13, 2026 (which of these dates, Plaintiffs cannot seem to make up their mind). *See id.* That view is puzzling considering that Plaintiffs simultaneously submitted 18 declarations in support of their opposition, many of which concern events occurring after filing of the Original Complaint and the

4

FAC. *See* ECF Nos. 295-96, 298-301, 303-04, 306-18.[4]  It is also puzzling because the operative complaint affirmatively alleged that Operation Metro Surge was ending.  FAC ¶¶ 282-85.

In any event, Plaintiffs are incorrect that the Court must blind itself to the obvious change in circumstances since the filing of both complaints.  Although as a general matter, standing is assessed at the time of the complaint, a special rule applies to claims for prospective relief: "To establish standing, the plaintiffs must demonstrate a substantial risk that, *in the near future, they will suffer an injury* that is traceable to a Government defendant and redressable by the injunction they seek."  *Murthy*, 603 U.S. at 49-50 (emphasis added).  The question is not whether in December 2025, Plaintiffs feared injury in January 2026.  It is whether Plaintiffs *now* face a substantial risk of future injury.  Post-complaint events are fair game in answering that question.  *Murthy* is instructive.  Even though the operative complaints were filed in May 2022 and August 2022, 603 U.S. at 54, the Supreme Court considered that in 2023, "the Federal Government has wound down its own pandemic response measures[,]" which the Plaintiffs contended threatened them with injury, *id.* at 74.  "[W]ithout proof of an ongoing pressure campaign" by the government, the plaintiffs could show no more than a "speculative" fear that the government would harm them in the future.  *Id.* at 69.  So too, here, the lack of an ongoing surge in immigration enforcement in Minnesota renders Plaintiffs' fears of future injury speculative.

---

[4] Plaintiffs' view is inconsistent with their prior position that the Court should consider new evidence of events post-dating the Complaint because it was "useful" to judge whether there is "likelihood of the unconstitutional conduct reoccurring."  Pls'. Resp. to Defs.' Objection to Declarations at 2, ECF No. 41.

With the correct standard in mind, Plaintiffs fail to show a substantial risk of injury in the near future, and their declarations do nothing to establish such a risk. Plaintiffs' declarations fall into essentially three categories: (1) allegations that predate the February 12, 2026, announcement that Operation Metro Surge would end, (2) allegations from the week that Operation Metro Surge was drawing down and some encounters occurring throughout the community, although these largely consisted of the declarants stalking officers in their vehicles, and (3) mid-to-late March encounters with officers wherein non-party declarants waited outside the Whipple building to stalk the vehicles that left. All but two of the declarations are from nonparties, which do nothing to show that Plaintiffs themselves are at risk of future injury. *See Spokeo*, 578 U.S. at 338 n.6.

The only two new party declarations, from Status Coup CEO Jordan Chariton and Susan Tincher, solely concern events during Operation Metro Surge. The most recent events covered in those declarations are February 2, 2026, in the Chariton Declaration and February 7, 2026, in the Tincher Declaration. *See* Decl. of Jordan Chariton ¶ 14, ECF No. 299 ("Chariton Decl."); Second Decl. of Susan Tincher ¶ 12, ECF No. 314 ("Second Tincher Decl."). Thus, more than two months after the announcement that Operation Metro Surge would end, Plaintiffs still make no allegation that any Plaintiff has suffered harm since then. Facially, this fact belies Plaintiffs' argument that Plaintiffs face an imminent threat of future harm. Despite her apparent ongoing and best efforts to interfere with lawful immigration enforcement operations, even Plaintiff Tincher cannot show that after the end of Operation Metro Surge, she faces "a real and immediate threat that she would again suffer similar injury in the future." *Park*, 205 F.3d at 1037 (citation modified).

The fact that her declaration executed on March 31 alleges no encounters since February 7 confirms this reality.

Without any imminent threatened injury, Plaintiffs cannot claim ongoing "subjective chill" of their First Amendment activity as a substitute for establishing a "specific present objective harm or [] threat of specific future harm[.]" *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). Plaintiffs cannot "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending[,]" including by alleging a "subjective chill" on protected speech. *Clapper*, 568 U.S. at 416-18 (quoting *Laird*, 408 U.S. at 13). Each of Plaintiffs' abstract and unspecified "fears" is insufficient to establish standing on this basis, especially now that Operation Metro Surge is over. The vast majority of Plaintiffs do not allege any chilling effect whatsoever. To support their claim of standing on this basis, Plaintiffs rely on a single "impact[]" on Plaintiff Salm's behavior. *See* Opp'n 24. The impact is not that she will stop observing or protest but that she will try not to go out alone. For the same reasons explained above, the allegation of a self-inflicted chilling cannot establish standing where a named Plaintiff faces no threat of imminent harm and instead voluntarily changes her conduct based on a "hypothetical future harm that is not certainly impending." *Murthy*, 603 U.S. at 46.

After protestors in Illinois challenged DHS's conduct during an immigration enforcement surge in Illinois known as Operation Midway Blitz, DHS announced that operation's conclusion. When staying a broad preliminary injunction issued in that case, the Seventh Circuit noted that the "lessen[ing] or ceas[ing]" of that operation gave the court

7

"reservations about Article III standing," given the need for plaintiffs to "show[] that the past harm they allegedly faced is likely to imminently happen to them in the future." Order, *Chicago Headline Club v. Noem*, No. 25-3023, ECF No. 29 (7th Cir. Nov. 19, 2025). Plaintiffs here bear the same burden of showing a likelihood of imminent future harm. Given the end of Operation Metro Surge, they cannot do so.

## II.    The FAC should be dismissed because the case is moot.

### A.    The conclusion of Operation Metro Surge moots this case.

As Plaintiffs do not and cannot dispute, for a federal court to have jurisdiction, an actual controversy must exist "at all stages of review," *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (citation omitted), and a plaintiff must have a "requisite personal interest" from the commencement of the litigation until its conclusion. *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Thus, when a case "becomes moot at any point during the proceedings," it is "outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385-86 (2018). In other words, "[i]t is not enough that a dispute was very much alive when suit was filed…. The parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.* 138 F.3d 351, 354 (8th Cir. 1998) (citation omitted).

This case is moot because all of Plaintiffs' allegations arise in connection with Operation Metro Surge, which is now over. A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation modified). This is true when an

8

intervening event "makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party[.]" *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)); *cf. Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (per curiam) (superseding policy made "the issue of the validity of the old regulation [] moot, for this case has 'lost its character as a present live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law" (citation omitted)).

Plaintiffs claim that the case remains live because they seek injunctive relief that would extend beyond Operation Metro Surge and to DHS throughout Minnesota as a whole. Opp'n 30. Yet although the *relief* sought by Plaintiffs extends beyond Operation Metro Surge, the *factual allegations* regarding Defendants' interactions with Plaintiffs pertain solely to Operation Metro Surge. The position that Plaintiffs successfully maintained to justify mooting the preliminary injunction and forestalling a likely adverse appellate ruling is that a clear demarcation exists between Operation Metro Surge conduct and post-Operation Metro Surge conduct. *See*, *e.g.*, Pls.' Mem. of Law in Supp. of Mot. to Dissolve the Prelim. Inj. At 2-3, ECF No. 279. Notably, more than two months after Defendants announced the end of Operation Metro Surge, Plaintiffs still raise no allegations of any allegedly unlawful interactions between Defendants and any Plaintiff

since the conclusion of Operation Metro Surge. *See supra*, pp. 6-7. Furthermore, this Court already rejected an injunction extending beyond Operation Metro Surge based on events during Operation Metro Surge, Prelim. Inj. ("PI Order") 79, 81-83, ECF No. 85 (limiting relief to Operation Metro Surge), and the Eighth Circuit concluded that even that injunction was "too broad." *Tincher v. Noem*, 164 F.4th 1097, 1099 (8th Cir. 2026). The upshot is that Plaintiffs cannot plead a controversy regarding post-Operation Metro Surge conduct by relying on factual allegations solely related to Operation Metro Surge.[5]

Finally, Plaintiffs complain that Defendants have "parroted" their standing arguments for purposes of mootness—but that, in essence, is exactly the point. If a party would not have standing today because of changed circumstances, the case is moot. Here, Plaintiffs challenged discrete governmental acts that have ceased. The Supreme Court has made clear that past exposure to allegedly unlawful conduct does not, by itself, establish Article III standing to seek prospective injunctive relief absent a real and immediate threat of future injury. *See Lyons*, 461 U.S. at 102-06. A plaintiff must show a "real and immediate" threat of future injury as opposed to a "conjectural or hypothetical" possibility of recurrence. *Id.* at 101-02 (citation omitted); *see also Clapper*, 568 U.S. at 401 (to

---

[5] Plaintiffs argue that "ongoing effects from Defendants' actions" save this case from mootness. Opp'n 30. Plaintiffs argue that "an ongoing chill to Plaintiffs' First Amendment rights" exists, *id.* at 31, but the incidents purportedly giving rise to such a chill occurred solely during Operation Metro Surge, which has now ended. Plaintiffs also point out that the FAC seeks expungement of records relating to Plaintiffs, but the only pertinent allegations Plaintiffs cite are that federal law enforcement officers drove to the homes of two Plaintiffs. *See id.* (citing FAC ¶¶ 257-58, 260). Yet Plaintiffs make no plausible argument that an order requiring the government to delete records of a person's address is an available remedy for an alleged First Amendment or Fourth Amendment violation.

establish injury in fact under Article III, the "threatened injury must be 'certainly impending'" (citation omitted)); *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (holding that the threatened injury is "too remote" and "conjectural" to satisfy Article III if the "prospect of future injury rests on the likelihood" of hypothetical future prosecutions). Here, Plaintiffs cannot satisfy this standard because any future operation would depend on new factual predicates.

## B. No exception to mootness applies.

Plaintiffs invoke two exceptions to mootness: (1) when the challenged conduct is "capable of repetition, yet evading review"; and (2) when a defendant voluntarily ceases its conduct and the challenged conduct can reasonably be expected to recur. *See Friends of the Earth*, 528 U.S. at 190 (citation omitted). Neither exception applies.

### 1. The "capable of repetition, yet evading review" exception is inapplicable.

The "capable of repetition, yet evading review" exception applies only in "exceptional situations," *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (citations omitted), and only when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). Plaintiffs satisfy neither requirement.

First, this exception applies in limited circumstances—such as a labor strike or election campaign, *see Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 126-27 (1974) (labor strike); *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974) (election campaign)—that are

11

too transient to receive judicial review.  The requisite standard for evading review is not simply, as Plaintiffs contend, that "Defendants' immigration operations around the country have at times been short-lived" and "too short to allow for complete adjudication of the claims."  Opp'n 34.  The Eighth Circuit provides, "the proper inquiry is whether the [challenged] activity is *by its very nature short in duration*, so that it could not, or probably would not, be able to be adjudicated while fully alive."  *See Hickman v. Missouri*, 144 F.3d 1141, 1143 (8th Cir. 1998) (quoting *Clark v. Brewer*, 776 F.2d 226, 229 (8th Cir. 1985)).

Simply put, Plaintiffs cannot have it both ways.  They cannot claim that an exception to the mootness doctrine applies because Operation Metro Surge has ended before full adjudication while also claiming that their claims are live because they challenge DHS immigration enforcement in Minnesota, generally.  If Plaintiffs' claims truly relate to DHS immigration enforcement activity in Minnesota exceeding the scope of Operation Metro Surge, aside from being unable to establish standing as discussed above, Plaintiffs cannot also claim that this case is not moot because it evades review.  In this case, Plaintiffs cannot show "that the duration of the alleged illegal conditions is 'always so short as to evade review.'"  *Hickman*, 144 F.3d at 1143 (quoting *Spencer*, 523 U.S. at 17).  "Thus, [p]utting aside whether this is a case that is capable of repetition, it has not been shown to be of the type that necessarily evades review…."  *Id.* (citation modified).

Second, there is no "reasonable expectation" that Plaintiffs will be "subjected to the same action again."  *Weinstein*, 423 U.S. at 149.  A reasonable expectation is "[more than] a mere physical or theoretical possibility."  *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam).  There must be a "'demonstrated probability' that the same controversy will recur

12

involving the same complaining party." *Id.* (quoting *Weinstein*, 423 U.S. at 149).  For the same reasons that Plaintiffs have not shown sufficient likelihood of future injury to support standing, *see supra*, pp. 4-8, they fail to satisfy this exception to mootness.

### 2.   The voluntary cessation exception is inapplicable.

The voluntary cessation exception to the mootness doctrine likewise does not apply. This exception applies where a burden "can be reasonably expected to recur after the defendant voluntarily ceased imposing it." *Moore v. Thurston*, 928 F.3d 753, 757 (8th Cir. 2019).  For this standard to be satisfied, "there must be a fair prospect that the conduct will recur in the foreseeable future[,]" *Ohio v. EPA*, 969 F.3d 306, 310 (6th Cir. 2020), and the potential recurrence must be "similar enough" to the challenged conduct "to present substantially the same legal controversy" as the original suit. *Resurrection Sch. v. Hertel*, 35 F.4th 524, 529 (6th Cir. 2022) (en banc) (quotation omitted).  The standard for applying this exception is "stringent." *Mille Lacs Band of Ojibwe v. Madore*, 128 F.4th 929, 941 (8th Cir. 2025) (quotation omitted).  And "when it is the government that has voluntarily ceased the challenged conduct[,]" *Prowse v. Payne*, 984 F.3d 700, 703 (8th Cir. 2021), courts often afford government entities and officials "more leeway than private parties in the presumption that they are unlikely to resume illegal activities," *id.* (quoting *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1267 (11th Cir. 2020)); *see also id.* ("[w]hen government laws or policies have been challenged, the Supreme Court has held almost

uniformly that cessation of the challenged behavior moots the suit" (quoting *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004)).[6]

Here, Operation Metro Surge has ended. No preliminary injunction is in place. All of Plaintiffs' allegations relate to Operation Metro Surge. Any future operation would rely on subsequent factual predicates, which Plaintiffs could attempt to challenge in a new lawsuit. Dismissing this case for lack of jurisdiction would not prejudice Plaintiffs' ability to seek relief in the future based on new facts. *Mo. Soybean Ass'n v. EPA*, 289 F.3d 509, 513 (8th Cir. 2002) ("dismissal for lack of jurisdiction must be without prejudice"). Thus, the voluntary cessation doctrine cannot save this case from mootness.[7]

## III.    Plaintiffs fail to state a First Amendment claim.

Plaintiffs fail to state a First Amendment retaliation claim, either because they do not plead that they were engaged in protected First Amendment activity, or because they do not plead that any adverse conduct by Defendants was caused by retaliatory animus toward such activity. Mem. 17-23.

---

[6] Plaintiffs have not advanced evidence that Defendants ended Operation Metro Surge to insulate themselves from judicial review. Rather, as Plaintiffs have pointed out, when announcing the surge's end, Defendant Thomas Homan declared it had been successful in achieving its public safety objectives. *See* FAC ¶ 283; *see also* Ex. A to Decl. of Kyle W. Wislocky, ECF No. 241-1.

[7] Even though Plaintiffs' Motion for Jurisdictional Discovery is fully briefed and Plaintiffs did not seek leave to file a reply brief, they argued for jurisdictional discovery in their Opposition. *See* Opp'n 34-35. For the reasons explained in Defendants' Opposition to Plaintiffs' Motion for Jurisdictional Discovery, ECF No. 289, Plaintiffs are not entitled to jurisdictional discovery.

A.    **Observing law enforcement or following law enforcement on roadways is not protected First Amendment activity.**

Those Plaintiffs who merely observed law enforcement or followed them in vehicles were not engaged in protected First Amendment activity. *Id.* at 18-19. Plaintiffs' contrary argument conflicts with Supreme Court precedent, as interpreted by the Eighth Circuit. *See Colten v. Kentucky*, 407 U.S. 104, 109 (1972) (finding no First Amendment "right to observe the issuance of a traffic ticket or to engage the issuing officer in conversation"); *Molina v. City of St. Louis*, 59 F.4th 334, 339 (8th Cir. 2023) ("*Colten* suggests that observing police conduct is not expressive."). Plaintiffs argue that *Colten* is distinguishable because the defendant in that case was engaged in obnoxious or annoying behavior. *See* Opp'n 40. Yet the Supreme Court held that his behavior of "observing the issuance of a traffic [citation]" was "not . . . protected by the First Amendment" at all, *Colten*, 407 U.S. at 109. The Supreme Court did not suggest that any infringement on First Amendment activity was justified by the interest in controlling annoying behavior.

Contrary to Plaintiffs' argument, Eighth Circuit precedent does not support a First Amendment right to observe law enforcement. Many of Plaintiffs' cases held that seizing a person for observing law enforcement violated the Fourth Amendment, which is distinct from a purported First Amendment right. *See Chestnut v. Wallace*, 947 F.3d 1085 (8th Cir. 2020); *Walker v. City of Pine Bluff*, 414 F.3d 989 (8th Cir. 2005); *see also Molina*, 59 F.4th at 339-40 (explaining that *Chestnut* and *Walker* did not address the First Amendment). Other cases involved First Amendment activity distinct from observing, such as taking photographs for purposes of newsgathering, *see Ness v. City of Bloomington*, 11 F.4th 914,

15

923 (8th Cir. 2021); *Nieters v. Holtan*, 83 F.4th 1099, 1107 (8th Cir. 2023), or vocally criticizing law enforcement, *see Hoyland v. McMenomy*, 869 F.3d 644 (8th Cir. 2017); *Thurairajah v. City of Fort Smith*, 925 F.3d 979, 982 (8th Cir. 2019). And Plaintiffs' citation of out-of-circuit authority, Opp'n at 39 & n.17, cannot overcome *Colten* or the Eighth Circuit's reading of *Colten* as "suggest[ing] that observing police conduct is not expressive." *Molina*, 59 F.4th at 339.

Even if there were a First Amendment right to observe law enforcement, it would not extend to following them on roadways. Mem. 19. Plaintiffs respond by chiding Defendants for using the word "chasing" rather than "following" to describe this conduct. Opp'n 31-32. Semantic quibbles aside, Plaintiffs ignore that this Court concluded that "none of the caselaw the Court has found clearly supports such a conclusion" that "following law enforcement vehicles is protected by the First Amendment." PI Order at 50 n.24. Plaintiffs' cited cases also do not support this conclusion. *See Nieters*, 83 F.4th at 1107 (journalist stood and took pictures of law enforcement); *Thurairajah*, 925 F.3d at 982 (passing motorist yelled profanity at stationary officer).

**B.    Plaintiffs fail to plead causation for their retaliation claims.**

The remaining Plaintiffs' retaliation claims fail because Plaintiffs have failed to adequately plead that "the officers would not have taken the adverse action but for harboring retaliatory animus against the plaintiffs because of the exercise of their First Amendment rights." *Aldridge v. City of St. Louis*, 75 F.4th 895, 899 (8th Cir. 2023) (citation modified); *see* Mem. 14-18. In arguing to the contrary, Plaintiffs accuse Defendants of "mak[ing] a fatal error" of "fail[ing] to assume the truth of Plaintiffs'

16

allegations." Opp'n 44. Not so. Defendants' argument is that, even taking Plaintiffs' factual allegations as true, they fail to plead causation because their own allegations establish "obvious alternative explanation[s]" to retaliatory animus. *Aldridge*, 75 F.4th at 899-900.

For example, Plaintiffs allege that Tincher approached a law enforcement perimeter where officers were attempting to apprehend someone believed to be violent and dangerous, and she disobeyed multiple orders to get back before she was arrested. *See* FAC ¶¶ 170-71; Decl. of Susan Tincher ¶¶ 5-8, ECF No. 1-1; Decl. of Katherine Rollins ¶ 8, ECF No. 1-10. That raises the obvious explanation that the officers were attempting to maintain a law enforcement perimeter rather than retaliate against Tincher for her speech. Similarly, Plaintiffs allege that Plaintiff Abdikadir Noor led and directed a crowd that surrounded and violently assaulted ICE officers. FAC ¶ 238; Decl. of Abdikadir Noor ¶¶ 10, 12, ECF No. 1-5. Even though Plaintiffs allege that Noor did not engage in violence, FAC ¶ 238, their allegations establish the alternative explanation that the officers believed that the person leading and directing the violent crowd was participating in the violence.[8]

Plaintiffs next argue that the so-called "mobile-observer Plaintiffs" plead retaliation because they alleged that they "were stopped by DHS agents for lawfully following their vehicles." Opp'n 45. This argument fails because no case law supports the conclusion that

---

[8] Plaintiffs argue that "Plaintiffs have adequately alleged the absence of probable cause" for these arrests. Opp'n 45. But Defendants' argument at this stage is that Plaintiffs fail to plead retaliatory animus, not the absence of probable cause.

"following law enforcement vehicles is protected by the First Amendment." PI Order 50 n.24.[9]

Finally, Plaintiffs fail to show that they were pepper sprayed based on retaliatory animus. Plaintiffs recite the standard, that they "must show that they were singled out because of their exercise of constitutional rights[,]" Opp'n 47 (quoting *Quraishi v. St. Charles Cnty., Mo.*, 986 F.3d 831, 837 (8th Cir. 2021)), but they fail to meet that standard. To the contrary, Plaintiff Alan Crenshaw does not allege that he said or did anything to capture the notice of federal officers, but he was in a crowd in which some obstructed officers from leaving and assaulted officers. *See* Decl. of Alan Crenshaw ¶¶ 10, 12, 13, ECF No. 1-6 ("Crenshaw Decl."). As another example, Plaintiff Margaret Wood alleges that she was sprayed while leaning into a yard that an officer was trying to clear to effectuate an arrest. FAC ¶ 262; Decl. of Margaret Wood ¶¶ 31, 34, ECF No. 137 ("Wood Decl."). Although she alleges that the officer sprayed her a moment before saying, "get back," Wood Decl. ¶ 34, her allegations nonetheless tend to show that the officer sprayed her because he wanted her to get back to allow him to perform his duties, not because he objected to her speech.

---

[9] Plaintiffs argue that *they* drove lawfully and peacefully, Opp'n 45-46, but their nonparty declarations show a widespread pattern of aggressive and dangerous driving. *See* Mem. 21-22 (collecting examples). That pattern, and officers' consistent warnings against impeding or interfering with law enforcement, *see* Mem. 22 n.9, support the explanation that federal officers "w[ere] driven not by 'animus' but by [their] understanding . . . of [their] official duties," *Aldridge*, 75 F.4th at 899 (citation omitted).

18

**IV.     Plaintiffs Crenshaw and CWA fail to plead a Fourth Amendment claim.**

Plaintiffs Crenshaw and CWA fail to plead a Fourth Amendment Claim because they do not allege that Defendants seized them when they were exposed to pepper spray or similar force.  Mem. 24-25.  The cases cited by Plaintiffs confirm this failure by holding that "the appropriate inquiry" in determining whether a seizure occurred "is whether the challenged conduct objectively manifests an intent to restrain[,]" *Torres v. Madrid*, 592 U.S. 306, 317 (2021), and that Eighth Circuit case law "ha[s] recognized a potential distinction between force used with intent to apprehend and force used with intent to disperse or repel," *Keup v. Sarpy Cnty.*, 159 F.4th 533, 538 (8th Cir. 2025) (citation omitted).  Where, as here, non-lethal munitions are used "as a crowd dispersal tool[,]" but the plaintiff was not "arrested," that is probative evidence that force was used "to disperse, not to seize."  *Id.*; *see Reach Cmty. Dev. v. DHS*, --- F. Supp. 3d ---, 2026 WL 632695, at *12 (D. Or. Mar. 6, 2026) (holding that "Plaintiffs have failed to establish they are likely to succeed on the merits with respect to their Fourth Amendment claim" because federal officers' use of use chemical munitions and crowd control devices was not "seizure").

Plaintiffs rely on *Marks v. Bauer*, 107 F.4th 840 (8th Cir. 2024), *vacated on other grounds*, 145 S. Ct. 2733 (2025) (mem.), *remanded to*, 166 F.4th 1121 (8th Cir. 2026), which found that shooting a chemical munition at a protestor constituted a seizure. But in *Marks*, the officer "expressly testified he used force to restrain [plaintiff's] movement[.]" *Id.* at 845.  No similar allegations of intent to restrain exist here.

19

## V.       Plaintiffs fail to plead a valid conspiracy claim.

Plaintiffs fail to plead a valid conspiracy claim both because they lack a valid underlying substantive claim and because they fail to plausibly plead an agreement by Defendants to harm them.  Mem. 26-27.  In arguing otherwise, Plaintiffs rely primarily on case law preceding *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), which applies a looser pleading standard, *see*, *e.g.*, *Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir. 1983) (complaint can be dismissed only if it "alleges absolutely no facts to support conspiracy claim").  But the Supreme Court repudiated that standard in *Twombly*, holding that a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 570.  For example, in *Bonenberger v. St. Louis Metropolitan Police Department*, 810 F.3d 1103, 1105-06 (8th Cir. 2016), a post-*Twombly* case, an alleged participant admitted that he spoke to another participant, and there was "no way . . . *they* were going to put a white male in that position[,]" *id.* at 1109, which suggested an agreement to discriminate.  Plaintiffs cite no similar factual allegations to "nudge[] their claims across the line from conceivable to plausible[.]"  *Twombly*, 550 U.S. at 570.

## CONCLUSION

The Court should grant Defendants' Motion to Dismiss and dismiss the First Amended Complaint.

Dated: April 20, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW WARDEN
Assistant Director
Federal Programs Branch

 */s/ Jeremy S.B. Newman*
JEREMY S.B. NEWMAN
KATHLEEN C. JACOBS
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 532-3114
Fax: (202) 616-8470
jeremy.s.newman@usdoj.gov

*Counsel for Defendants*

21