UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

SUSAN TINCHER, *et al.,*

       Plaintiffs,

v.

MARKWAYNE MULLIN, Secretary, U.S.
Department of Homeland Security (DHS);
*Et al.,*

       Defendants.

Case No. 25-cv-04669-KMM-DTS

**DEFENDANTS' SUPPLEMENTAL
BRIEF ON STANDING**

_____

Pursuant to this Court's Order, ECF No. 339, Defendants file this supplemental brief to address the time periods that are relevant to assessing Plaintiffs' standing. As explained below, the filing of the First Amended Complaint, ECF No. 136 (FAC), on February 13, 2026, superseded the original Complaint and rendered it irrelevant. The Court accordingly assesses jurisdiction based on the FAC, and the Court should not consider the December 17, 2025, filing date of the original Complaint. The Court can find that Plaintiffs lack standing based on events that had occurred as of the FAC's filing on February 13, 2026, including that the government had announced the end of the temporary immigration enforcement surge that formed the basis of Plaintiffs' claims. However, the Court can also consider events that post-date the FAC. The question in assessing standing to seek prospective relief is whether Plaintiffs face a "real and immediate threat of repeated injury." *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983). Courts, including the Supreme Court, regularly consider events that post-date the operative complaint in answering that question.

I.     **This Court Examines Jurisdiction Based on the FAC, Including its Filing Date**

When plaintiffs file an amended complaint, that amended complaint completely supersedes the original complaint, and a federal court examines jurisdiction based only on the amended complaint, not the original complaint. The Supreme Court unanimously held as such just last year: "[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025) (quoting *Rockwell Int'l Corp. v. United States* 549 U.S. 457, 473-474 (2007)). Because the amended

complaint "is now the operative one[,] the old complaint has become irrelevant" in assessing jurisdiction. *Id.* at 36.

It follows that this Court should assess the FAC, including its February 13, 2026, filing date, to examine whether Plaintiffs have standing. Even if the Court concluded that the original Plaintiffs had standing when they filed the original Complaint (which Defendants do not concede), that would not matter. The FAC "effectively rema[d]e the suit. And that includes its jurisdictional basis: The reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's jurisdiction." *Royal Canin*, 604 U.S. at 35-36. Indeed, in *Royal Canin*, the Supreme Court acknowledged that the original complaint provided a basis for federal jurisdiction but found federal jurisdiction over the amended complaint lacking. *Id.* at 28-29, 43-44. The FAC "'supersedes' the old [complaint]: The 'original pleading no longer performs *any* function in the case.'" *Id.* at 36 (emphasis added) (quoting 6 C. Wright, A Miller, & M. Kane, Federal Practice and Procedure § 1476, pp. 636-637 (3d ed. 2010)).

Although *Royal Canin* involved supplemental jurisdiction under 28 U.S.C. § 1367, a Fourth Circuit panel recently concluded that under *Royal Canin*, a plaintiff's standing is also governed only by the operative complaint, rather than earlier complaints. In *Pendarvis v. Wilson*, No. 24-6654, 2026 WL 371143 (4th Cir. Feb. 10, 2026), the Fourth Circuit affirmed the district court's dismissal for lack of standing because the operative "second amended complaint did not allege facts supporting standing." *Id.* at *2. The plaintiff urged the court to "consider the factual allegations he put forward in his original complaint or his first amended complaint," but the Fourth Circuit found that argument

2

"inconsistent with precedent." *Id.* at *2 n.3. "Once a plaintiff amends his complaint, the previous version of that pleading is dead and 'no longer performs any function in the case.'" *Id.* (quoting *Royal Canin*, 604 U.S. at 35). This Court should likewise reject any assertion by Plaintiffs that it should consider the original Complaint, or its filing date, in assessing standing.

## II.     The Court Can Find Lack of Standing Based on Events as of the FAC

The Court need only consider events that had transpired as of the filing of the FAC on February 13, 2026, to conclude that Plaintiffs lack standing to seek prospective relief. The factual backdrop of the FAC is that the Department of Homeland Security (DHS) and its subagencies, Immigration and Customs Enforcement (ICE) and Customs and Border Protection (CBP), had initiated a temporary surge of immigration enforcement resources to the Twin Cities area dubbed Operation Metro Surge, consisting of thousands of officers and agents. *See* FAC ¶¶ 94-96. Plaintiffs allege that during Operation Metro Surge, these officers and agents engaged in aggressive at-large immigration enforcement throughout the Twin Cities area, leading to frequent encounters between federal law enforcement and protestors and journalists. *See, e.g., id.* ¶¶ 94-163. The encounters that Plaintiffs had with federal law enforcement during Operation Metro Surge form the basis of their First Amendment and Fourth Amendment claims. *See id.* ¶¶ 164-281. All of the encounters between federal law enforcement and either Plaintiffs or nonparties alleged in the FAC occurred during Operation Metro Surge.

Crucially, Plaintiffs clearly alleged that Operation Metro Surge was temporary. They alleged that it followed the pattern of Operation Midway Blitz, a temporary surge of

immigration enforcement in the Chicago area that occurred from September through November 2025. *See id.* ¶¶ 58-71. Notably, after Operation Midway Blitz ended, a group of protestors and journalists voluntarily moved to dismiss a case very similar to this case because the claimed threat of unconstitutional action had subsided after the end of the temporary surge. *See* Pls'. Mot. to Dismiss, *Chicago Headline Club v. Noem*, No. 1:25-cv-12173, ECF No. 295 (N.D. Ill. Dec. 2, 2025). Here, Plaintiffs allege that Operation Metro Surge began on December 4, 2025, FAC ¶ 94, and on February 12, 2026, Defendant Tom Homan announced the end of Operation Metro Surge, *id.* ¶ 283. At that press conference, he "announced" that Operation Metro Surge would conclude, "with a drawdown of federal immigration officers set to occur over the course of next week." Ex. A to Decl. of Kyle W. Wislocky, ECF No. 241-1 (news article reporting on this press conference).

Thus, at the time of the FAC, Plaintiffs did not face a substantial likelihood of future injury beyond the brief period of the winding down of Operation Metro Surge that Defendant Homan announced on February 12, 2026.[1] With Plaintiffs no longer seeking preliminary injunctive relief, at the time they filed the FAC, Plaintiffs lacked any injury that was redressable by the permanent injunctive relief sought in the FAC.

To be sure, Defendants filed declarations setting forth facts that occurred after the FAC and cited those declarations in their motion to dismiss briefs. *See* Second Decl. of

---

[1] To be clear, Defendants do not agree or concede that Plaintiffs ever faced a substantial likelihood of future injury after the alleged incidents that gave rise to their claims, but Defendants recognize that the Court preliminarily concluded otherwise as to the original Plaintiffs at the preliminary injunction stage. *See* Order at 40-47, ECF No. 85.

David Easterwood, ECF No. 255; Am. Decl. of Marty C. Raybon Sr., ECF No. 284. But those declarations did nothing more than confirm that the drawdown of Operation Metro Surge actually occurred, exactly as Defendant Homan indicated it would on February 12, 2026. Thus, even without considering those declarations, as of February 13, 2026, Plaintiffs had no reasonable expectation that Operation Metro Surge would continue beyond a brief drawdown period. If the Court finds the question whether it can consider Defendants' declarations in addressing standing to be difficult, the simplest path is for the Court to dismiss the FAC for lack of standing based on the facts that had occurred at the time of the FAC: Plaintiffs faced no real or immediate threat of repeated injury from the conduct of a temporary surge in immigration enforcement that was set to end imminently.

## III.  The Court May Consider Events Post-Dating the FAC to Evaluate Standing to Seek Prospective Relief

In any event, under standing doctrine as articulated by the Supreme Court and lower courts, this Court may consider events that transpired after the FAC to evaluate whether Plaintiffs have standing to seek prospective relief. The leading case addressing this issue is *Murthy v. Missouri*, 603 U.S. 43 (2024), in which the Supreme Court found lack of standing to seek injunctive relief, relying in part on events that post-dated the operative complaint. As the Court explained: "To establish standing, the plaintiffs must demonstrate *a substantial risk that, in the near future, they will suffer an injury* that is traceable to a Government defendant and redressable by the injunction they seek." *Id.* at 49-50 (emphasis added). Although "past injuries" are sufficient to demonstrate standing to "seek[] compensatory relief," where "plaintiffs are seeking only forward-looking relief," such as

5

injunctive relief, "the past is relevant only insofar as it is a launching pad for a showing of imminent future injury." *Id.* at 59. In analyzing whether plaintiffs faced imminent future injury, the Supreme Court did not limit itself to considering events that predated the original complaint in May 2022 or amended complaint in August 2022. *See id.* at 54. Instead, the Supreme Court considered the fact that in April and May 2023, the government stopped actions that plaintiffs had claimed caused a risk of harm, making it "unlikely" that plaintiffs would face injury traceable to the government in the future. *Id.* at 74.

Indeed, in a case that Plaintiffs acknowledge is highly analogous to this one, the Seventh Circuit found the post-complaint end of a temporary immigration enforcement surge relevant in evaluating the standing of protestors and journalists. In an Order in *Chicago Headline Club v. Noem*, No. 25-3023 (7th Cir. Nov. 19, 2025), the Seventh Circuit stayed a preliminary injunction issued by the district court[2] restraining the conduct of DHS officers and agents in the Chicago area. In addition to finding the district court's injunction "overbroad," the Seventh Circuit also explained that it had "reservations about Article III standing." *Id.* at 2. Given "public reporting suggesting that the enhanced immigration enforcement initiative may have lessened or ceased," the Seventh Circuit noted that "[o]pen questions remain whether plaintiffs have shown that the past harm they allegedly faced is likely to imminently happen to them in the future." *Id.* Just as the post-complaint end of

---

[2] Plaintiffs rely on this stayed preliminary injunction repeatedly in the FAC. *See* FAC ¶¶ 69-70.

6

Operation Midway Blitz was relevant to standing in *Chicago Headline Club*, the post-complaint end of Operation Metro Surge is relevant to standing here.[3]

In addition, numerous other courts have considered events transpiring after the complaint to conclude that plaintiffs lacked standing to seek prospective relief. In *Corbett v. TSA*, 930 F.3d 1225 (11th Cir. 2019), a petition challenging a TSA regulation, the court considered "extensive materials since the filing of Corbett's petition" that "both parties have submitted," finding these materials "telling" in demonstrating that "Corbett has not shown a substantial likelihood of a <u>future</u> injury that is 'real and immediate,' 'actual and imminent,' and not 'conjectural' or 'hypothetical.'" *Id.* at 1235, 1238 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

In *J W by & through Tammy Williams v. Birmingham Board of Education*, 904 F.3d 1248 (11th Cir. 2018), the plaintiff sought injunctive relief restraining uses of force by a police department. After noting the past policies that existed "[a]t the time of the events in question," the court explained that "[b]y the time of trial, however, the BPD had revised its policies concerning the use of control mechanisms." *Id.* at 1266-67. In light of this change in policies, the plaintiff "did not meet her burden" to show "standing for injunctive relief" because she could not show "a 'real and immediate threat' in the words of *Lyons*." *Id.* at 1267.

---

[3] The Seventh Circuit never had to resolve plaintiffs' standing definitively because plaintiffs voluntarily dismissed their case based on the lack of concern about future injury after the end of Operation Midway Blitz. *See supra*, p. 4. That development only validated the Seventh Circuit's reservations about standing.

In *Dressen v. Flaherty*, No. 3:23-cv-00155, 2025 WL 3552358 (S.D. Tex. Dec. 11, 2025), *report and recommendation adopted*, No. 3:23-CV-00155, 2026 WL 374974 (S.D. Tex. Feb. 10, 2026), the plaintiffs filed a lawsuit in May 2023 and an amended complaint in September 2024. The *Dressen* plaintiffs challenged alleged acts of censorship by the Biden Administration. In rejecting standing to seek injunctive relief, the Court deemed an Executive Order issued by President Trump on January 20, 2025, as a "formidable roadblock" to establishing standing, because "injunctive relief is warranted only when there is 'a *substantial* risk' of future harm 'in the *near* future.'" *Id.* at *4 (quoting *Murthy*, 603 U.S. at 49-50).

Similarly, *Berenson v. Biden*, 791 F. Supp. 3d 398 (S.D.N.Y. 2025), considered events taking place after the complaint in dismissing for lack of standing. *Berenson* was filed in April 2023, with a motion for leave to file an amended complaint filed in September 2024. The plaintiffs alleged censorship by the Biden Administration, but the court explained in rejecting standing that "given the 2024 election, the fact that Berenson's allegations focused on the actions of the now-departed Biden Administration only further diminishes the possibility of future harm." *Id.* at 419.

These cases all demonstrate that courts may consider events post-dating the operative complaint to assess whether Plaintiffs can show the requisite substantial likelihood of injury in the near future to support standing for prospective relief.

*    *    *

A "plaintiff 'bears the burden of establishing standing as of the time she brought the lawsuit and maintaining it thereafter.'" *Murthy*, 603 U.S. at 58 (quoting *Carney v. Adams*,

8

592 U.S. 53, 59 (2020)). In a case seeking backward-looking relief such as damages, where a past injury is sufficient for standing, this principle simply means that a plaintiff "must support each element of standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* (quoting *Lujan*, 504 U.S. at 561). But for cases seeking injunctive relief, the requirement to show "a substantial risk" of injury "in the near future," *id.* at 49, adds a temporal dimension to the principle that a plaintiff must maintain standing throughout the litigation. If a plaintiff feared future injury at the time of the complaint but no longer faces a substantial risk of future injury, then that past risk of harm is not an injury that can be redressed by forward-looking injunctive relief, as required for Article III standing.

At the motion to dismiss hearing, the Court suggested that "it can't be that I would issue an injunction in two years, hypothetically speaking, because two years ago [Plaintiffs] alleged the looming threat of irreparable harm if I find at the time of the injunction that there is no longer a looming threat of irreparable harm." May 4, 2026 Hearing Tr. 46:9-14. The Court's concern is valid. Plaintiffs lack standing to seek prospective relief, which is the only relief they seek in the FAC, because they cannot show a substantial risk of injury in the near future. Under the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The Court should accordingly dismiss the FAC without prejudice for lack of standing.

9

Dated: May 20, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW WARDEN
Assistant Director
Federal Programs Branch


 */s/ Jeremy S.B. Newman*
JEREMY NEWMAN
KATHLEEN C. JACOBS
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 532-3114
Fax: (202) 616-8470
jeremy.s.newman@usdoj.gov

*Counsel for Defendants*

10